*Commonwealth of Massachusetts*
**MIDDLESEX SUPERIOR COURT DEPARTMENT**
**THE TRIAL COURT**
*WOBURN*

**CIVIL ACTION NO.:** *2481CV00495*

*MIDDLESEX, SS.*

SUPERIOR COURT DEPARTMENT

**CLAUDIO SOSA, LUIS AGUILAR,
and CHRISTIAN LAMARQUE,**
              Plaintiffs,

v.

**28FREIGHT LLC d/b/a
TRUCKCOURIER, and
RICHARD MARKS, Individually,**
              Defendants.

# REMOVAL TO U.S. DISTRICT COURT

**Commonwealth of Massachusetts**
**MIDDLESEX SUPERIOR COURT DEPARTMENT**
**THE TRIAL COURT**
**Woburn**

**Civil Docket#2481CV00495**

I, C. Andrew Johnson, Deputy Assistant Clerk of the Superior Court, Within and for said County

of Middlesex, do certify that the annexed papers are true copies made by photographic process of

pleadings in **2481CV00495** entered in the Superior Court on the **20th** day of **February** in the

year of our Lord 2024**.**

In testimony whereof, I hereunto set my hand and affix seal of said Middlesex Superior Court at

Woburn in said county, this **26th** day of **April**, in the year of our Lord **Two Thousand**

**Twenty-Four.**



C. Andrew Johnson
Deputy Assistant Clerk

CRTR2709-CR



**COMMONWEALTH OF MASSACHUSETTS**
**MIDDLESEX COUNTY**
Docket Report

**2481CV00495 Claudio Sosa, individually and on behalf of all others similarly situated et al vs. 28Freight Llc d/b/a Truckcourier et al**

| | |
|---|---|
| **CASE TYPE:**   Contract / Business Cases | **FILE DATE:**   02/20/2024 |
| **ACTION CODE:** A01 | **CASE TRACK:**   F - Fast Track |
| **DESCRIPTION:** Services, Labor and Materials | |
| **CASE DISPOSITION DATE:**04/26/2024 | **CASE STATUS:**   Closed |
| **CASE DISPOSITION:**   Transferred to another Court | **STATUS DATE:**   04/26/2024 |
| **CASE JUDGE:** | **CASE SESSION:**   Civil H Rm 710 |

| PARTIES | |
|---|---|
| **Plaintiff**<br>Claudio Sosa, individually and on behalf of all others similarly situated | **Attorney**                                  666029<br>Hillary Schwab<br>Fair Work, P.C.<br>Fair Work, P.C.<br>192 South St<br>Suite 450<br>Boston, MA 02111<br>Work Phone (617) 607-3260<br>Added Date: 02/20/2024 |
| | **Attorney**                                  688294<br>Rachel Smit<br>Fair Work, P.C.<br>Fair Work, P.C.<br>192 South St<br>Suite 450<br>Boston, MA 02111<br>Work Phone (617) 841-8188<br>Added Date: 02/20/2024 |
| **Plaintiff**<br>Cristian Lamarque, individually and on behalf of all others similarly situated | **Attorney**                                  666029<br>Hillary Schwab<br>Fair Work, P.C.<br>Fair Work, P.C.<br>192 South St<br>Suite 450<br>Boston, MA 02111<br>Work Phone (617) 607-3260<br>Added Date: 02/20/2024 |
| | **Attorney**                                  688294<br>Rachel Smit<br>Fair Work, P.C.<br>Fair Work, P.C.<br>192 South St<br>Suite 450<br>Boston, MA 02111<br>Work Phone (617) 841-8188<br>Added Date: 02/21/2024 |

CRTR2709-CR



**COMMONWEALTH OF MASSACHUSETTS**
**MIDDLESEX COUNTY**
Docket Report

| Plaintiff | Attorney | 666029 |
|---|---|---|
| Luis Aguilar, individually and on behalf of all others similarly situated | Hillary Schwab<br>Fair Work, P.C.<br>Fair Work, P.C.<br>192 South St<br>Suite 450<br>Boston, MA 02111<br>Work Phone (617) 607-3260<br>Added Date: 02/20/2024 | |
| | **Attorney** | 688294 |
| | Rachel Smit<br>Fair Work, P.C.<br>Fair Work, P.C.<br>192 South St<br>Suite 450<br>Boston, MA 02111<br>Work Phone (617) 841-8188<br>Added Date: 02/21/2024 | |
| **Defendant**<br>28Freight Llc d/b/a Truckcourier<br>226 Lowell Street<br>Wilmington, MA 01887 | **Private Counsel**<br>Wesley S Chused<br>Preti Flaherty Beliveau and Pachios LLP<br>Preti Flaherty Beliveau and Pachios LLP<br>60 State St Suite 1100<br>Boston, MA 02109<br>Work Phone (617) 226-3800<br>Added Date: 04/26/2024 | 083520 |
| | **Private Counsel**<br>Daniel R Sonneborn<br>Preti Flaherty Beliveau and Pachios, LLP<br>Preti Flaherty Beliveau and Pachios, LLP<br>60 State St Suite 1100<br>Boston, MA 02109<br>Work Phone (617) 226-3800<br>Added Date: 04/26/2024 | 679229 |
| | **Private Counsel**<br>Harper A Weissburg<br>Preti Flaherty<br>Preti Flaherty<br>60 State St<br>Suite 1100<br>Boston, MA 02109<br>Work Phone (617) 226-3800<br>Added Date: 04/26/2024 | 711735 |
| | **Private Counsel**<br>Peter G Callaghan<br>Preti, Flaherty, Beliveau & Pachios LLP<br>P. O. Box 1318<br>Concord, NH 03302-1318<br>Work Phone (603) 410-1500<br>Added Date: 04/17/2024 | PHV6811NH |

CRTR2709-CR



**COMMONWEALTH OF MASSACHUSETTS**
**MIDDLESEX COUNTY**
Docket Report

| Defendant | Private Counsel | 083520 |
|---|---|---|
| Richard Marks, Individually | Wesley S Chused | |
| | Preti Flaherty Beliveau and Pachios LLP | |
| | Preti Flaherty Beliveau and Pachios LLP | |
| | 60 State St Suite 1100 | |
| | Boston, MA 02109 | |
| | Work Phone (617) 226-3800 | |
| | Added Date: 04/26/2024 | |
| | **Private Counsel** | **679229** |
| | Daniel R Sonneborn | |
| | Preti Flaherty Beliveau and Pachios, LLP | |
| | Preti Flaherty Beliveau and Pachios, LLP | |
| | 60 State St Suite 1100 | |
| | Boston, MA 02109 | |
| | Work Phone (617) 226-3800 | |
| | Added Date: 04/26/2024 | |
| | **Private Counsel** | **711735** |
| | Harper A Weissburg | |
| | Preti Flaherty | |
| | Preti Flaherty | |
| | 60 State St | |
| | Suite 1100 | |
| | Boston, MA 02109 | |
| | Work Phone (617) 226-3800 | |
| | Added Date: 04/26/2024 | |
| | **Private Counsel** | **PHV6811NH** |
| | Peter G Callaghan | |
| | Preti, Flaherty, Beliveau & Pachios LLP | |
| | P. O. Box 1318 | |
| | Concord, NH 03302-1318 | |
| | Work Phone (603) 410-1500 | |
| | Added Date: 04/17/2024 | |

| FINANCIAL DETAILS | | | | | |
|---|---|---|---|---|---|
| **Date** | **Fees/Fines/Costs/Charge** | **Assessed** | **Paid** | **Dismissed** | **Balance** |
| 02/20/2024 | Civil Filing Fee (per Plaintiff) | 480.00 | 480.00 | 0.00 | 0.00 |
| 02/20/2024 | Fee for Blank Summons or Writ (except Writ of Habeas Corpus) MGL 262 sec 4b<br><br>2 Summons sent on 02/21/2024. | 10.00 | 10.00 | 0.00 | 0.00 |
| 02/21/2024 | Civil Filing Fee (per Plaintiff) | 240.00 | 240.00 | 0.00 | 0.00 |
| 02/21/2024 | Civil Security Fee (G.L. c. 262, § 4A) | 20.00 | 20.00 | 0.00 | 0.00 |
| 02/21/2024 | Civil Surcharge (G.L. c. 262, § 4C) | 15.00 | 15.00 | 0.00 | 0.00 |
| | **Total** | **765.00** | **765.00** | **0.00** | **0.00** |

CRTR2709-CR



**COMMONWEALTH OF MASSACHUSETTS**
**MIDDLESEX COUNTY**
**Docket Report**

| | | INFORMATIONAL DOCKET ENTRIES | | |
|---|---|---|---|
| **Date** | **Ref** | **Description** | **Judge** |
| 02/20/2024 | 1 | Complaint electronically filed. | |
| 02/20/2024 | 2 | Civil action cover sheet filed. | |
| 02/21/2024 | | Case assigned to:<br>DCM Track F - Fast Track was added on 02/21/2024 | |
| 02/21/2024 | | Demand for jury trial entered. | |
| 02/21/2024 | | Class action filed under Mass. R. Civ. P. 23 | |
| 02/21/2024 | | Attorney appearance<br>On this date Rachel Smit, Esq. added for Plaintiff Luis Aguilar | |
| 02/21/2024 | | Attorney appearance<br>On this date Rachel Smit, Esq. added for Plaintiff Cristian Lamarque | |
| 02/21/2024 | | EDocument sent:<br>A Tracking Order was generated and sent to:<br>Plaintiff, Attorney: Hillary Schwab, Esq. hillary@fairworklaw.com<br>Plaintiff, Attorney: Rachel Smit, Esq. rachel@fairworklaw.com | |
| 04/10/2024 | | Exhibits/Appendix<br><br>Exhibit 1 to Complaint - Sosa Lease | |
| 04/10/2024 | | Exhibits/Appendix<br><br>Exhibit 2 to Complaint - Aguilar Lease | |
| 04/10/2024 | | Exhibits/Appendix<br><br>Exhibit 3 to Complaint - Lamarque Lease | |
| 04/16/2024 | 3 | Service Returned for<br><br>Service Returned for<br>Defendant 28Freight Llc d/b/a Truckcourier: Service accepted by counsel; | |
| 04/17/2024 | | Attorney appearance<br>On this date Peter G Callaghan added as Private Counsel for Defendant<br>28Freight Llc d/b/a Truckcourier | |
| 04/17/2024 | | Service Returned for<br>Defendant Richard Marks, individually: Service accepted by counsel;<br><br>Ref. P. #3 | |
| 04/17/2024 | | Attorney appearance<br>On this date Peter G Callaghan added as Private Counsel for Defendant<br>Richard Marks, individually | |
| 04/26/2024 | | Attorney appearance<br>On this date Wesley S Chused, Esq. added as Private Counsel for Defendant<br>28Freight Llc d/b/a Truckcourier | |

CRTR2709-CR



**COMMONWEALTH OF MASSACHUSETTS**
**MIDDLESEX COUNTY**
**Docket Report**

| | | |
|---|---|---|
| 04/26/2024 | | Attorney appearance<br>On this date Daniel R Sonneborn, Esq. added as Private Counsel for<br>Defendant 28Freight Llc d/b/a Truckcourier |
| 04/26/2024 | | Attorney appearance<br>On this date Harper A Weissburg, Esq. added as Private Counsel for<br>Defendant 28Freight Llc d/b/a Truckcourier |
| 04/26/2024 | | Attorney appearance<br>On this date Wesley S Chused, Esq. added as Private Counsel for Defendant<br>Richard Marks, Individually |
| 04/26/2024 | | Attorney appearance<br>On this date Daniel R Sonneborn, Esq. added as Private Counsel for<br>Defendant Richard Marks, Individually |
| 04/26/2024 | | Attorney appearance<br>On this date Harper A Weissburg, Esq. added as Private Counsel for<br>Defendant Richard Marks, Individually |
| 04/26/2024 | 4 | Defendants 28Freight Llc d/b/a Truckcourier, Richard Marks, Individually's<br>Notice of<br>Filing of Removal |
| 04/26/2024 | | REMOVED to the U.S. District Court |
| 04/26/2024 | | Case transferred to another court. |

MIDDLESEX, SS.    ***Commonwealth of Massachusetts***
SUPERIOR COURT DEPARTMENT OF THE TRIAL COURT

In testimony that the foregoing is a true copy on file
and of record made by photographic process, I hereunto
set my hand and affix the seal of said Superior Court
this 26th day of April 2024.

_____

**Deputy Assistant Clerk**

Date Filed 2/20/2024 6:49 PM
Superior Court - Middlesex
Docket Number

1

## COMMONWEALTH OF MASSACHUSETTS
## SUPERIOR COURT DEPARTMENT

MIDDLESEX, SS.                              Civil Action No.

                                            2481CV495

|  |  |
|---|---|
| CLAUDIO SOSA, LUIS AGUILAR, and CRISTIAN LAMARQUE, individually and on behalf of all others similarly situated, | ) ) ) ) ) |
| Plaintiffs, | ) **JURY TRIAL DEMANDED** ) |
| v. | ) ) |
| 28FREIGHT LLC d/b/a TRUCKCOURIER, and RICHARD MARKS, individually, | ) ) **RECEIVED**   MG    02/20/2024 ) |
| Defendants. | ) ) |

## CLASS ACTION COMPLAINT AND JURY DEMAND

### INTRODUCTION

1.      This is a class action lawsuit brought on behalf of individuals who have

worked as truck drivers for Defendant 28Freight LLC doing business as TruckCourier

(hereinafter "28Freight").

2.      Plaintiffs Claudio Sosa, Luis Aguilar, and Cristian Lamarque allege, on

behalf of themselves and others similarly situated, that Defendants have violated the

Massachusetts Wage Act, G.L. c. 149, §§ 148, 148B, and 150, as well as the Massachusetts

Minimum Wage Law, G.L. c. 151, § 1, et seq., by failing to pay drivers all wages and

minimum wages owed, taking improper deductions from pay, requiring drivers to pay

out-of-pocket for business expenses, failing to reimburse drivers for those expenses, and

failing to provide drivers with other benefits to which they would be entitled as as employees.

3.     Plaintiffs further allege, on behalf of themselves and others similarly situated, that Defendant 28Freight has violated 49 U.S.C. § 14704 and its regulations, referred to hereinafter as the Truth-in-Leasing ("TIL") regulations, with respect to compensation, improper chargebacks/deductions from pay, *inter alia*.

4.     Plaintiffs seek class certification, damages, liquidated damages, interest, injunctive relief, attorneys' fees and costs, and all other allowable relief.

## PARTIES

5.     Plaintiff Claudio Sosa is an adult resident of Worcester County in Massachusetts. He worked as a truck driver for Defendants from approximately 2014 until October 2023. He was an "employee" of Defendants within the meaning of the Massachusetts Wage Act and the Massachusetts Minimum Wage Law. He was a "lessor" within the meaning of the TIL regulations.

6.     Plaintiff Luis Aguilar is an adult resident of Worcester County in Massachusetts. He has worked as a truck driver for Defendants most recently from approximately 2019 through and including the present. He is an "employee" of Defendants within the meaning of the Massachusetts Wage Act and the Massachusetts Minimum Wage Law. He was a "lessor" within the meaning of the TIL regulations.

7.     Plaintiff Cristian Lamarque is an adult resident of Worcester County in Massachusetts. He worked as a truck driver for Defendants from approximately May 2023 until December 2023. He was an "employee" of Defendants within the meaning of

2

the Massachusetts Wage Act and the Massachusetts Minimum Wage Law. He was a "lessor" within the meaning of the TIL regulations.

8.    Plaintiffs bring this action on behalf of a putative class of similarly situated individuals, namely all individuals who have performed work for Defendants while subject to an independent contractor lease agreement, at any time during the applicable statutory period.

9.    Defendant 28Freight LLC is a Massachusetts limited liability company, with a principal office in Middlesex County, Massachusetts.

10.    Defendant Richard Phillip Marks is the sole manager of 28Freight LLC. He is a resident of Middlesex County, Massachusetts.

11.    Defendant 28Freight is an "employer" within the meaning of the Massachusetts Wage Act and the Massachusetts Minimum Wage Law.

12.    Defendant Marks is an "employer" within the meaning of the Massachusetts Wage Act and the Massachusetts Minimum Wage Law, because he is actively engaged in the day-to-day operations of 28Freight, including developing, implementing, and approving employment policies, setting employees' pay rates, hiring and firing employees, and directing employees' work.

13.    Defendant 28Freight is registered with the Federal Motor Carrier Safety Administration ("FMCSA") under MC- 221651 and US DOT Number 542502. 28Freight reported in the SAFER – FMCSA management information system that it operated 41 power units with 41 drivers as of January 2023.

3

Date Filed 2/20/2024 6:49 PM
Superior Court - Middlesex
Docket Number

14.     Defendant 28Freight is an "authorized carrier" and "lessee" as defined by

the Truth-in-Leasing regulations, 49 C.F.R. § 376.2(a), (g).

## JURISDICTION AND VENUE

15.     The Superior Court has jurisdiction over this action pursuant to G.L. c.

212, § 3, because this is a civil action for money damages, where there is no reasonable

likelihood that the plaintiff will recover an amount less than or equal to $50,000.

16.     Venue is proper in Middlesex County pursuant to G.L. c. 223, § 1, because

Defendants have their usual place of business in Middlesex County.

17.     The Court has personal jurisdiction over Plaintiffs and the putative class

because they reside in Massachusetts, have performed worked in Massachusetts,

and/or have been employed by Defendant 28Freight, which is at home in

Massachusetts.

18.     Pursuant to G.L. c. 149, § 150, Plaintiffs filed a complaint with the

Massachusetts Attorney General's Office on February 20, 2024.

## FACTS

I.    **Defendants' business.**

19.     Defendant 28Freight is a trucking company that specializes in

transporting freight on an expedited basis.

20.     Defendant 28Freight is authorized by the U.S. Department of

Transportation to operate as a motor carrier.

21.     Defendant 28Freight employs drivers to transport its customers' freight in

interstate commerce.

4

Date Filed 2/20/2024 6:49 PM
Superior Court - Middlesex
Docket Number

22.    Defendant 28Freight is a motor carrier and an authorized carrier under 49 U.S.C. §§ 13901 and 13902, *et seq.*

23.    Defedant 28Freight maintains a principal place of business in Wilmington, Massachusetts.

24.    Defendant 28Freight provides transportation services to its customers in equipment that it leases from individual truck drivers, including Plaintiffs.

25.    Defendant 28Freight's drivers perform these services for 28Freight under 28Freight's operating authority from the Department of Transportation.

26.    Defendant 28Freight requires its drivers, including Plaintiffs, to sign standard form contracts titled "Agreement for Leased Equipment and Independent Contractor Services" (hereinafter, "lease agreement").

27.    Plaintiff Sosa signed a lease agreement with Defendant 28Freight on approximately March 4, 2022, a copy of which is attached as Exhibit 1.

28.    Plaintiff Aguilar signed a lease agreement with Defendant 28Freight on approximately April 25, 2019, a copy of which is attached as Exhibit 2.

29.    Plaintiff Lamarque signed a lease agreement with Defendant 28Freight on approximately May 25, 2023, a copy of which is attached as Exhibit 3.

30.    Defendant 28Freight's lease agreements contain a provision designating Massachusetts law as the governing law under which the agreements are to be interpreted.

Date Filed 2/20/2024 6:49 PM
Superior Court - Middlesex
Docket Number

II.    **Allegations under Massachusetts wage laws.**

31.    Defendants 28Freight and Richard Marks are employers within the meaning of the Massachusetts Wage Act and the Massachusetts Minimum Wage Law, and the drivers that they employ are misclassified as independent contractors under G.L. c. 149, § 148B.

32.    Defendant Marks holds himself out as the President of 28Freight.

33.    Defendant Marks is personally involved in every aspect of operations at 28Freight.

34.    On information and belief, dispatchers refer all questions and concerns raised by drivers about compensation to Defendant Marks.

35.    Defendants' business is the transportation of freight and the provision of trucking services to their customers.

36.    Defendants' standard form lease agreements state that 28Freight "is in the business of transportation of expedited shipment of goods within certain time-sensitive service parameters required by [28Freight] customers. This requires not only on-time pickup and delivery but also regular and accurate communication with [28Freight] customers." ¶ 4.03.

37.    On its website, Defendants state that "we've been transporting valuable cargo for nearly a century. Our founder originated this business with a single HarleyDavidson Motorcycle and now we are the leading ground expedite carrier in the Northeast in addition to servicing all of North America." https://28freight.com/about-us/ (last accessed Feb. 16, 2024).

6

Date Filed 2/20/2024 6:49 PM
Superior Court - Middlesex
Docket Number

38.    Defendants also state on their website that "[l]ife sciences and biotechnology are our primary specialties. We routinely coordinate the safe and secure delivery of life-saving medical devices, including ventilators during the COVID-19 pandemic. However throughout the decades, we've continued to expand our offerings. Most recently adding warehousing and temperature-controlled transportation to our suite of services." *Id.*

39.    Defendants further state on their website that "[s]ince our inception, we are dedicated to providing reliable, fast delivery of your most precious shipments, even under the most challenging circumstances." *Id.*

40.    The delivery services provided by Defendants to their customers are performed by Plaintiffs Sosa, Aguilar, Lamarque, and the proposed class of drivers.

41.    Plaintiffs and the proposed class of drivers perform these services directly for Defendants.

42.    Plaintiffs and the proposed class of drivers are not free from direction and control in connection with the performance of these services under their lease agreements with Defendants. For example:

   a. In order to meet the "time-sensitive service parameters" of Defendants' customers, drivers must commit to "regular and accurate communication" with Defendants, ¶ 4.03 (of lease agreement);

   b. Drivers must designate Defendants' third-party vendor as their "settlement agent[s]" to "receive . . . any payments due from [Defendants]," ¶ 4.04(b);

Date Filed 2/20/2024 6:49 PM
Superior Court - Middlesex
Docket Number

c. Drivers may not "[s]olicit business from customers or prospects of
[Defendants] in connection with any business which is similar to or
competive with that of [Defendants]," ¶ 5.05(2)(c);

d. Defendants retain the right to honor any "guarantee of service" claim
from their customers and may decide, unilaterally, to "proportionately
adjust" drivers' compensation and "deduct such adjustments from
amounts due" to drivers, ¶ 4.03(a);

e. Drivers must obtain obtain "express written consent" from Defendants
to use a substituted vehicle when their own truck is out of service, ¶
2.06; and

f. Drivers must notify Defendant 28Freight in advance when using their
vehicles for non-28Freight purposes, allegedly because "in order for
[Defendant] to serve its customers, [Defendant] must know" when the
driver is using the vehicle for any use that is not for Defendants, ¶ 4.06.

43. Plaintiffs and the proposed class of drivers are not free from direction and
control in connection with the performance of these services in fact. For example:

a. Drivers are interviewed before being hired at Defendants' principal
office in Massachusetts;

b. Drivers must use an applicaton on their phones to receive job
assignments from Defendants' dispatchers, but drivers are limited to
accepting or rejecting the job assignment one at a time, without
information about other jobs that may be available;

8

Date Filed 2/20/2024 6:49 PM
Superior Court - Middlesex
Docket Number

    c.   Drivers must check the application no later than 7:30 am each day to see if they have received any job assignments from Defendants' dispatchers;

    d.   Drivers may reject particular job assignments, but if they do so Defendants' dispatchers may "punish" them by leaving them without work for hours;

    e.   Once accepting a job in the application, drivers must call Defendants' dispatchers and must also call dispatch when the job is completed;

    f.   Drivers typically perform at least 3 or 4 jobs in a day, but because Defendants will only offer them a subsequent job once they have completed the first job, they lack any real control over their schedule for the day; and

    g.   The duration of the job assignments may result in drivers finishing their last delivery for the day far from the driver's home.

44.    Given the nature in which Plaintiffs and other drivers are directed and paid, they have no practical opportunity to control or realize any profits.

45.    On information and belief, Plaintiffs and other drivers are hired with the expectation of long-term engagement by Defendants.

46.    Defendants did not engage Plaintiffs and the proposed class of drivers with the expectation or understanding that they were customarily engaged in an independently established trade, occupation, profession or business. For example:

Date Filed 2/20/2024 6:49 PM
Superior Court - Middlesex
Docket Number

a.  Plaintiffs and other drivers are not required to possess any specialized skills or training, other than being able to drive a box truck;

b.  Plaintiff Lamarque had never worked as a truck driver before his employment with Defendants, and has not worked as a truck driver since; and

c.  Plaintiffs performed work exclusively for 28Freight during their tenure with 28Freight.

47.  As a result of Defendants' misclassification of drivers as independent contractors, Plaintiffs and the proposed class of drivers have been deprived of the benefits to which they would be otherwise be entitled as employees of Defendants.

48.  Defendants provide their office employees with paid time off, including paid vacation and paid holidays, and other similar benefits, but have deprived their drivers of these same benefits.

49.  Defendants have failed to pay their drivers all wages earned, as required by the Wage Act, G.L. c. 149, § 148.

50.  On information and belief, Defendants have failed to pay drivers a pre-established percentage of the mileage and accessorial charges referenced in their lease agreements, instead paying drivers the amount remaining after Defendants have taken a discretionary share.

51.  Defendants have failed to pay drivers timely for the work they perform, in violation of the Wage Act, G.L. c. 149, § 148.

10

Date Filed 2/20/2024 6:49 PM
Superior Court - Middlesex
Docket Number

52.    Defendants have taken unlawful deductions from drivers' wages earned,

in violation of the Wage Act, G.L. c. 149, §§ 148 and 150. For example:

    a.  Defendants deducted $38 from Plaintiff Sosa's pay each week he

        worked, allegedly for the cost of being enrolled "as a member" of

        Contractor Management Services ("CMS"), a third-party company

        essentially serving as a payroll provider for Defendants.

    b.  Defendants deducted a similar amount from Plaintiffs Aguilar and

        Lamarque's weekly pay, which they understood to be for OpenForce,

        the proprietary platform developed by CMS.

    c.  Defendants also deducted $300 from Plaintiff Sosa's pay in each of

        nine weeks he worked, for reasons that were never explained to

        Plaintiff Sosa.

53.    Defendants have required drivers to pay for business expenses that

employees are not allowed to bear, for which drivers were never reimbursed, in

violation of the Wage Act, G.L. c. 149, §§ 148 and 150. For example:

    a.  Drivers must pay out-of-pocket for all fuel, tolls, maintenance, and

        repairs associated with their provision of services to 28Freight;

    b.  Defendants' lease agreements are explicit about this burden-shifting,

        stating that drivers must "bear all costs and expenses incidental to the

        maintenance, repair and operation of the Leased Vehicle," including

        the "first $1,000.00 on a per incident basis of any loss of or damage to

cargo tendered for shipment or handling while such cargo is in the

possession" of the drivers; and

   c. Drivers must also pay for their own physical damage insurance.

54.    Defendants have failed to reimburse their drivers for all transportation expenses for travel time during their work day, contrary to their obligations under 454 CMR 27.04(4)(d).

55.    Defendants have failed to ensure that their drivers receive at least the Massachusetts minimum wage for the work they perform for Defendants. For example:

   a. In 2023, the Massachusetts minimum wage was $15 per hour;

   b. On information and belief, Plaintiffs Sosa, Aguilar, and Lamarque have all had weeks in which they worked at least 70 hours, for which they would be entitled to minimum wages of at least $1,050;

   c. On information and belief, Plaintiffs Sosa, Aguilar, and Lamarque drove at least 1,250 miles in these weeks;

   d. In 2023, the IRS standard mileage rate was $0.655 per mile, entitling Plaintiffs to reimbursement of no less than $818.75 for 1,250 miles;

   e. To receive at least the minimum wage, Plaintiffs Sosa, Aguilar, and Lamarque should have been paid no less than $1,868.75 in weeks when they worked at least 70 hours per week;

   f. On information and belief, Plaintiffs Sosa, Aguilar, and Lamarque were at times paid less than than minimum wage when they worked at least 70 hours in a week; for example:

12

Date Filed 2/20/2024 6:49 PM
Superior Court - Middlesex
Docket Number

     i. Plaintiff Sosa was paid only $1,799.43 for the pay period ending 02/10/2023;

    ii. Plaintiff Sosa was paid only $1,865.01 for the pay period ending 03/07/2023;

   iii. Plaintiff Sosa was paid only $1,551.09 for the pay period ending 08/04/2023;

   iv. Plaintiff Aguilar was paid only $1,803.67 for the pay period ending 10/28/2023;

    v. Plaintiff Lamarque was paid only $1,866.31 for the pay period ending 11/04/2023.

56. Defendants have failed to provide their drivers with earned sick time as required by G.L. c. 148, § 148C, resulting in drivers, including Plaintiffs, being deprived of time off when they otherwise would have been able to use paid sick time and/or resulting in drivers being deprived of pay for days when they were unable to work due to illness (or for other reasons enumerated in the Earned Sick Time Law).

**III.**   **Allegations relating to Truth-in-Leasing obligations.**

57. Under federal law, motor carriers such as 28Freight LLC may transport property in equipment that they themselves do not own only if the equipment is subject to a written lease agreement that meets DOT's regulatory requirements, known as the Truth-in-Leasing regulations (the "TIL regulations"), 49 C.F.R. § 376, *et seq.*

58. As explained by the Interstate Commerce Commission when the regulations were promulgated, the purpose of the TIL regulations is to "to eliminate or

reduce opportunities for skimming and other illegal or inequitable practices." *Lease and Interchange of Vehicles*, 131 M.C.C. 141, 142 (1979).

59.    TIL regulations require the motor carrier's equipment lease to disclose, in writing, the amount that the motor carrier will pay the driver as compensation. 49 C.F.R. § 376.12(d). The regulations also require the lease to disclose the details of any charge back items. *Id.* at § 376.12(h). The lease between a motor carrier and a driver shall specify that the driver is not required to purchase or rent any products, equipment, or services from the motor carrier. *Id.* at § 376.12(i). Finally, the regulations require the motor carrier to adhere to the terms of the lease. *Id.* § 376.12 (introductory paragraph).

60.    In order to become drivers for Defendant 28Freight, individuals must sign lease agreements with the title, "Agreement for Leased Equipment and Independent Contractor Services." *See, e.g.*, Exhibits 1 – 3.

61.    The lease agreement is a standard-form agreement that Defendant 28Freight presented to Plaintiff and other lease drivers on a take-it-or-leave it basis and which all lease drivers are required to sign.

62.    Defendant 28Freight's lease agreement constitutes a "lease" under the Truth-in-Leasing regulations, 49 C.F.R. § 376.2(e).

63.    The leases and relationships between Defendant and the lease drivers, including Plaintiff, are subject to the Truth-in-Leasing regulations.

64.    The lease agreement fails to specify the compensation to which drivers are entitled, contrary to 49 C.F.R. § 376.12(d). Although the agreement references an

14

"Appendix 1" being attached to the agreement, which purportedly sets forth a scale upon which the driver's percentage of the base mileage and accessorial charges to Defendant's customers is based, there is no such appendix attached to the lease agreement.

65.     On information and belief, Defendant 28Freight unilaterally determines the amounts it will charge to its customers for base mileage, accessorial charges (including a fuel surcharge), or other charges, and unilaterally determines the amount to be paid to the driver and the amount to be retained by Defendant.

66.     Plaintiffs repeatedly asked Defendant's managers and employees to explain the basis for their pay to them, but Defendant's managers and employees could not do so.

67.     On information and belief, drivers are routinely deprived of compensation to which they should be entitled pursuant to their lease agreements, including Plaintiffs and the proposed class.

68.     Defendant 28Freight required Plaintiffs to designate CMS as their "settlement agent" as a condition of entering into a lease with Defendant.

69.     Defendant 28Freight failed to disclose, however, that it would deduct approximately $38 from Plaintiffs' pay each week for CMS's settlement services, and further failed to "specify the terms of any agreement in which [Plaintiff] is a party to an equipment purchase or rental contract which gives the authorized carrier the right to make deductions from [Plaintiff's] compensation for purchase or rental payments," in violation of 49 C.F.R. § 376.12(i).

15

Date Filed 2/20/2024 6:49 PM
Superior Court - Middlesex
Docket Number

70.    CMS generates a document titled "Invoice" for each driver, which purports to be an invoice from the driver to Defendant 28Freight for services performed; in reality, the "Invoice" is a settlement statement generated by Defendant as a record of amounts it owes to drivers.

71.    Defendant fails to provide drivers with a copy of the rated freight bills on which their compensation is based, in violation of 49 C.F.R. § 376.12(g).

72.    The purpose of 49 C.F.R. § 376.12(g) is to prevent carriers from "revenue-skimming" by allowing drivers to confirm that their compensation is being calculated by the carrier correctly.

73.    Defendant 28Freight's lease agreements facially fail to comply with 49 C.F.R. § 376.12(g), because they does not allow drivers access to the actual information appearing on customers' rated freight bills, instead only affording drivers access to "documents from which rates and charges that appear on a customer's freight bill are computed." ¶ 4.02.

74.    If Defendant 28Freight does not provide its drivers with the actual rates and charges that appear on the customer's freight bill, its drivers are not empowered to prevent Defendant from revenue-skimming.

75.    Defendant 28Freight makes other deductions or chargebacks from drivers' compensation that are not disclosed properly (or at all) in the lease agreement. For example, Defendant deducted $300 from Plaintiff Sosa's pay each week for nine weeks, without any explanation.

Date Filed 2/20/2024 6:49 PM
Superior Court - Middlesex
Docket Number

76.    Defendant's lease agreements with drivers do not satisfy the requirements of the Truth-in-Leasing regulations and, additionally, Defendant has not adhered to the terms of its agreements with its lease drivers.

77.    Lease drivers, including Plaintifs, have suffered harm and have sustained damages from Defendant's actions, which include improper retention of compensation owed to drivers and undisclosed deductions from their earnings.

**III.    Class Action Allegations**

78.    Pursuant to Mass. R. Civ. P. 23, Plaintiffs bring this action individually and on behalf of a proposed class, defined as: all individuals who have performed work for Defendants while subject to an independent contractor lease agreement, at any time during the applicable statutory period.

79.    The applicable statutory period under the Massachusetts wage laws is three years and the applicable statutory period for the Truth-in-Leasing claims is four years.

80.    This case may be maintained properly as a class action under Mass. R. Civ. P. 23.

81.    Joinder is impracticable in this case due to the size and composition of the class, and nature of the claims and relief sought, the remedial purpose of the underlying claims, and because individual joinder would be inefficient, uneconomical, and could result in the deprivation of statutory rights.  On information and belief, the size of the class is more than 100.

17

Date Filed 2/20/2024 6:49 PM
Superior Court - Middlesex
Docket Number

82.    There are issues of law and fact common to all class members, because Defendants' common policies and practices affected all class members in similar ways. The common questions of law and fact predominate over any questions affecting individual class members. The predominant questions of law or fact are clear, precise, well-defined, and applicable to Plaintiffs as well as every absent member of the proposed class.

83.    The claims of Plaintiffs are typical of the claims of all members of the class, because all members of the class were subject to the same unlawful practices and suffered similar harms. Defendants operate in a highly regulated industry that requires them to maintain standard operating procedures and uniform policies, procedures, and practices and adhere to laws and regulations governing motor carriers.  Plaintiffs' and all class members' claims for damages may readily be calculated from Defendants' business records.

84.    Plaintiffs will fairly and adequately protect and represent the interests of the class.  Their interest in challenging the unlawful practices of Defendants motivates them to bring this case as a class action.  Plaintiffs retained the undersigned counsel, who are experienced in class actions generally and on behalf of individuals working in the trucking industry.

85.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  The alternative – numerous identical lawsuits alleging similar or identical causes of action – would not serve the interests of judicial economy and the prosecution of separate actions by the individual potential class

18

Date Filed 2/20/2024 6:49 PM
Superior Court - Middlesex
Docket Number

members would create a risk of inconsistent or varying adjudications with respect to

individual potential class members that would establish incompatible standards of

conduct for Defendants. Moreover, some class members – particularly current drivers –

may be reluctant to bring their claims individually for fear of retaliation by Defendants.

86.    Public policy supports the broad remedial purposes of class actions in

general and specifically to vindicate the rights afforded by Massachsuetts wage laws

and the Truth-in-Leasing regulations to truck drivers, whose individual claims may be

too small to warrant the expense of litigation.

87.    This class action will not be difficult to manage due to the uniformity of

claims among the class members and the amenability of of the claims to class litigation

and the use of representative testimony and representative documentary evidence.

88.    The contours of the class will be easily defined by reference to business

records kept by Defendants.

89.    Defendants have acted on grounds generally applicable to the class.

**Count I**
**Misclassification, G.L. c. 149, § 148B**

Defendants 28Freight and Richard Marks have misclassified Plaintiffs and the

class members as independent contractors in violation of G.L. c. 149, § 148B. For this

violation, Plaintiffs and the class members are entitled to recover the wages and benefits

they would have received as employees, including reimbursement for any business-

related expenses they were required to bear as a result of their misclassification as

independent contractors, as well as benefits that Defendants provided to their properly

19

Date Filed 2/20/2024 6:49 PM
Superior Court - Middlesex
Docket Number

classified employees, including paid vacations and holidays. This claim is brought

pursuant to G.L. c. 149, § 150.

**Count II**
**Massachusetts Wage Act, G.L. c. 149, § 148**

As described above, Plaintiffs and the class members were deprived of timely

payment of wages earned pursuant to their agreements with Defendants 28Freight and

Richard Marks, and were subjected to unlawful deductions from their pay, in violation

of G.L. c. 149, §§ 148 and 150. This claim is brought pursuant to G.L. c. 149, § 150.

**Count III**
**Massachusetts Minimum Wage Law, G.L. c. 151, § 1A**

As described above, Plaintiffs and the class members have not received the

minimum wage for all hours worked, as required by G.L. c. 151, § 1, had Defendants

28Freight and Richard Marks properly classified them as employees. This claim is

brought pursuant to G.L. c. 151, § 20.

**Count IV**
**Truth-in-Leasing Regulations**

Defendant 28Freight has violated the Truth-in-Leasing regulations by failing to

properly specify driver compensation in its lease agreements, failing to provide drivers

with required information, and by taking undisclosed deductions from drivers'

compensation. The terms of Defendant's contracts with lease drivers do not adhere to

the Truth-in-Leasing regulations, and Defendant has not adhered to the terms of its

contracts. Pursuant to 49 U.S.C. § 14704(a), Defendant 28Freight is liable to Plaintiffs

and the proposed class for the damages that they suffered on account of Defendant's

violations of the Truth-in-Leasing regulations and is also liable for injunctive relief to

20

Date Filed 2/20/2024 6:49 PM
Superior Court - Middlesex
Docket Number

remedy those violations. Plaintiffs bring this claim individually and on behalf of all others similarly situated under 49 U.S.C. § 14704(a).

## JURY DEMAND

Plaintiffs request a trial by jury on all claims.

## PRAYER FOR RELIEF

Plaintiffs respectfully request that this Court grant the following relief:

a.     Certification of this action as a class action under Mass. R. Civ. P. 23;

b.     Appointing Plaintiffs Sosa, Aguilar, and Lamarque as class representatives and their counsel as class counsel;

c.     A judgment against Defendants for all damages to which Plaintiffs and the proposed class are entitled under Massachusetts law;

d.     Statutory trebling of damages, pursuant to Massachusetts law.

e.     A judgment against Defendant 28Freight for all damages that drivers sustained as a result of its violations of the Truth-in-Leasing regulations, including but not limited to restitution for all compensation not paid, all improper deductions and chargebacks made, and all other damages;

f.     Injunctive relief requiring Defendant to comply fully with the Truth-in-Leasing regulations in its contracts and in the deductions and chargebacks it takes from lease drivers' earnings;

g.     Pre- and post-judgment interest;

h.     Attorneys' fees and costs; and

i.     Any other relief as this Court deems just and proper.

21

Respectfully submitted,

CLAUDIO SOSA, LUIS AGUILAR, and
CRISTIAN LAMARQUE, individually and on
behalf all others similarly situated,

By their attorneys,

*/s/  Rachel Smit*
Hillary Schwab, BBO# 666029
Rachel Smit, BBO# 688294
FAIR WORK, P.C.
192 South Street, Suite 450
Boston, MA 02111
Tel:  (617) 607-3260
Fax:  (617) 488-2261
hillary@fairworklaw.com
rachel@fairworklaw.com

Dated: February 20, 2024

**MIDDLESEX, SS.**  *Commonwealth of Massachusetts*
SUPERIOR COURT DEPARTMENT OF THE TRIAL COURT

**In testimony that the foregoing is a true copy on file
and of record made by photographic process, I hereunto
set my hand and affix the seal of said Superior Court
this 26th day of April 2024.**

Deputy Assistant Clerk

Date Filed 4/10/2024 3:09 PM
Superior Court - Middlesex
Docket Number 2481CV00495

# EXHIBIT 1

## AGREEMENT FOR LEASED EQUIPMENT
## AND INDEPENDENT CONTRACTOR SERVICES

This Agreement for Leased Equipment and Independent Contractor Services ("Agreement") is entered into by and between (name)
CLAUDIO A. SOSA
("Owner") and 28Freight LLC dba TruckCourier, 226 Lowell St, Suite B, P. O. Box 2760, Woburn, MA 01801 ("TC") and is effective as of
_____5 - 4 - 22_____ Intending to be legally bound by the terms of this Agreement, Owner and TC mutually agree as follows:

## I.    INTENTION OF PARTIES

**WHEREAS**, TC conducts business as an interstate motor carrier of property pursuant to authority issued by the Federal Motor Carrier Safety Administration ("FMCSA") of the Federal Highway Administration ("FHWA"), and TC is subject to the rules and regulations of the FHWA, the FMCSA and its Office of Motor Carrier Safety ("OMCS") and U. S. Department of Transportation ("DOT") and;

**WHEREAS**, Owner is an independent contractor that (i) owns certain motor vehicle equipment; (ii) desires to lease a vehicle to TC and (iii) renders certain related services to facilitate the transportation of expedited shipments of goods to and from TC's customers within the time-certain service parameters required by TC's customers .

**NOW THEREFORE**, the parties agree as follows

TC and owner agree to use their best efforts to provide excellent service to customers by picking up and delivering freight on days and times demanded by customers. Neither Owner nor any of its employees or agents shall be considered to be employees of TC or of TC's customers at any time, under any circumstances, for any purpose whatsoever, and nothing in this Agreement shall be construed as inconsistent with that. Owner shall exercise independent discretion and judgment to determine the method, manner and means of performance of its contractual obligations under this Agreement. TC shall, however, issue reasonable and lawful instructions regarding the results to be accomplished by Owner and failure to accomplish such results shall be considered a breach of this Agreement by Owner. The term "Owner" as used in this Agreement shall mean Owner individually as the signatory to this Agreement or, depending on the context in which the term is used, Owner, collectively with its employees or agents, if any.

## II    LEASED VEHICLE:  REGULATORY, MAINTENANCE, OPERATING AND SAFETY PROVISIONS

2.01    **Leased Vehicle.** (a) The motor vehicle described in this Section 2.01 shall be referred to as the "Leased Vehicle", as follows:

2008 White Hino 268
_____
Vehicle – Year, Make and Model

5PVNE8JV282651019
_____
Serial Number

N/A
_____
Trailer – Year, Make and Model

N/A
_____
Serial Number

(b)     Owner hereby agrees to lease the Leased Vehicle to TC in good, safe and efficient operating condition. Owner certifies that the Leased Vehicle meets the requirements of all applicable federal, state and municipal laws and regulations.

2.02    **Operation of Leased Vehicle.**

(a) Owner agrees to control the operation of the Leased Vehicle and to determine the method, manner and means of performing the contractual obligations under this Agreement in all respects including, but not limited to, such matters as the rejection and selection of loads tendered by TC, the days and times Owner will operate the Leased Vehicle, the routes traveled, parking sites, and the repair of the Leased Vehicle, provided that Owner shall fully and efficiently perform its obligations under this Agreement. Nothing contained in this Agreement shall be construed, however, as vesting in TC any control over or right to control the Leased Vehicle or any of Owner's drivers.

(b) Owner and its drivers shall comply with all laws, rules and regulations of the FHWA, the FMCSA, the OMCS, the USDOT and any other federal, state and local governmental agencies. Nothing contained herein shall require Owner to violate any law or regulation relating to the safe operation of the motor vehicle equipment, the hours of service rules of the FMCSA or OMCS or any other safety rule or regulation.

2.03    **Control of Leased Vehicle for Regulatory Purposes.**   To the extent required by FMCSA Safety Regulations, as promulgated by the FHWA of the DOT or its successor (the "Safety Regulations") Owner agrees to relinquish to TC exclusive possession, control and use of the Leased Vehicle while it is in service to TC and its customers under this Agreement and TC agrees to assume responsibility for same during that time. Nothing contained in the Safety Regulations is intended to affect whether the Owner or any driver provided by the Owner is an independent contractor or an employee of TC. It is the intention of the parties that an independent contractor relationship exists when TC, as a carrier lessee, complies with 49 U.S.C. Section 14102 and related administrative requirements.

2.04    **Leased Vehicle Identification.**  TC shall furnish all vehicle identification required by applicable laws, rules, regulations and orders. Owner shall have the Leased Vehicle marked so that the markings show the vehicle is leased by TC, TC's address and license numbers. Owner agrees to remove or temporarily cover all TC identification signs on any occasion when the Leased Vehicle is used in the service of anyone other than TC, including the service of the Owner him/herself.

2.05    **Operating Costs and Expenses.**  Owner shall bear all costs and expenses incidental to the maintenance, repair and operation of the Leased Vehicle including, but not limited to, those set forth in Section 3.04(b) herein, for the operation of the Leased Vehicle. TC shall pay state operating authority

registration fees and permit fees, as may apply, that are required for the operation of the Leased Vehicle. In the event Owner voluntarily terminates this Agreement or TC terminates the Agreement for breach by Owner, TC may require Owner to reimburse TC for the unexpired portion of state operating authority registration and permit fees.

2.06    **Maintenance.** Owner shall equip and continuously maintain the Leased Vehicle in good, safe and efficient operating condition to meet all requirements imposed by (1) applicable federal laws and any rules, regulations and orders of the U.S. Department of Transportation (DOT), or other agencies, domestic or foreign, and (2) any laws, rules, regulations and orders of any state or municipal jurisdiction in which the Leased Vehicle is licensed to operate. In the event the Leased Vehicle is found to be deficient under any law, rule, regulation or order, Owner agrees that TC may remove the Leased Vehicle from service until compliance is achieved. The Owner agrees to conduct periodic inspections of the Leased Vehicle in accordance with the rules and regulations of the DOT, FMCSA, FHWA and OMCS, to maintain the appropriate records of such inspections and any resultant findings and to provide TC with said records as TC is required to maintain by governmental regulations. TC reserves the right to visually inspect and/or have the Leased Vehicle professionally inspected at any time.

Rental vehicles may not be substituted for Leased Vehicle during periods of repairs and maintenance unless TC provides its express written consent for such substitutions.

2.07    **Driver Requirements.** Owner shall furnish, at its expense, drivers for the Leased Vehicle who meet (1) all driving requirements imposed by rules, regulations, and orders of the DOT and (2) all driving requirements as established by TC from time to time in accordance with the rules and regulations of the DOT, FMCSA, FHWA and OMCS. Owner shall promptly furnish to TC for each of the Owner's drivers, evidence and documents that TC is required to maintain in order to comply with governmental regulations and documents which TC may request pursuant to TC's policies established from time to time. Owner shall not place any drivers in the Leased Vehicle until said documents are received and verified by TC. TC may require Owner to pay an application processing fee for each driver application. The Owner warrants that owner and its drivers shall comply with all driver requirements imposed by the DOT, FMCSA and FHWA, and TC and shall comply with all laws and federal and state agency regulations applicable to the operation of for-hire motor carriers. **No vehicle may be operated under this Agreement by any driver (Owner or otherwise) who is not in compliance with the criteria set forth by the DOT, FMCSA, FHWA and OMCS.**

2.08    **Logs and Reports.** Owner shall prepare and file with TC such logs, mileage reports, toll receipts and other documents in such manner and at such times as will enable Owner and TC to comply with all laws, rules, regulations and orders respecting same.

2.09    **Employment of Qualified Persons.** Owner may employ persons to perform, or assist Owner in performing, its contractual obligations under this Agreement. In the event Owner employs drivers (other than Owner, himself, if an individual) to

perform its contractual obligations under this Agreement, all such drivers shall be Owner's employees or agents exclusively, and shall be subject solely to Owner's direction and control including the selection, hiring, firing, supervising, instructing, training, discipline and setting of wages, hours and working conditions. TC shall have no responsibility to (i) make any payment to Owner's employees or agents, (ii) make any deductions for, or to pay, social security taxes, withholding taxes, or similar charges with respect to Owner or Owner's employees or agents or (iii) provide worker's compensation or unemployment compensation coverage to owner's employees or agents.

## III     GENERAL INSURANCE COVERAGES AND ADMINISTRATIVE MATTERS

3.01    **Insurance Coverages.** TC shall provide, at its expense, insurance coverage for the protection of the public pursuant to 49 U.S.C. Section 13906. Owner shall provide, at its expense, and keep in force at all times during the term of this Agreement, any and all insurance necessary for the safe and efficient performance of Owner's obligations under this agreement including, but not limited to, the following:

(a) Work accident insurance or workers' compensation insurance covering Owner and all persons utilized by Owner in performance of this Agreement, including employees domiciled in states where workers' compensation coverage is not mandatory by law.

(b) Workers' compensation insurance coverage, as required by law, covering all persons employed by Owner in performance of this Agreement.

(c) **NOTICE OF WAIVER OF WORKERS COMPENSATION COVERAGE UNDER MASSACHUSETTS LAW.** In the event Owner is an individual and should personally operate a vehicle in service to TC, then this provision constitutes Owner's written notice to carrier, pursuant to Mass. Gen. Laws Chapter 152, s.24, that Owner reserves his right of action at common law with regard to any injuries he might suffer that otherwise may be compensable under the Massachusetts Workers Compensation Act, in lieu of any compensation that might otherwise be available to employees under Mass. Gen. Laws Chapter 152. Therefore, Owner agrees, understands and is notified that the workers compensation laws of the Commonwealth of Massachusetts will not cover him personally for any accident or injuries arising out of and in the course of his service in driving a Leased Vehicle on behalf of TC and he further understands, agrees and is notified that he is waiving any rights covered by said Massachusetts Workers Compensation Act and elects not to be covered by said statute. Owner agrees, understands and is notified that the common law of negligence will apply to any claim(s) Owner may have against TC for injuries suffered by Owner while driving a Leased Vehicle.

(d) Insurance coverage on the Leased Vehicle and such coverage shall name TruckCourier as an additional insured and provide TruckCourier with at least Thirty (30) days prior written notice of cancellation or material changes in coverage. The required limits are:

Vehicles less than 10,000 GVW - (state minimum limits) OR (minimum limits of $100,000/100,000/25,000).

Vehicles 10,000 to 20,000 GVW - $300,000 combined single limit.

Vehicles 20,001 to 45,000 GVW - $500,000 combined single limit.

3.02    **Liability for Leased Vehicle.**  Owner agrees that TC shall not be responsible, financially or otherwise, to Owner for any depreciation, loss or damage that may occur to the Leased Vehicle whether by collision, fire, theft, vandalism or any other occurrence.

3.03    **Indemnification.**  Except to the extent of recovery pursuant to any insurance coverages required by this Agreement, Owner shall indemnify and save TC harmless from and against the following:

(a)   The first $1,000.00 on a per incident basis of any loss of or damage to cargo tendered for shipment or handling while such cargo is in the possession of Owner or Owner's employees or agents.

(b)   Any and all claims, lawsuits, demands, losses, liability, costs and expenses, including attorney's fees and other reasonable costs of defense arising from any injury to or death of any persons or damage to property caused by, arising out of or connected in any way, directly or indirectly, with Owner's performance under this Lease Agreement.  The indemnification contemplated in this paragraph includes but is not limited to any violation of FHWA, DOT, OMCS or FMCSA regulations or the regulations of any state or local authority, damage to vehicles (including trailer equipment) while in Owner's possession, and any fines, penalties or court costs assessed against TC for activities of Owner or its drivers.

(c)   Any and all claims brought against TC and liabilities incurred by TC arising from the Owner's relationship with Owner's employees or agents, whether under industrial accident laws, workers' compensation laws, unemployment compensation laws, or any other federal, state or municipal laws, rules, regulations and orders applicable to the relationship between employers and employees.

(d)   Any and all claims brought against TC or liabilities incurred by TC for or on account of Owner's failure or failure of Owner's employees or agents to comply with any laws, rules, regulations or orders applicable to Owner's business.

3.04    **Deductions/Charge-Back Items.**  During the term of this Lease Agreement TC may, at its option, advance monies directly to Owner or for the benefit of Owner and deduct such costs and charges from Owner's compensation at the time of payment or settlement, as set forth in this Lease Agreement.  Items subject to charge-back deduction from Owner's compensation include, but are not limited to, the following:

(a)   cost of communication equipment which TC may make available to Owner; advances of base plate; single state registration fees; fuel advances; cash advances; advances for repairs to Owner's motor vehicle equipment;

damages paid by TC for shipper loss and damage claims; damage to any equipment of TC caused by Owner.

(b)  Any amounts for which the Owner is financially responsible pursuant to Section 3.03 of this Agreement (Indemnification).

(c)  Any amounts for which Owner is financially responsible pursuant to Section 4.02 (Owner's Customer Service Responsibility).

(d)  Any amounts incurred by TC for the drug testing of Owner or Owner's employees.

(e)  Any deduction agreed upon in advance between TC and Owner.

Owner hereby agrees that TC may deduct the above items from Owner's compensation under this Lease Agreement.  Owner further authorizes TC to deduct any amount required by law in the event of a garnishment.

**3.05   Absence of Conditions to Executing Agreement.**  Owner shall not be required to purchase, lease or rent any products, equipment or services from TC as a condition to entering into this Agreement.

**3.06   C-TPAT Security Requirements.**  All contractors must adhere to C-TPAT Minimum Secury Criteria (copy provided) and, at no time, shall a contractor transport cargo into the United States under TruckCourier's SCAC code unless he/she is hauling cargo for TruckCourier.

## IV.  COMPENSATION, SETTLEMENT AND RELATED MATTERS

**4.01   Base Compensation.**  For performance by Owner of the contractual obligations under this Agreement, TC shall compensate Owner a percentage of the base mileage and accessorial charges directly related to Owner's vehicle, based on the scale in Appendix 1 of this Agreement.  These amounts will be directly related to charges by TC to its customers, subject to deductions authorized in Section 3.04 of this Agreement.

**4.02   Owner's Right to Review Pricing Documents.**  The Owner shall have the right to examine copies of TC documents from which rates and charges that appear on a customer's freight bill are computed.  TC shall furnish Owner a copy of rated freight bill or a report containing the same information.

**4.03   Owner's Customer Service Responsibility.**  Owner recognizes that TC is in the business of transportation of expedited shipments of goods within certain time-sensitive service parameters required by TC customers.  This requires not only on-time pickup and delivery but also regular and accurate communication

6

with TC customers. In order for TC to meet customer requirements, Owner agrees to accept the following customer service responsibilities:

(a) Guarantee of Service: Owner agrees and understands that unless excused by the terms of Section 6.08 (Force Majeure) of this Agreement, if TC honors a "guarantee of service" claim from TC's customer, TC has the right to proportionately adjust Owner's compensation for such claim and may deduct such adjustment from amounts due Owner.

(b) Owner's Inability to Perform: It is Owner's responsibility to complete the run once accepted. In the event Owner is unable to complete the required services under this Agreement after dispatch, unless excused by the terms of Section 6.08 (Force Majeure), TC then has the right to substitute Owner's vehicle and other vehicles to make the delivery of the shipment or any part thereof. Any expenses incurred by TC related to such substitution or related to actions taken by TC to complete the required services (including costs associated with transfers, air charters, etc.) that are over and above the expenses that TC would otherwise incur in paying Owner to perform such services are agreed to be expenses which may be chargeable to and deductible from amounts due Owner.

4.04  **Time and Manner of Settlement.** (a) Payment to Owner of the amount of compensation due under Article IV of the Agreement for a given trip less (i) any advance installment payments made pursuant to Section 4.30 (Advance Installment Payment) and (ii) any deductions made pursuant to Section 3.05(b) shall be made by TC within fifteen (15) days after submittal by Owner of the necessary delivery documents and other paperwork concerning the trip as described below. Unless Owner agrees to be compensated through "CMS" as described in 4.04 (b) below, all settlements shall be made through TC's office at Woburn, MA. TC shall not be obligated to make payment unless or until the following documentation is submitted to TC by Owner:

(1) Two (2) copies of the TC Bill of Lading signed by consignee.

(2) One copy of shipper's bill of lading, including originals (top copy) of any government bills of lading, where applicable.

(3) Original driver's logs and driver's records of duty status in accordance with 49 C.F.R. s. 395.8(k), where applicable.

(4) Toll receipts, where applicable.

(5) One validated copy of any international border crossing document, (i.e. cargo manifest, transit manifest or cargo control documents), where applicable.

Notwithstanding the foregoing, if, at the time of termination of this Agreement, Owner fails to satisfy the obligations set for in Section 5.04 (Obligations Upon Termination) below, then TC may withhold final payment of Owner's compensation otherwise due under this Agreement.

(b) The parties agree that the compensation due Owner from TC under this Agreement shall be paid by TC to Owner through Contractor Management Services, Phoenix, AZ (hereafter "CMS"). Owner hereby represents that Owner and any drivers employed by Owner are enrolled as members of the CMS program and Owner hereby designates CMS as Owner's settlement agent to receive, on behalf of Owner, any payments due from TC to Owner under this Agreement. In the event there is any conflict between the terms of this Agreement and those of Owner's Agreement with CMS, then the terms of this Agreement will prevail.

**4.05  Filing and Reporting Responsibilities.** TC shall report payments made to Owner pursuant to this Agreement as required by law, but shall not withhold any amounts for taxes on behalf of Owner. **Owner shall be solely responsible for the filing of any local, state, or federal income tax returns and the payment of such taxes or other charges occasioned by Owner's status as an independent contractor. TC shall not be responsible for the payment of any local, state or federal employment or income taxes with respect to Owner.**

Settlement statements shall contain a computation of the settlement amount Owner is entitled to receive and an itemized listing of all deductions from Owner's settlement.

**4.06  Non TC Use (Including Trip Leasing).** In order for TC to serve its customers, TC must know when Owner uses the Leased Vehicle for any "non-TC use." Accordingly, in the event Owner intends to use the Leased Vehicle in any non-TC use, including trip leasing, Owner agrees that prior to such use he shall (1) notify TC in advance of such intended use, (2) cover or remove all TC identification signs, placards and permit markings and (3) verify that Owner's or other carrier's (if trip leasing) public liability and cargo insurance, where applicable, is in effect. Owner understands that neither Owner nor its agents are authorized to accept trip leases on behalf of TC and further agrees that, in the event of a trip lease, the Leased Vehicle will operate under the other carrier's (trip lessee's) operating authority and permits.

## V.  TERM/TERMINATION/CONFIDENTIALITY/REMEDIES

**5.01  Initial Term.** Owner and TC agree that the initial term of this Agreement shall be 90 days.

**5.02  Renewal Terms.** This Agreement shall automatically renew for successive terms of one (1) year after expiration of the Initial Term unless Owner or TC provides the other party notice of termination in writing at least ten (10) days prior to the expiration of the initial term or any successive renewal term.

**5.03  Termination.** This Agreement may be terminated as follows: (1) at any time, by either party, by giving notice to the other party in writing at least ten (10) days prior to the effective termination date; (2) immediately, by either party, by giving notice to the other party in writing in the event of a breach of any provision of this

(b) The parties agree that the compensation due Owner from TC under this Agreement shall be paid by TC to Owner through Contractor Management Services, Phoenix, AZ (hereafter "CMS"). Owner hereby represents that Owner and any drivers employed by Owner are enrolled as members of the CMS program and Owner hereby designates CMS as Owner's settlement agent to receive, on behalf of Owner, any payments due from TC to Owner under this Agreement. In the event there is any conflict between the terms of this Agreement and those of Owner's Agreement with CMS, then the terms of this Agreement will prevail.

4.05    **Filing and Reporting Responsibilities.** TC shall report payments made to Owner pursuant to this Agreement as required by law, but shall not withhold any amounts for taxes on behalf of Owner. **Owner shall be solely responsible for the filing of any local, state, or federal income tax returns and the payment of such taxes or other charges occasioned by Owner's status as an independent contractor. TC shall not be responsible for the payment of any local, state or federal employment or income taxes with respect to Owner.**

Settlement statements shall contain a computation of the settlement amount Owner is entitled to receive and an itemized listing of all deductions from Owner's settlement.

4.06    **Non TC Use (Including Trip Leasing).** In order for TC to serve its customers, TC must know when Owner uses the Leased Vehicle for any "non-TC use." Accordingly, in the event Owner intends to use the Leased Vehicle in any non-TC use, including trip leasing, Owner agrees that prior to such use he shall (1) notify TC in advance of such intended use, (2) cover or remove all TC identification signs, placards and permit markings and (3) verify that Owner's or other carrier's (if trip leasing) public liability and cargo insurance, where applicable, is in effect. Owner understands that neither Owner nor its agents are authorized to accept trip leases on behalf of TC and further agrees that, in the event of a trip lease, the Leased Vehicle will operate under the other carrier's (trip lessee's) operating authority and permits.

## V.    TERM/TERMINATION/CONFIDENTIALITY/REMEDIES

5.01    **Initial Term.** Owner and TC agree that the initial term of this Agreement shall be 90 days.

5.02    **Renewal Terms.** This Agreement shall automatically renew for successive terms of one (1) year after expiration of the Initial Term unless Owner or TC provides the other party notice of termination in writing at least ten (10) days prior to the expiration of the initial term or any successive renewal term.

5.03    **Termination.** This Agreement may be terminated as follows: (1) at any time, by either party, by giving notice to the other party in writing at least ten (10) days prior to the effective termination date; (2) immediately, by either party, by giving notice to the other party in writing in the event of a breach of any provision of this

Agreement by the other party which shall include, but is not limited to, failure to provide service for the customer and necessary communications for the customer within the time-certain parameters required by the customer; and (3) immediately in the event the Leased Vehicle is totally destroyed or otherwise permanently unavailable.

5.04    **Obligations Upon Termination.** Upon termination of this Agreement for any reason, Owner shall immediately: (1) return to TC all fuel stickers and operating authority permits and (2) remove all TC vehicle identification materials and advertising signs and provide proof of same. If Owner fails to comply with this section or refuses to provide evidence acceptable to TC demonstrating compliance, Owner agrees that TC may withhold the return of any monies owed to Owner including settlement payments.

5.05    **Confidentiality, Non-Disclosure and Non-Competition.**

(1) Owner acknowledges that in the course of its performance under this Agreement, Owner will have access to and become familiar with certain information relating to TC's customers that is not otherwise generally known to the public. Owner agrees to keep in strict confidence and whether directly or indirectly, not to make known, divulge, reveal or make available to others any such information. Further, Owner agrees to inform any future employer or motor carrier lessee of its agreement to Confidentiality with respect to this section of this Lease Agreement. This Section 5.05(1) (Confidentiality) shall survive the term of this Agreement.

(2) During the term of this Lease Agreement, and in the event of its termination for any reason, Owner agrees that it will not engage in any trade practices which are or have the potential to be detrimental to the interests of TC. Without limiting the generality of the foregoing, during the term of this Lease Agreement and for a period of two (2) years following such termination, Owner agrees that it will not:

(a) Induce any employee, independent contractor or consultant of TC to leave the employ of or association with TC for any reason;

(b) Engage any employee, independent contractor or consultant of TC in connection with any business which is similar to or competitive with that of TC, except on the behalf of TC to the extent that Owner must hire drivers or employees to perform Owner's obligations to TC under this Agreement.

(c) Solicit business from customers or prospects of TC in connection with any business which is similar to or competitive with that of TC, except on behalf of TC to the extent that Owner must hire drivers or employees to perform Owner's obligations to TC under this Agreement.

(3) In the event TC institutes legal action against Owner to enforce this section as to confidentiality or non-competition, as a result of which TC is awarded injunctive relief, damages or other relief, then TC will be entitled to recover reasonable attorney's fees incurred in obtaining such relief or damages.

## VI.     MISCELLANEOUS

**6.01    Agency.** Neither TC nor Owner is the agent of the other, and neither shall have the right to bind the other by contract or otherwise, except as specifically provided in this Agreement.

**6.02    Merger of Understanding.** This Agreement sets forth correctly the effect of all preliminary negotiations, understanding, and agreements between the parties and supersedes any and all previous agreements, whether written or verbal. This Agreement and appendices shall not be modified, altered, changed or amended in any respect unless in writing and signed by both parties.

**6.03    Governing Law.** This Agreement shall be interpreted under the laws of the state of Massachusetts without regard to the conflict of laws and principles thereof.

**6.04    Equal Employment Opportunity.** Owner shall abide by all applicable laws, regulations and rules pertaining to equal employment opportunity and/or affirmative action.

**6.05    Captions.** Captions appearing in this Agreement are for convenience only and do not in any way limit, amplify, modify or otherwise affect the terms and provisions of this Agreement.

**6.06    Savings Clause.** If any part of this Agreement is declared unlawful or unenforceable, the remainder of this Agreement shall remain in full force and effect.

**6.07    Non-Waiver.** Failure of either party strictly to enforce any provision of this Agreement shall not be construed as a waiver thereof or as excusing the other party from future performance.

**6.08    Force Majeure.** The performance of the obligations of this Agreement on the part of either Owner or TC shall be excused by reason of acts of God, natural disasters, civil commotion, government interference or regulations or other similar contingencies beyond the control of the affected party.

**6.09    Assignment.** This Agreement shall be binding upon and inure to the benefit of the parties to this Agreement and their respective heirs, successors and assigns, but shall not be assigned by either party without the written consent of the other party.

OWNER ACKNOWLEDGES AND REPRESENTS THAT OWNER HAS READ AND FULLY UNDERSTANDS THE PROVISIONS OF THIS AGREEMENT AND HAS HAD SUFFICIENT TIME AND OPPORTUNITY TO CONSULT WITH PERSONAL, FINANCIAL, TAX AND LEGAL ADVISORS PRIOR TO EXECUTING THIS AGREEMENT.

IN WITNESS WHEREOF, the Owner and TC have signed this Agreement in duplicate on the dates set forth below.

28FREIGHT LLC dba TRUCKCOURIER

OWNER

_Claudio A Sos____

Print or type Name of Owner

By: _____

Signature

Signature of Owner

Date: ___3-4-22___

Date: ___3-4-22___

Title: ___Operations___

Federal ID Number

11

# EXHIBIT 2

## AGREEMENT FOR LEASED EQUIPMENT
## AND INDEPENDENT CONTRACTOR SERVICES

This Agreement for Leased Equipment and Independent Contractor Services
("Agreement") is entered into by and between (name) _LUIS AGUILAR_

("Owner") and 28Freight LLC dba TruckCourier, 226 Lowell St Suite B, P. O. Box 2760,
Woburn, MA 01801 ("TC") and is effective as of
_4-25-19_. Intending to be legally bound by the terms of
this Agreement, Owner and TC mutually agree as follows:

### I.    INTENTION OF PARTIES

**WHEREAS**, TC conducts business as an interstate motor carrier of property pursuant to
authority issued by the Federal Motor Carrier Safety Administration ("FMCSA") of the
Federal Highway Administration ("FHWA"), and TC is subject to the rules and
regulations of the FHWA, the FMCSA and its Office of Motor Carrier Safety ("OMCS")
and U. S. Department of Transportation ("DOT") and;

**WHEREAS**, Owner is an independent contractor that (i) owns certain motor vehicle
equipment; (ii) desires to lease a vehicle to TC and (iii) renders certain related services
to facilitate the transportation of expedited shipments of goods to and from TC's
customers within the time-certain service parameters required by TC's customers .

**NOW THEREFORE**, the parties agree as follows:

TC and owner agree to use their best efforts to provide excellent service to customers by
picking up and delivering freight on days and times demanded by customers. Neither
Owner nor any of its employees or agents shall be considered to be employees of TC or
of TC's customers at any time, under any circumstances, for any purpose whatsoever,
and nothing in this Agreement shall be construed as inconsistent with that. Owner shall
exercise independent discretion and judgment to determine the method, manner and
means of performance of its contractual obligations under this Agreement. TC shall,
however, issue reasonable and lawful instructions regarding the results to be
accomplished by Owner and failure to accomplish such results shall be considered a
breach of this Agreement by Owner. The term "Owner" as used in this Agreement shall
mean Owner individually as the signatory to this Agreement or, depending on the
context in which the term is used, Owner, collectively with its employees or agents, if
any.

### II    LEASED VEHICLE: REGULATORY, MAINTENANCE, OPERATING AND
SAFETY PROVISIONS

**2.01    Leased Vehicle.** (a) The motor vehicle described in this Section 2.01 shall be
referred to as the "Leased Vehicle", as follows:

_FreighTLiNer 2012 M2._

Vehicle – Year, Make and Model

_IFVACWDT7CDBK2393_

Serial Number

Trailer – Year, Make and Model

Serial Number

(b)   Owner hereby agrees to lease the Leased Vehicle to TC in good, safe and efficient operating condition. Owner certifies that the Leased Vehicle meets the requirements of all applicable federal, state and municipal laws and regulations.

2.02   **Operation of Leased Vehicle.**

(a)   Owner agrees to control the operation of the Leased Vehicle and to determine the method, manner and means of performing the contractual obligations under this Agreement in all respects including, but not limited to, such matters as the rejection and selection of loads tendered by TC; the days and times Owner will operate the Leased Vehicle; the routes traveled; parking sites; and the repair of the Leased Vehicle, provided that Owner shall fully and efficiently perform its obligations under this Agreement. Nothing contained in this Agreement shall be construed, however, as vesting in TC any control over or right to control the Leased Vehicle or any of Owner's drivers.

(b)   Owner and its drivers shall comply with all laws, rules and regulations of the FHWA, the FMCSA, the OMCS, the USDOT and any other federal, state and local governmental agencies. Nothing contained herein shall require Owner to violate any law or regulation relating to the safe operation of the motor vehicle equipment, the hours of service rules of the FMCSA or OMCS or any other safety rule or regulation.

2.03   **Control of Leased Vehicle for Regulatory Purposes.**   To the extent required by FMCSA Safety Regulations, as promulgated by the FHWA of the DOT or its successor (the "Safety Regulations") Owner agrees to relinquish to TC exclusive possession, control and use of the Leased Vehicle while it is in service to TC and its customers under this Agreement and TC agrees to assume responsibility for same during that time. Nothing contained in the Safety Regulations is intended to affect whether the Owner or any driver provided by the Owner is an independent contractor or an employee of TC. It is the intention of the parties that an independent contractor relationship exists when TC, as a carrier lessee, complies with 49 U.S.C. Section 14102 and related administrative requirements.

2.04   **Leased Vehicle Identification.**  TC shall furnish all vehicle identification required by applicable laws, rules, regulations and orders. Owner shall have the Leased Vehicle marked so that the markings show the vehicle is leased by TC, TC's address and license numbers. Owner agrees to remove or temporarily cover all TC identification signs on any occasion when the Leased Vehicle is used in the service of anyone other than TC, including the service of the Owner him/herself.

2.05   **Operating Costs and Expenses.**  Owner shall bear all costs and expenses incidental to the maintenance, repair and operation of the Leased Vehicle including, but not limited to, those set forth in Section 3.04(b) herein, for the operation of the Leased Vehicle. TC shall pay state operating authority

registration fees and permit fees, as may apply, that are required for the operation of the Leased Vehicle. In the event Owner voluntarily terminates this Agreement or TC terminates the Agreement for breach by Owner, TC may require Owner to reimburse TC for the unexpired portion of state operating authority registration and permit fees.

2.06    **Maintenance.**  Owner shall equip and continuously maintain the Leased Vehicle in good, safe and efficient operating condition to meet all requirements imposed by (1) applicable federal laws and any rules, regulations and orders of the U.S. Department of Transportation (DOT), or other agencies, domestic or foreign, and (2) any laws, rules, regulations and orders of any state or municipal jurisdiction in which the Leased Vehicle is licensed to operate.  In the event the Leased Vehicle is found to be deficient under any law, rule, regulation or order, Owner agrees that TC may remove the Leased Vehicle from service until compliance is achieved.  The Owner agrees to conduct periodic inspections of the Leased Vehicle in accordance with the rules and regulations of the DOT, FMCSA, FHWA and OMCS, to maintain the appropriate records of such inspections and any resultant findings and to provide TC with said records as TC is required to maintain by governmental regulations.  TC reserves the right to visually inspect and/or have the Leased Vehicle professionally inspected at any time.

Rental vehicles may not be substituted for Leased Vehicle during periods of repairs and maintenance unless TC provides its express written consent for such substitutions.

2.07    **Driver Requirements.**  Owner shall furnish, at its expense, drivers for the Leased Vehicle who meet (1) all driving requirements imposed by rules, regulations, and orders of the DOT and (2) all driving requirements as established by TC from time to time in accordance with the rules and regulations of the DOT, FMCSA, FHWA and OMCS.  Owner shall promptly furnish to TC for each of the Owner's drivers, evidence and documents that TC is required to maintain in order to comply with governmental regulations and documents which TC may request pursuant to TC's policies established from time to time.  Owner shall not place any drivers in the Leased Vehicle until said documents are received and verified by TC.  TC may require Owner to pay an application processing fee for each driver application.  The Owner warrants that owner and its drivers shall comply with all driver requirements imposed by the DOT, FMCSA and FHWA, and TC and shall comply with all laws and federal and state agency regulations applicable to the operation of for-hire motor carriers.  **No vehicle may be operated under this Agreement by any driver (Owner or otherwise) who is not in compliance with the criteria set forth by the DOT, FMCSA, FHWA and OMCS.**

2.08    **Logs and Reports.**  Owner shall prepare and file with TC such logs, mileage reports, toll receipts and other documents in such manner and at such times as will enable Owner and TC to comply with all laws, rules, regulations and orders respecting same.

2.09    **Employment of Qualified Persons.**  Owner may employ persons to perform, or assist Owner in performing, its contractual obligations under this Agreement.  In the event Owner employs drivers (other than Owner, himself, if an individual) to

3

perform its contractual obligations under this Agreement, all such drivers shall be Owner's employees or agents exclusively, and shall be subject solely to Owner's direction and control including the selection, hiring, firing, supervising, instructing, training, discipline and setting of wages, hours and working conditions. TC shall have no responsibility to (i) make any payment to Owner's employees or agents, (ii) make any deductions for, or to pay, social security taxes, withholding taxes, or similar charges with respect to Owner or Owner's employees or agents or (iii) provide worker's compensation or unemployment compensation coverage to owner's employees or agents.

## III    GENERAL INSURANCE COVERAGES AND ADMINISTRATIVE MATTERS

3.01    **Insurance Coverages.** TC shall provide, at its expense, insurance coverage for the protection of the public pursuant to 49 U.S.C. Section 13906. Owner shall provide, at its expense, and keep in force at all times during the term of this Agreement, any and all insurance necessary for the safe and efficient performance of Owner's obligations under this agreement including, but not limited to, the following:

(a) Work accident insurance or workers' compensation insurance covering Owner and all persons utilized by Owner in performance of this Agreement, including employees domiciled in states where workers' compensation coverage is not mandatory by law.

(b) Workers' compensation insurance coverage, as required by law, covering all persons employed by Owner in performance of this Agreement.

(c) NOTICE OF WAIVER OF WORKERS COMPENSATION COVERAGE UNDER MASSACHUSETTS LAW. In the event Owner is an individual and should personally operate a vehicle in service to TC, then this provision constitutes Owner's written notice to carrier, pursuant to Mass. Gen. Laws Chapter 152, s.24, that Owner reserves his right of action at common law with regard to any injuries he might suffer that otherwise may be compensable under the Massachusetts Workers Compensation Act, in lieu of any compensation that might otherwise be available to employees under Mass. Gen. Laws Chapter 152. Therefore, Owner agrees, understands and is notified that the workers compensation laws of the Commonwealth of Massachusetts will not cover him personally for any accident or injuries arising out of and in the course of his service in driving a Leased Vehicle on behalf of TC and he further understands, agrees and is notified that he is waiving any rights covered by said Massachusetts Workers Compensation Act and elects not to be covered by said statute. Owner agrees, understands and is notified that the common law of negligence will apply to any claim(s) Owner may have against TC for injuries suffered by Owner while driving a Leased Vehicle.

(d) Insurance coverage on the Leased Vehicle and such coverage shall name TruckCourier as an additional insured and provide TruckCourier with at least Thirty (30) days prior written notice of cancellation or material changes in coverage. The required limits are:

4

- ○ Vehicles less than 10,000 GVW - (state minimum limits) OR (minimum limits of $100,000/100,000/25,000).
- ○ Vehicles 10,000 to 20,000 GVW - $300,000 combined single limit.
- ○ Vehicles 20,001 to 45,000 GVW - $500,000 combined single limit.

3.02   **Liability for Leased Vehicle.**  Owner agrees that TC shall not be responsible, financially or otherwise, to Owner for any depreciation, loss or damage that may occur to the Leased Vehicle whether by collision, fire, theft, vandalism or any other occurrence.

3.03   **Indemnification.**  Except to the extent of recovery pursuant to any insurance coverages required by this Agreement, Owner shall indemnify and save TC harmless from and against the following:

(a) The first $1,000.00 on a per incident basis of any loss of or damage to cargo tendered for shipment or handling while such cargo is in the possession of Owner or Owner's employees or agents.

(b) Any and all claims, lawsuits, demands, losses, liability, costs and expenses, including attorney's fees and other reasonable costs of defense arising from any injury to or death of any persons or damage to property caused by, arising out of or connected in any way, directly or indirectly, with Owner's performance under this Lease Agreement.  The indemnification contemplated in this paragraph includes but is not limited to any violation of FHWA, DOT, OMCS or FMCSA regulations or the regulations of any state or local authority, damage to vehicles (including trailer equipment) while in Owner's possession; and any fines, penalties or court costs assessed against TC for activities of Owner or its drivers.

(c) Any and all claims brought against TC and liabilities incurred by TC arising from the Owner's relationship with Owner's employees or agents, whether under industrial accident laws, workers' compensation laws, unemployment compensation laws, or any other federal, state or municipal laws, rules, regulations and orders applicable to the relationship between employers and employees.

(d) Any and all claims brought against TC or liabilities incurred by TC for or on account of Owner's failure or failure of Owner's employees or agents to comply with any laws, rules, regulations or orders applicable to Owner's business.

3.04   **Deductions/Charge-Back Items.**  During the term of this Lease Agreement TC may, at its option, advance monies directly to Owner or for the benefit of Owner and deduct such costs and charges from Owner's compensation at the time of payment or settlement, as set forth in this Lease Agreement.  Items subject to charge-back deduction from Owner's compensation include, but are not limited to, the following:

(a) cost of communication equipment which TC may make available to Owner; advances of base plate; single state registration fees; fuel advances; cash advances; advances for repairs to Owner's motor vehicle equipment;

damages paid by TC for shipper loss and damage claims; damage to any equipment of TC caused by Owner.

(b) Any amounts for which the Owner is financially responsible pursuant to Section 3.03 of this Agreement (Indemnification).

(c) Any amounts for which Owner is financially responsible pursuant to Section 4.02 (Owner's Customer Service Responsibility).

(d) Any amounts incurred by TC for the drug testing of Owner or Owner's employees.

(e) Any deduction agreed upon in advance between TC and Owner.

Owner hereby agrees that TC may deduct the above items from Owner's compensation under this Lease Agreement. Owner further authorizes TC to deduct any amount required by law in the event of a garnishment.

3.05    **Absence of Conditions to Executing Agreement.** Owner shall not be required to purchase, lease or rent any products, equipment or services from TC as a condition to entering into this Agreement.

3.06    **C-TPAT Security Requirements.** All contractors must adhere to C-TPAT Minimum Secury Critera (copy provided) and, at no time, shall a contractor transport cargo into the United States under TruckCourier's SCAC code unless he/she is hauling cargo for TruckCourier.

## IV.    COMPENSATION, SETTLEMENT AND RELATED MATTERS

4.01    **Base Compensation.** For performance by Owner of the contractual obligations under this Agreement, TC shall compensate Owner a percentage of the base mileage and accessorial charges directly related to Owner's vehicle, based on the scale in Appendix 1 of this Agreement. These amounts will be directly related to charges by TC to its customers, subject to deductions authorized in Section 3.04 of this Agreement.

4.02    **Owner's Right to Review Pricing Documents.** The Owner shall have the right to examine copies of TC documents from which rates and charges that appear on a customer's freight bill are computed. TC shall furnish Owner a copy of rated freight bill or a report containing the same information.

4.03    **Owner's Customer Service Responsibility.** Owner recognizes that TC is in the business of transportation of expedited shipments of goods within certain time-sensitive service parameters required by TC customers. This requires not only on-time pickup and delivery but also regular and accurate communication

with TC customers. In order for TC to meet customer requirements, Owner agrees to accept the following customer service responsibilities:

(a) Guarantee of Service: Owner agrees and understands that unless excused by the terms of Section 6.08 (Force Majeure) of this Agreement, if TC honors a "guarantee of service" claim from TC's customer, TC has the right to proportionately adjust Owner's compensation for such claim and may deduct such adjustment from amounts due Owner.

(b) Owner's Inability to Perform: It is Owner's responsibility to complete the run once accepted. In the event Owner is unable to complete the requires services under this Agreement after dispatch, unless excused by the terms of Section 6.08 (Force Majeure), TC then has the right to substitute Owner's vehicle and other vehicles to make the delivery of the shipment or any part thereof. Any expenses incurred by TC related to such substitution or related to actions taken by TC to complete the required services (including costs associated with transfers, air charters, etc.) that are over and above the expenses that TC would otherwise incur in paying Owner to perform such services are agreed to be expenses which may be chargeable to and deductible from amounts due Owner.

4.04    **Time and Manner of Settlement.** (a) Payment to Owner of the amount of compensation due under Article IV of the Agreement for a given trip less (I) any advance installment payments made pursuant to Section 4.30 (Advance Installment Payment) and (ii) any deductions made pursuant to Section 3.05(b) shall be made by TC within fifteen (15) days after submittal by Owner of the necessary delivery documents and other paperwork concerning the trip as described below. Unless Owner agrees to be compensated through "CMS" as described in 4.04 (b) below, all settlements shall be made through TC's office at Woburn, MA. TC shall not be obligated to make payment unless or until the following documentation is submitted to TC by Owner:

(1) Two (2) copies of the TC Bill of Lading signed by consignee.

(2) One copy of shipper's bill of lading, including originals (top copy) of any government bills of lading, where applicable.

(3) Original driver's logs and driver's records of duty status in accordance with 49 C.F.R. s. 395.8(k), where applicable.

(4) Toll receipts, where applicable.

(5) One validated copy of any international border crossing document, (i.e. cargo manifest, transit manifests or cargo control documents), where applicable.

Notwithstanding the foregoing, if, at the time of termination of this Agreement, Owner fails to satisfy the obligations set for in Section 5.04 (Obligations Upon Termination) below, then TC may withhold final payment of Owner's compensation otherwise due under this Agreement.

(b)  The parties agree that the compensation due Owner from TC under this Agreement shall be paid by TC to Owner through Contractor Management Services, Phoenix, AZ (hereafter "CMS").  Owner hereby represents that Owner and any drivers employed by Owner are enrolled as members of the CMS program and Owner hereby designates CMS as Owner's settlement agent to receive, on behalf of Owner, any payments due from TC to Owner under this Agreement.  In the event there is any conflict between the terms of this Agreement and those of Owner's Agreement with CMS, then the terms of this Agreement will prevail.

4.05    **Filing and Reporting Responsibilities.**  TC shall report payments made to Owner pursuant to this Agreement as required by law, but shall not withhold any amounts for taxes on behalf of Owner.  **Owner shall be solely responsible for the filing of any local, state, or federal income tax returns and the payment of such taxes or other charges occasioned by Owner's status as an independent contractor. TC shall not be responsible for the payment of any local, state or federal employment or income taxes with respect to Owner.**

Settlement statements shall contain a computation of the settlement amount Owner is entitled to receive and an itemized listing of all deductions from Owner's settlement.

4.06    **Non TC Use (including Trip Leasing).**  In order for TC to serve its customers, TC must know when Owner uses the Leased Vehicle for any "non-TC use." Accordingly, in the event Owner intends to use the Leased Vehicle in any non-TC use, including trip leasing, Owner agrees that prior to such use he shall (1) notify TC in advance of such intended use, (2) cover or remove all TC identification signs, placards and permit markings and (3) verify that Owner's or other carrier's (if trip leasing) public liability and cargo insurance, where applicable, is in effect. Owner understands that neither Owner nor its agents are authorized to accept trip leases on behalf of TC and further agrees that, in the event of a trip lease, the Leased Vehicle will operate under the other carrier's (trip lessee's) operating authority and permits.

V.    **TERM/TERMINATION/CONFIDENTIALITY/REMEDIES**

5.01    **Initial Term.**  Owner and TC agree that the initial term of this Agreement shall be 90 days.

5.02    **Renewal Terms.**  This Agreement shall automatically renew for successive terms of one (1) year after expiration of the Initial Term unless Owner or TC provides the other party notice of termination in writing at least ten (10) days prior to the expiration of the Initial term or any successive renewal term.

5.03    **Termination.**  This Agreement may be terminated as follows: (1) at any time, by either party, by giving notice to the other party in writing at least ten (10) days prior to the effective termination date; (2) immediately, by either party, by giving notice to the other party in writing in the event of a breach of any provision of this

8

Agreement by the other party which shall include, but is not limited to, failure to provide service for the customer and necessary communications for the customer within the time-certain parameters required by the customer; and (3) immediately in the event the Leased Vehicle is totally destroyed or otherwise permanently unavailable.

**5.04    Obligations Upon Termination.**  Upon termination of this Agreement for any reason, Owner shall immediately: (1) return to TC all fuel stickers and operating authority permits and (2) remove all TC vehicle identification materials and advertising signs and provide proof of same.  If Owner fails to comply with this section or refuses to provide evidence acceptable to TC demonstrating compliance, Owner agrees that TC may withhold the return of any monies owed to Owner including settlement payments.

**5.05    Confidentiality, Non-Disclosure and Non-Competition.**

(1) Owner acknowledges that in the course of its performance under this Agreement, Owner will have access to and become familiar with certain information relating to TC's customers that is not otherwise generally known to the public.  Owner agrees to keep in strict confidence and whether directly or indirectly, not to make known, divulge, reveal or make available to others any such information.  Further, Owner agrees to inform any future employer or motor carrier lessee of its agreement to Confidentiality with respect to this section of this Lease Agreement. This Section 5.05(1) (Confidentiality) shall survive the term of this Agreement.

(2) During the term of this Lease Agreement, and in the event of its termination for any reason, Owner agrees that it will not engage in any trade practices which are or have the potential to be detrimental to the interests of TC. Without limiting the generality of the foregoing, during the term of this Lease Agreement and for a period of two (2) years following such termination, Owner agrees that it will not:

(a) Induce any employee, independent contractor or consultant of TC to leave the employ of or association with TC for any reason.

(b) Engage any employee, independent contractor or consultant of TC in connection with any business which is similar to or competitive with that of TC, except on the behalf of TC to the extent that Owner must hire drivers or employees to perform Owner's obligations to TC under this Agreement.

(c) Solicit business from customers or prospects of TC in connection with any business which is similar to or competitive with that of TC, except on behalf of TC to the extent that Owner must hire drivers or employees to perform Owner's obligations to TC under this Agreement.

(3) In the event TC institutes legal action against Owner to enforce this section as to confidentiality or non-competition, as a result of which TC is awarded injunctive relief, damages or other relief, then TC will be entitled to recover reasonable attorney's fees incurred in obtaining such relief or damages.

VI.    MISCELLANEOUS

6.01    **Agency.** Neither TC nor Owner is the agent of the other, and neither shall have the right to bind the other by contract or otherwise, except as specifically provided in this Agreement.

6.02    **Merger of Understanding.** This Agreement sets forth correctly the effect of all preliminary negotiations, understanding, and agreements between the parties and supersedes any and all previous agreements, whether written or verbal. This Agreement and appendices shall not be modified, altered, changed or amended in any respect unless in writing and signed by both parties.

6.03    **Governing Law.** This Agreement shall be interpreted under the laws of the state of Massachusetts without regard to the conflict of laws and principles thereof.

6.04    **Equal Employment Opportunity.** Owner shall abide by all applicable laws, regulations and rules pertaining to equal employment opportunity and/or affirmative action.

6.05    **Captions.** Captions appearing in this Agreement are for convenience only and do not in any way limit, amplify, modify or otherwise affect the terms and provisions of this Agreement.

6.06    **Savings Clause.** If any part of this Agreement is declared unlawful or unenforceable, the remainder of this Agreement shall remain in full force and effect.

6.07    **Non-Waiver.** Failure of either party strictly to enforce any provision of this Agreement shall not be construed as a waiver thereof or as excusing the other party from future performance.

6.08    **Force Majeure.** The performance of the obligations of this Agreement on the part of either Owner or TC shall be excused by reason of acts of God, natural disasters, civil commotion, government interference or regulations or other similar contingencies beyond the control of the affected party.

6.09    **Assignment.** This Agreement shall be binding upon and inure to the benefit of the parties to this Agreement and their respective heirs, successors and assigns, but shall not be assigned by either party without the written consent of the other party.

THE REMAINDER OF THIS PAGE LEFT INTENTIONALLY BLANK

OWNER ACKNOWLEDGES AND REPRESENTS THAT OWNER HAS READ AND
FULLY UNDERSTANDS THE PROVISIONS OF THIS AGREEMENT AND HAS HAD
SUFFICIENT TIME AND OPPORTUNITY TO CONSULT WITH PERSONAL,
FINANCIAL, TAX AND LEGAL ADVISORS PRIOR TO EXECUTING THIS
AGREEMENT.

IN WITNESS WHEREOF, the Owner and TC have signed this Agreement in duplicate
on the dates set forth below.

28FREIGHT LLC dba TRUCKCOURIER          OWNER

_Luis Aguilar_

Print or type Name of Owner

By: _____           _Luis Aguilar_
Signature                             Signature of Owner

Date: ____4-25-19____                 _04-25-19_
                                      Date

Title: ____DISPATCH____               _____
                                      Federal ID Number

11

perior Court - Middlesex
cket Number 2481CV00495

# EXHIBIT 3

## AGREEMENT FOR LEASED EQUIPMENT
## AND INDEPENDENT CONTRACTOR SERVICES

This Agreement for Leased Equipment and Independent Contractor Services ("Agreement") is entered into by and between (name) CRISTIAN SEBASTIAN LAMARQUE MILLAN ("Owner") and 28Freight LLC dba TruckCourier, 226 Lowell St Suite B, P. O. Box 2760, Woburn, MA 01801 ("TC") and is effective as of 05/25/2023 _____. Intending to be legally bound by the terms of this Agreement, Owner and TC mutually agree as follows:

### I.     INTENTION OF PARTIES

**WHEREAS**, TC conducts business as an interstate motor carrier of property pursuant to authority issued by the Federal Motor Carrier Safety Administration ("FMCSA") of the Federal Highway Administration ("FHWA"), and TC is subject to the rules and regulations of the FHWA, the FMCSA and its Office of Motor Carrier Safety ("OMCS") and U. S. Department of Transportation ("DOT") and;

**WHEREAS**, Owner is an independent contractor that (i) owns certain motor vehicle equipment; (ii) desires to lease a vehicle to TC and (iii) renders certain related services to facilitate the transportation of expedited shipments of goods to and from TC's customers within the time-certain service parameters required by TC's customers .

**NOW THEREFORE**, the parties agree as follows:

TC and owner agree to use their best efforts to provide excellent service to customers by picking up and delivering freight on days and times demanded by customers. Neither Owner nor any of its employees or agents shall be considered to be employees of TC or of TC's customers at any time, under any circumstances, for any purpose whatsoever, and nothing in this Agreement shall be construed as inconsistent with that. Owner shall exercise independent discretion and judgment to determine the method, manner and means of performance of its contractual obligations under this Agreement. TC shall, however, issue reasonable and lawful instructions regarding the results to be accomplished by Owner and failure to accomplish such results shall be considered a breach of this Agreement by Owner. The term "Owner" as used in this Agreement shall mean Owner individually as the signatory to this Agreement or, depending on the context in which the term is used, Owner, collectively with its employees or agents, if any.

### II     LEASED VEHICLE:  REGULATORY, MAINTENANCE, OPERATING AND SAFETY PROVISIONS

**2.01     Leased Vehicle.** (a)  The motor vehicle described in this Section 2.01 shall be referred to as the "Leased Vehicle", as follows:

2012 White/Red Freightliner M2, 2008 WHITE GMC F7B042
_____
Vehicle – Year, Make and Model

1FVACWDT7CDBK2393, 1GDJ7F1BX8F400008
_____
Serial Number

N/A

Trailer – Year, Make and Model

N/A

Serial Number

(b)    Owner hereby agrees to lease the Leased Vehicle to TC in good, safe and efficient operating condition. Owner certifies that the Leased Vehicle meets the requirements of all applicable federal, state and municipal laws and regulations.

**2.02    Operation of Leased Vehicle.**

(a)    Owner agrees to control the operation of the Leased Vehicle and to determine the method, manner and means of performing the contractual obligations under this Agreement in all respects including, but not limited to, such matters as the rejection and selection of loads tendered by TC; the days and times Owner will operate the Leased Vehicle; the routes traveled; parking sites; and the repair of the Leased Vehicle, provided that Owner shall fully and efficiently perform its obligations under this Agreement. Nothing contained in this Agreement shall be construed, however, as vesting in TC any control over or right to control the Leased Vehicle or any of Owner's drivers.

(b)    Owner and its drivers shall comply with all laws, rules and regulations of the FHWA, the FMCSA, the OMCS, the USDOT and any other federal, state and local governmental agencies. Nothing contained herein shall require Owner to violate any law or regulation relating to the safe operation of the motor vehicle equipment, the hours of service rules of the FMCSA or OMCS or any other safety rule or regulation.

**2.03    Control of Leased Vehicle for Regulatory Purposes.**   To the extent required by FMCSA Safety Regulations, as promulgated by the FHWA of the DOT or its successor (the "Safety Regulations") Owner agrees to relinquish to TC exclusive possession, control and use of the Leased Vehicle while it is in service to TC and its customers under this Agreement and TC agrees to assume responsibility for same during that time. Nothing contained in the Safety Regulations is intended to affect whether the Owner or any driver provided by the Owner is an independent contractor or an employee of TC. It is the intention of the parties that an independent contractor relationship exists when TC, as a carrier lessee, complies with 49 U.S.C. Section 14102 and related administrative requirements.

**2.04    Leased Vehicle Identification.**   TC shall furnish all vehicle identification required by applicable laws, rules, regulations and orders. Owner shall have the Leased Vehicle marked so that the markings show the vehicle is leased by TC, TC's address and license numbers. Owner agrees to remove or temporarily cover all TC identification signs on any occasion when the Leased Vehicle is used in the service of anyone other than TC, including the service of the Owner him/herself.

**2.05    Operating Costs and Expenses.**   Owner shall bear all costs and expenses incidental to the maintenance, repair and operation of the Leased Vehicle including, but not limited to, those set forth in Section 3.04(b) herein, for the operation of the Leased Vehicle. TC shall pay state operating authority

2

registration fees and permit fees, as may apply, that are required for the operation of the Leased Vehicle. In the event Owner voluntarily terminates this Agreement or TC terminates the Agreement for breach by Owner, TC may require Owner to reimburse TC for the unexpired portion of state operating authority registration and permit fees.

2.06  **Maintenance.**  Owner shall equip and continuously maintain the Leased Vehicle in good, safe and efficient operating condition to meet all requirements imposed by (1) applicable federal laws and any rules, regulations and orders of the U.S. Department of Transportation (DOT), or other agencies, domestic or foreign, and (2) any laws, rules, regulations and orders of any state or municipal jurisdiction in which the Leased Vehicle is licensed to operate. In the event the Leased Vehicle is found to be deficient under any law, rule, regulation or order, Owner agrees that TC may remove the Leased Vehicle from service until compliance is achieved. The Owner agrees to conduct periodic inspections of the Leased Vehicle in accordance with the rules and regulations of the DOT, FMCSA, FHWA and OMCS, to maintain the appropriate records of such inspections and any resultant findings and to provide TC with said records as TC is required to maintain by governmental regulations. TC reserves the right to visually inspect and/or have the Leased Vehicle professionally inspected at any time.

Rental vehicles may not be substituted for Leased Vehicle during periods of repairs and maintenance unless TC provides its express written consent for such substitutions.

2.07  **Driver Requirements.**  Owner shall furnish, at its expense, drivers for the Leased Vehicle who meet (1) all driving requirements imposed by rules, regulations, and orders of the DOT and (2) all driving requirements as established by TC from time to time in accordance with the rules and regulations of the DOT, FMCSA, FHWA and OMCS. Owner shall promptly furnish to TC for each of the Owner's drivers, evidence and documents that TC is required to maintain in order to comply with governmental regulations and documents which TC may request pursuant to TC's policies established from time to time. Owner shall not place any drivers in the Leased Vehicle until said documents are received and verified by TC. TC may require Owner to pay an application processing fee for each driver application. The Owner warrants that owner and its drivers shall comply with all driver requirements imposed by the DOT, FMCSA and FHWA, and TC and shall comply with all laws and federal and state agency regulations applicable to the operation of for-hire motor carriers. **No vehicle may be operated under this Agreement by any driver (Owner or otherwise) who is not in compliance with the criteria set forth by the DOT, FMCSA, FHWA and OMCS.**

2.08  **Logs and Reports.**  Owner shall prepare and file with TC such logs, mileage reports, toll receipts and other documents in such manner and at such times as will enable Owner and TC to comply with all laws, rules, regulations and orders respecting same.

2.09  **Employment of Qualified Persons.**  Owner may employ persons to perform, or assist Owner in performing, its contractual obligations under this Agreement. In the event Owner employs drivers (other than Owner, himself, if an individual) to

perform its contractual obligations under this Agreement, all such drivers shall be Owner's employees or agents exclusively, and shall be subject solely to Owner's direction and control including the selection, hiring, firing, supervising, instructing, training, discipline and setting of wages, hours and working conditions. TC shall have no responsibility to (i) make any payment to Owner's employees or agents, (ii) make any deductions for, or to pay, social security taxes, withholding taxes, or similar charges with respect to Owner or Owner's employees or agents or (iii) provide worker's compensation or unemployment compensation coverage to owner's employees or agents.

III    **GENERAL INSURANCE COVERAGES AND ADMINISTRATIVE MATTERS**

3.01    **Insurance Coverages.** TC shall provide, at its expense, insurance coverage for the protection of the public pursuant to 49 U.S.C. Section 13906. Owner shall provide, at its expense, and keep in force at all times during the term of this Agreement, any and all insurance necessary for the safe and efficient performance of Owner's obligations under this agreement including, but not limited to, the following:

(a) Work accident insurance or workers' compensation insurance covering Owner and all persons utilized by Owner in performance of this Agreement, including employees domiciled in states where workers' compensation coverage is not mandatory by law.

(b) Workers' compensation insurance coverage, as required by law, covering all persons employed by Owner in performance of this Agreement.

(c) **NOTICE OF WAIVER OF WORKERS COMPENSATION COVERAGE UNDER MASSACHUSETTS LAW.** In the event Owner is an individual and should personally operate a vehicle in service to TC, then this provision constitutes Owner's written notice to carrier, pursuant to Mass. Gen. Laws Chapter 152, s.24, that Owner reserves his right of action at common law with regard to any injuries he might suffer that otherwise may be compensable under the Massachusetts Workers Compensation Act, in lieu of any compensation that might otherwise be available to employees under Mass. Gen. Laws Chapter 152. Therefore, Owner agrees, understands and is notified that the workers compensation laws of the Commonwealth of Massachusetts will not cover him personally for any accident or injuries arising out of and in the course of his service in driving a Leased Vehicle on behalf of TC and he further understands, agrees and is notified that he is waiving any rights covered by said Massachusetts Workers Compensation Act and elects not to be covered by said statute. Owner agrees, understands and is notified that the common law of negligence will apply to any claim(s) Owner may have against TC for injuries suffered by Owner while driving a Leased Vehicle.

(d) Insurance coverage on the Leased Vehicle and such coverage shall name TruckCourier as an additional insured and provide TruckCourier with at least Thirty (30) days prior written notice of cancellation or material changes in coverage. The required limits are:

4

    ○  Vehicles less than 10,000 GVW - (state minimum limits) OR (minimum limits of $100,000/100,000/25,000).

    ○  Vehicles 10,000 to 20,000 GVW - $300,000 combined single limit.

    ○  Vehicles 20,001 to 45,000 GVW - $500,000 combined single limit.

**3.02**    **Liability for Leased Vehicle.** Owner agrees that TC shall not be responsible, financially or otherwise, to Owner for any depreciation, loss or damage that may occur to the Leased Vehicle whether by collision, fire, theft, vandalism or any other occurrence.

**3.03**    **Indemnification.** Except to the extent of recovery pursuant to any insurance coverages required by this Agreement, Owner shall indemnify and save TC harmless from and against the following:

    (a) The first $1,000.00 on a per incident basis of any loss of or damage to cargo tendered for shipment or handling while such cargo is in the possession of Owner or Owner's employees or agents.

    (b) Any and all claims, lawsuits, demands, losses, liability, costs and expenses, including attorney's fees and other reasonable costs of defense arising from any injury to or death of any persons or damage to property caused by, arising out of or connected in any way, directly or indirectly, with Owner's performance under this Lease Agreement. The indemnification contemplated in this paragraph includes but is not limited to any violation of FHWA, DOT, OMCS or FMCSA regulations or the regulations of any state or local authority, damage to vehicles (including trailer equipment) while in Owner's possession; and any fines, penalties or court costs assessed against TC for activities of Owner or its drivers.

    (c) Any and all claims brought against TC and liabilities incurred by TC arising from the Owner's relationship with Owner's employees or agents, whether under industrial accident laws, workers' compensation laws, unemployment compensation laws, or any other federal, state or municipal laws, rules, regulations and orders applicable to the relationship between employers and employees.

    (d) Any and all claims brought against TC or liabilities incurred by TC for or on account of Owner's failure or failure of Owner's employees or agents to comply with any laws, rules, regulations or orders applicable to Owner's business.

**3.04**    **Deductions/Charge-Back Items.** During the term of this Lease Agreement TC may, at its option, advance monies directly to Owner or for the benefit of Owner and deduct such costs and charges from Owner's compensation at the time of payment or settlement, as set forth in this Lease Agreement. Items subject to charge-back deduction from Owner's compensation include, but are not limited to, the following:

    (a) cost of communication equipment which TC may make available to Owner; advances of base plate; single state registration fees; fuel advances; cash advances; advances for repairs to Owner's motor vehicle equipment;

damages paid by TC for shipper loss and damage claims; damage to any equipment of TC caused by Owner.

(b) Any amounts for which the Owner is financially responsible pursuant to Section 3.03 of this Agreement (Indemnification).

(c) Any amounts for which Owner is financially responsible pursuant to Section 4.02 (Owner's Customer Service Responsibility).

(d) Any amounts incurred by TC for the drug testing of Owner or Owner's employees.

(e) Any deduction agreed upon in advance between TC and Owner.

Owner hereby agrees that TC may deduct the above items from Owner's compensation under this Lease Agreement. Owner further authorizes TC to deduct any amount required by law in the event of a garnishment.

**3.05    Absence of Conditions to Executing Agreement.** Owner shall not be required to purchase, lease or rent any products, equipment or services from TC as a condition to entering into this Agreement.

**3.06    C-TPAT Security Requirements.** All contractors must adhere to C-TPAT Minimum Secury Critera (copy provided) and, at no time, shall a contractor transport cargo into the United States under TruckCourier's SCAC code unless he/she is hauling cargo for TruckCourier.

## IV.    COMPENSATION, SETTLEMENT AND RELATED MATTERS

**4.01    Base Compensation.** For performance by Owner of the contractual obligations under this Agreement, TC shall compensate Owner a percentage of the base mileage and accessorial charges directly related to Owner's vehicle, based on the scale in Appendix 1 of this Agreement. These amounts will be directly related to charges by TC to its customers, subject to deductions authorized in Section 3.04 of this Agreement.

**4.02    Owner's Right to Review Pricing Documents.** The Owner shall have the right to examine copies of TC documents from which rates and charges that appear on a customer's freight bill are computed. TC shall furnish Owner a copy of rated freight bill or a report containing the same information.

**4.03    Owner's Customer Service Responsibility.** Owner recognizes that TC is in the business of transportation of expedited shipments of goods within certain time-sensitive service parameters required by TC customers. This requires not only on-time pickup and delivery but also regular and accurate communication

perior Court - Middlesex
cket Number 2481CV00495

with TC customers.  In order for TC to meet customer requirements, Owner agrees to accept the following customer service responsibilities:

(a) Guarantee of Service:  Owner agrees and understands that unless excused by the terms of Section 6.08 (Force Majeure) of this Agreement, if TC honors a "guarantee of service" claim from TC's customer, TC has the right to proportionately adjust Owner's compensation for such claim and may deduct such adjustment from amounts due Owner.

(b) Owner's Inability to Perform:  It is Owner's responsibility to complete the run once accepted.  In the event Owner is unable to complete the requires services under this Agreement after dispatch, unless excused by the terms of Section 6.08 (Force Majeure), TC then has the right to substitute Owner's vehicle and other vehicles to make the delivery of the shipment or any part thereof.  Any expenses incurred by TC related to such substitution or related to actions taken by TC to complete the required services (including costs associated with transfers, air charters, etc.) that are over and above the expenses that TC would otherwise incur in paying Owner to perform such services are agreed to be expenses which may be chargeable to and deductible from amounts due Owner.

4.04    **Time and Manner of Settlement.**  (a) Payment to Owner of the amount of compensation due under Article IV of the Agreement for a given trip less (I) any advance installment payments made pursuant to Section 4.30 (Advance Installment Payment) and (ii) any deductions made pursuant to Section 3.05(b) shall be made by TC within fifteen (15) days after submittal by Owner of the necessary delivery documents and other paperwork concerning the trip as described below.  Unless Owner agrees to be compensated through "CMS" as described in 4.04 (b) below, all settlements shall be made through TC's office at Woburn, MA.  TC shall not be obligated to make payment unless or until the following documentation is submitted to TC by Owner:

(1) Two (2) copies of the TC Bill of Lading signed by consignee.

(2) One copy of shipper's bill of lading, including originals (top copy) of any government bills of lading, where applicable.

(3) Original driver's logs and driver's records of duty status in accordance with 49 C.F.R. s. 395.8(k), where applicable.

(4) Toll receipts, where applicable.

(5) One validated copy of any international border crossing document, (i.e. cargo manifest, transit manifests or cargo control documents), where applicable.

Notwithstanding the foregoing, if, at the time of termination of this Agreement, Owner fails to satisfy the obligations set for in Section 5.04 (Obligations Upon Termination) below, then TC may withhold final payment of Owner's compensation otherwise due under this Agreement.

(b) The parties agree that the compensation due Owner from TC under this Agreement shall be paid by TC to Owner through Contractor Management Services, Phoenix, AZ (hereafter "CMS"). Owner hereby represents that Owner and any drivers employed by Owner are enrolled as members of the CMS program and Owner hereby designates CMS as Owner's settlement agent to receive, on behalf of Owner, any payments due from TC to Owner under this Agreement. In the event there is any conflict between the terms of this Agreement and those of Owner's Agreement with CMS, then the terms of this Agreement will prevail.

**4.05     Filing and Reporting Responsibilities.** TC shall report payments made to Owner pursuant to this Agreement as required by law, but shall not withhold any amounts for taxes on behalf of Owner. **Owner shall be solely responsible for the filing of any local, state, or federal income tax returns and the payment of such taxes or other charges occasioned by Owner's status as an independent contractor. TC shall not be responsible for the payment of any local, state or federal employment or income taxes with respect to Owner.**

Settlement statements shall contain a computation of the settlement amount Owner is entitled to receive and an itemized listing of all deductions from Owner's settlement.

**4.06     Non TC Use (including Trip Leasing).** In order for TC to serve its customers, TC must know when Owner uses the Leased Vehicle for any "non-TC use." Accordingly, in the event Owner intends to use the Leased Vehicle in any non-TC use, including trip leasing, Owner agrees that prior to such use he shall (1) notify TC in advance of such intended use, (2) cover or remove all TC identification signs, placards and permit markings and (3) verify that Owner's or other carrier's (if trip leasing) public liability and cargo insurance, where applicable, is in effect. Owner understands that neither Owner nor its agents are authorized to accept trip leases on behalf of TC and further agrees that, in the event of a trip lease, the Leased Vehicle will operate under the other carrier's (trip lessee's) operating authority and permits.

## V.     TERM/TERMINATION/CONFIDENTIALITY/REMEDIES

**5.01     Initial Term.** Owner and TC agree that the initial term of this Agreement shall be 90 days.

**5.02     Renewal Terms.** This Agreement shall automatically renew for successive terms of one (1) year after expiration of the Initial Term unless Owner or TC provides the other party notice of termination in writing at least ten (10) days prior to the expiration of the Initial term or any successive renewal term.

**5.03     Termination.** This Agreement may be terminated as follows: (1) at any time, by either party, by giving notice to the other party in writing at least ten (10) days prior to the effective termination date; (2) immediately, by either party, by giving notice to the other party in writing in the event of a breach of any provision of this

(b) The parties agree that the compensation due Owner from TC under this Agreement shall be paid by TC to Owner through Contractor Management Services, Phoenix, AZ (hereafter "CMS").  Owner hereby represents that Owner and any drivers employed by Owner are enrolled as members of the CMS program and Owner hereby designates CMS as Owner's settlement agent to receive, on behalf of Owner, any payments due from TC to Owner under this Agreement.  In the event there is any conflict between the terms of this Agreement and those of Owner's Agreement with CMS, then the terms of this Agreement will prevail.

**4.05    Filing and Reporting Responsibilities.**  TC shall report payments made to Owner pursuant to this Agreement as required by law, but shall not withhold any amounts for taxes on behalf of Owner.  **Owner shall be solely responsible for the filing of any local, state, or federal income tax returns and the payment of such taxes or other charges occasioned by Owner's status as an independent contractor.  TC shall not be responsible for the payment of any local, state or federal employment or income taxes with respect to Owner.**

Settlement statements shall contain a computation of the settlement amount Owner is entitled to receive and an itemized listing of all deductions from Owner's settlement.

**4.06    Non TC Use (including Trip Leasing).**  In order for TC to serve its customers, TC must know when Owner uses the Leased Vehicle for any "non-TC use."  Accordingly, in the event Owner intends to use the Leased Vehicle in any non-TC use, including trip leasing, Owner agrees that prior to such use he shall (1) notify TC in advance of such intended use, (2) cover or remove all TC identification signs, placards and permit markings and (3) verify that Owner's or other carrier's (if trip leasing) public liability and cargo insurance, where applicable, is in effect.  Owner understands that neither Owner nor its agents are authorized to accept trip leases on behalf of TC and further agrees that, in the event of a trip lease, the Leased Vehicle will operate under the other carrier's (trip lessee's) operating authority and permits.


**V.    TERM/TERMINATION/CONFIDENTIALITY/REMEDIES**

**5.01    Initial Term.**  Owner and TC agree that the initial term of this Agreement shall be 90 days.

**5.02    Renewal Terms.**  This Agreement shall automatically renew for successive terms of one (1) year after expiration of the Initial Term unless Owner or TC provides the other party notice of termination in writing at least ten (10) days prior to the expiration of the Initial term or any successive renewal term.

**5.03    Termination.**  This Agreement may be terminated as follows: (1) at any time, by either party, by giving notice to the other party in writing at least ten (10) days prior to the effective termination date; (2) immediately, by either party, by giving notice to the other party in writing in the event of a breach of any provision of this

Agreement by the other party which shall include, but is not limited to, failure to provide service for the customer and necessary communications for the customer within the time-certain parameters required by the customer; and (3) immediately in the event the Leased Vehicle is totally destroyed or otherwise permanently unavailable.

5.04    **Obligations Upon Termination.**  Upon termination of this Agreement for any reason, Owner shall immediately: (1) return to TC all fuel stickers and operating authority permits and (2) remove all TC vehicle identification materials and advertising signs and provide proof of same.  If Owner fails to comply with this section or refuses to provide evidence acceptable to TC demonstrating compliance, Owner agrees that TC may withhold the return of any monies owed to Owner including settlement payments.

5.05    **Confidentiality, Non-Disclosure and Non-Competition.**

(1) Owner acknowledges that in the course of its performance under this Agreement, Owner will have access to and become familiar with certain information relating to TC's customers that is not otherwise generally known to the public.  Owner agrees to keep in strict confidence and whether directly or indirectly, not to make known, divulge, reveal or make available to others any such information.  Further, Owner agrees to inform any future employer or motor carrier lessee of its agreement to Confidentiality with respect to this section of this Lease Agreement. This Section 5.05(1) (Confidentiality) shall survive the term of this Agreement.

(2) During the term of this Lease Agreement, and in the event of its termination for any reason, Owner agrees that it will not engage in any trade practices which are or have the potential to be detrimental to the interests of TC. Without limiting the generality of the foregoing, during the term of this Lease Agreement and for a period of two (2) years following such termination, Owner agrees that it will not:

(a) Induce any employee, independent contractor or consultant of TC to leave the employ of or association with TC for any reason.

(b) Engage any employee, independent contractor or consultant of TC in connection with any business which is similar to or competitive with that of TC, except on the behalf of TC to the extent that Owner must hire drivers or employees to perform Owner's obligations to TC under this Agreement.

(c) Solicit business from customers or prospects of TC in connection with any business which is similar to or competitive with that of TC, except on behalf of TC to the extent that Owner must hire drivers or employees to perform Owner's obligations to TC under this Agreement.

(3) In the event TC institutes legal action against Owner to enforce this section as to confidentiality or non-competition, as a result of which TC is awarded injunctive relief, damages or other relief, then TC will be entitled to recover reasonable attorney's fees incurred in obtaining such relief or damages.

9

## VI.    MISCELLANEOUS

**6.01    Agency.** Neither TC nor Owner is the agent of the other, and neither shall have the right to bind the other by contract or otherwise, except as specifically provided in this Agreement.

**6.02    Merger of Understanding.** This Agreement sets forth correctly the effect of al preliminary negotiations, understanding, and agreements between the parties and supersedes any and all previous agreements, whether written or verbal. This Agreement and appendices shall not be modified, altered, changed or amended in any respect unless in writing and signed by both parties.

**6.03    Governing Law.** This Agreement shall be interpreted under the laws of the state of Massachusetts without regard to the conflict of laws and principles thereof.

**6.04    Equal Employment Opportunity.** Owner shall abide by all applicable laws, regulations and rules pertaining to equal employment opportunity and/or affirmative action.

**6.05    Captions.** Captions appearing in this Agreement are for convenience only and do not in any way limit, amplify, modify or otherwise affect the terms and provisions of this Agreement.

**6.06    Savings Clause.** If any part of this Agreement is declared unlawful or unenforceable, the remainder of this Agreement shall remain in full force and effect.

**6.07    Non-Waiver.** Failure of either party strictly to enforce any provision of this Agreement shall not be construed as a waiver thereof or as excusing the other party from future performance.

**6.08    Force Majeure.** The performance of the obligations of this Agreement on the part of either Owner or TC shall be excused by reason of acts of God, natural disasters, civil commotion, government interference or regulations or other similar contingencies beyond the control of the affected party.

**6.09    Assignment.** This Agreement shall be binding upon and inure to the benefit of the parties to this Agreement and their respective heirs, successors and assigns, but shall not be assigned by either party without the written consent of the other party.

THE REMAINDER OF THIS PAGE LEFT INTENTIONALLY BLANK

OWNER ACKNOWLEDGES AND REPRESENTS THAT OWNER HAS READ AND
FULLY UNDERSTANDS THE PROVISIONS OF THIS AGREEMENT AND HAS HAD
SUFFICIENT TIME AND OPPORTUNITY TO CONSULT WITH PERSONAL,
FINANCIAL, TAX AND LEGAL ADVISORS PRIOR TO EXECUTING THIS
AGREEMENT.

IN WITNESS WHEREOF, the Owner and TC have signed this Agreement in duplicate
on the dates set forth below.

28FREIGHT LLC dba TRUCKCOURIER

OWNER

CRISTIAN SEBASTIAN LAMARQUE MILLAN

Print or type Name of Owner

By:    Sheldon Staats

Signature

Date:  05/25/2023

Signature of Owner

05/25/2023

Date

Title:   Operations

**REDACTED**

Federal ID Number

| CIVIL ACTION COVER SHEET | DOCKET NUMBER<br>2481CV495 | Massachusetts Trial Court<br>Superior Court |
|---|---|---|
| | | COUNTY Middlesex Superior Court (Woburn) |



| Plaintiff | Claudio Sosa, Luis Aguilar, and Cristian Lamarque | Defendant | 28 Freight, LLC |
|---|---|---|---|
| ADDRESS: | Leominster, MA | ADDRESS: | 226 Lowell Street |
| | | | Wilmington, MA 01887 |
| | | | |
| Plaintiff Attorney: | Rachel Smit | Defendant | Richard Marks |
| ADDRESS: | Fair Work, P.C. | ADDRESS: | 2 Chestnut Road |
| 192 South Street, Suite 450 | | Wayland, MA 01778 | |
| Boston, MA 02111 | | | |
| BBO: | 688294 | | |

### TYPE OF ACTION AND TRACK DESIGNATION (see instructions section on next page)

| CODE NO. | TYPE OF ACTION (specify) | TRACK | HAS A JURY CLAIM BEEN MADE? |
|---|---|---|---|
| A01 | Services, Labor, and Materials | F | ☒ YES    ☐ NO |

*If "Other" please describe: _____

| Is there a claim under G.L. c. 93A? | Is there a class action under Mass. R. Civ. P. 23? |
|---|---|
| ☐ YES    ☒ NO | ☒ YES    ☐ NO |

### STATEMENT OF DAMAGES REQUIRED BY G.L. c. 212, § 3A

The following is a full, itemized and detailed statement of the facts on which the undersigned plaintiff or plaintiff's counsel relies to determine money damages. (Note to plaintiff: for this form, do not state double or treble damages; indicate single damages only.)

**TORT CLAIMS**

A. Documented medical expenses to date

    1. Total hospital expenses _____

    2. Total doctor expenses _____

    3. Total chiropractic expenses _____

    4. Total physical therapy expenses _____

    5. Total other expenses (describe below) _____

MG    **RECEIVED**    02/20/2024

                                                    Subtotal (1-5): $0.00

B. Documented lost wages and compensation to date _____

C. Documented property damages to date _____

D. Reasonably anticipated future medical and hospital expenses _____

E. Reasonably anticipated lost wages _____

F. Other documented items of damages (describe below) _____

                                                TOTAL (A-F): $0.00

G. Briefly describe plaintiff's injury, including the nature and extent of the injury:

### CONTRACT CLAIMS

☐ This action includes a claim involving collection of a debt incurred pursuant to a revolving credit agreement. Mass. R. Civ. P. 8.1(a).

| Item # | Detailed Description of Each Claim | Amount |
|---|---|---|
| 1. | Wages and benefits, in an amount no less than | $50,000.00 |
| | Total | $50,000.00 |

| Signature of Attorney/Self-Represented Plaintiff: X Rachel Smit | Date: | February 20, 2024 |
|---|---|---|

**RELATED ACTIONS:** Please provide the case number, case name, and county of any related actions pending in the Superior Court.

### CERTIFICATION UNDER S.J.C. RULE 1:18(5)

I hereby certify that I have complied with requirements of Rule 5 of Supreme Judicial Court Rule 1:18: Uniform Rules on Dispute Resolution, requiring that I inform my clients about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods of dispute resolution.

| Signature of Attorney: X Rachel Smit | Date: | February 20, 2024 |
|---|---|---|

Date Filed 2/20/2024 6:49 PM
Superior Court - Middlesex
Docket Number

# CIVIL ACTION COVER SHEET INSTRUCTIONS —
# SELECT A CATEGORY THAT BEST DESCRIBES YOUR CASE*

### AC Actions Involving the State/Municipality†*

AA1 Contract Action involving Commonwealth,
   Municipality, MBTA, etc.                          (A)
AB1 Tortious Action involving Commonwealth,
   Municipality, MBTA, etc.                          (A)
AC1 Real Property Action involving
   Commonwealth, Municipality, MBTA etc. (A)
AD1 Equity Action involving Commonwealth,
   Municipality, MBTA, etc.                          (A)
AE1 Administrative Action involving
   Commonwealth, Municipality, MBTA,etc. (A)

### CN Contract/Business Cases

A01 Services, Labor, and Materials              (F)
A02 Goods Sold and Delivered                    (F)
A03 Commercial Paper                            (F)
A04 Employment Contract                         (F)
A05 Consumer Revolving Credit - M.R.C.P. 8.1    (F)
A06 Insurance Contract                          (F)
A08 Sale or Lease of Real Estate                (F)
A12 Construction Dispute                        (A)
A14 Interpleader                                (F)
BA1 Governance, Conduct, Internal
   Affairs of Entities                          (A)
BA3 Liability of Shareholders, Directors,
   Officers, Partners, etc.                     (A)
BB1 Shareholder Derivative                      (A)
BB2 Securities Transactions                     (A)
BC1 Mergers, Consolidations, Sales of
   Assets, Issuance of Debt, Equity, etc.       (A)
BD1 Intellectual Property                       (A)
BD2 Proprietary Information or Trade
   Secrets                                      (A)
BG1 Financial Institutions/Funds                (A)
BH1 Violation of Antitrust or Trade
   Regulation Laws                              (A)
A99 Other Contract/Business Action - Specify (F)

* See Superior Court Standing Order 1-88 for an
explanation of the tracking deadlines for each track
designation: F, A, and X. On this page, the track
designation for each case type is noted in
parentheses.

†* Choose this case type if ANY party is the
Commonwealth, a municipality, the MBTA, or any
other governmental entity UNLESS your case is a
case type listed under Administrative Civil Actions
(AA).

‡ Choose this case type if ANY party is an
incarcerated party, UNLESS your case is a case
type listed under Administrative Civil Actions (AA)
or is a Prisoner Habeas Corpus case (E97).

### ER Equitable Remedies

D01 Specific Performance of a Contract     (A)
D02 Reach and Apply                        (F)
D03 Injunction                             (F)
D04 Reform/ Cancel Instrument              (F)
D05 Equitable Replevin                     (F)
D06 Contribution or Indemnification        (F)
D07 Imposition of a Trust                  (A)
D08 Minority Shareholder's Suit            (A)
D09 Interference in Contractual Relationship (F)
D10 Accounting                             (A)
D11 Enforcement of Restrictive Covenant    (F)
D12 Dissolution of a Partnership           (F)
D13 Declaratory Judgment, G.L. c. 231A     (A)
D14 Dissolution of a Corporation           (F)
D99 Other Equity Action                    (F)

### PA Civil Actions Involving Incarcerated Party ‡

PA1 Contract Action involving an
   Incarcerated Party                      (A)
PB1 Tortious Action involving an
   Incarcerated Party                      (A)
PC1 Real Property Action involving an
   Incarcerated Party                      (F)
PD1 Equity Action involving an
   Incarcerated Party                      (F)
PE1 Administrative Action involving an
   Incarcerated Party                      (F)

### TR Torts

B03 Motor Vehicle Negligence - Personal
   Injury/Property Damage                  (F)
B04 Other Negligence - Personal
   Injury/Property Damage                  (F)
B05 Products Liability                     (A)
B06 Malpractice - Medical                  (A)
B07 Malpractice - Other                    (A)
B08 Wrongful Death - Non-medical           (A)
B15 Defamation                             (A)
B19 Asbestos                               (A)
B20 Personal Injury - Slip & Fall          (F)
B21 Environmental                          (F)
B22 Employment Discrimination              (F)
BE1 Fraud, Business Torts, etc.            (A)
B99 Other Tortious Action                  (F)

### RP Summary Process (Real Property)

S01 Summary Process - Residential          (X)
S02 Summary Process - Commercial/
   Non-residential                         (F)

### RP Real Property

C01 Land Taking                            (F)
C02 Zoning Appeal, G.L. c. 40A             (F)
C03 Dispute Concerning Title               (F)
C04 Foreclosure of a Mortgage              (X)
C05 Condominium Lien & Charges             (X)
C99 Other Real Property Action             (F)

### MC Miscellaneous Civil Actions

E18 Foreign Discovery Proceeding           (X)
E97 Prisoner Habeas Corpus                 (X)
E22 Lottery Assignment, G.L. c. 10, § 28   (X)

### AB Abuse/Harassment Prevention

E15 Abuse Prevention Petition, G.L. c. 209A  (X)
E21 Protection from Harassment, G.L. c. 258E(X)

### AA Administrative Civil Actions

E02 Appeal from Administrative Agency,
   G.L. c. 30A                             (X)
E03 Certiorari Action, G.L. c. 249, § 4    (X)
E05 Confirmation of Arbitration Awards     (X)
E06 Mass Antitrust Act, G.L. c. 93, § 9    (A)
E07 Mass Antitrust Act, G.L. c. 93, § 8    (X)
E08 Appointment of a Receiver              (X)
E09 Construction Surety Bond, G.L. c. 149,
   §§ 29, 29A                              (A)
E10 Summary Process Appeal                 (X)
E11 Worker's Compensation                  (X)
E16 Auto Surcharge Appeal                  (X)
E17 Civil Rights Act, G.L. c.12, § 11H     (A)
E24 Appeal from District Court
   Commitment, G.L. c.123, § 9(b)          (X)
E94 Forfeiture, G.L. c. 265, § 56          (X)
E95 Forfeiture, G.L. c. 94C, § 47          (F)
E99 Other Administrative Action            (X)
Z01 Medical Malpractice - Tribunal only,
   G.L. c. 231, § 60B                      (F)
Z02 Appeal Bond Denial                     (X)

### SO Sex Offender Review

E12 SDP Commitment, G.L. c. 123A, § 12     (X)
E14 SDP Petition, G.L. c. 123A, § 9(b)     (X)

### RC Restricted Civil Actions

E19 Sex Offender Registry, G.L. c. 6, § 178M (X)
E27 Minor Seeking Consent, G.L. c.112, § 12S(X)

**TRANSFER YOUR SELECTION TO THE FACE SHEET**

**EXAMPLE:**

| CODE NO. | TYPE OF ACTION (specify) | TRACK | HAS A JURY CLAIM BEEN MADE? |
|---|---|---|---|
| B03 | Motor Vehicle Negligence-Personal Injury | F | ☒ YES    ☐ NO |

## STATEMENT OF DAMAGES REQUIRED BY G.L. c. 212, § 3A

**DUTY OF THE PLAINTIFF** — On the face of the Civil Action Cover Sheet (or on attached additional sheets, if necessary), the plaintiff shall state the facts on which the plaintiff relies to determine money damages. A copy of the completed Civil Action Cover Sheet, including the statement concerning damages, shall be served with the complaint. A clerk-magistrate shall not accept for filing a complaint, except as otherwise provided by law, unless it is accompanied by such a statement signed by the attorney or self-represented litigant.

**DUTY OF THE DEFENDANT** — If the defendant believes that the statement of damages filed by the plaintiff is inadequate, the defendant may file with the defendant's answer a statement specifying the potential damages which may result if the plaintiff prevails.

## A CIVIL ACTION COVER SHEET MUST BE FILED WITH EACH COMPLAINT.
## IF THIS COVER SHEET IS NOT FILLED OUT THOROUGHLY AND
## ACCURATELY, THE CASE MAY BE DISMISSED.

| CIVIL TRACKING ORDER<br>(STANDING ORDER 1- 88) | DOCKET NUMBER<br>2481CV00495 | Trial Court of Massachusetts<br>The Superior Court |
|---|---|---|

| CASE NAME:<br>Claudio Sosa, individually and on behalf of all others similarly situated et al<br>vs. 28Freight Llc d/b/a Truckcourier et al | Michael A. Sullivan, Clerk of Court<br>Middlesex County |
|---|---|
| TO:  File Copy | COURT NAME & ADDRESS<br>Middlesex County Superior Court - Woburn<br>200 Trade Center<br>Woburn, MA 01801 |

### TRACKING ORDER - F - Fast Track

You are hereby notified that this case is on the track referenced above as per Superior Court Standing Order 1-88. The order requires that the various stages of litigation described below must be completed not later than the deadlines indicated.

| STAGES OF LITIGATION | DEADLINE | | |
|---|---|---|---|
| | SERVED BY | FILED BY | HEARD BY |
| Service of process made and return filed with the Court | | 05/20/2024 | |
| Response to the complaint filed (also see MRCP 12) | | 06/20/2024 | |
| All motions under MRCP 12, 19, and 20 | 06/20/2024 | 07/19/2024 | 08/19/2024 |
| All motions under MRCP 15 | 06/20/2024 | 07/19/2024 | 08/19/2024 |
| All discovery requests **and depositions** served and non-expert depositions completed | 12/16/2024 | | |
| All motions under MRCP 56 | 01/15/2025 | 02/14/2025 | |
| Final pre-trial conference held and/or firm trial date set | | | 06/16/2025 |
| Case shall be resolved and judgment shall issue by | | | 02/19/2026 |

**The final pre-trial deadline is <u>not the scheduled date of the conference</u>.** You will be notified of that date at a later time.

**Counsel for plaintiff must serve this tracking order on defendant before the deadline for filing return of service.**

This case is assigned to

| DATE ISSUED<br>02/21/2024 | ASSISTANT CLERK<br>Dia S Roberts-Tyler | PHONE<br>(781)939-2745 |
|---|---|---|

Date/Time Printed: 02-21-2024 09:08:17

SCV026\ 08/2018

4/16/2024 5:02
ourt - Middlesex
umber 2481CV004

NEW HAMPSHI

MIDDLES

CLAUDIO SO
and CRISTIAN
individually and
others similarly s

v.

28FREIGHT LLC d/b/
TRUCKCOURIER, and
RICHARD MARKS, indi

Defen

The undersigned counse

Class Action Complaint and Jury

28Freight LLC d/b/a TruckCourier

/s/

Pete

PRET

57 No

P.O. B

Concor

Email: PC

Dated: April 16, 2024

3

RECEIVED
4/16/24

# COMMONWEALTH OF MASSACHUSETTS
## SUPERIOR COURT DEPARTMENT

MIDDLESEX, SS.                                    Civil Action No. 2481CV00495

| | |
|---|---|
| CLAUDIO SOSA, LUIS AGUILAR, and CRISTIAN LAMARQUE, individually and on behalf of all others similarly situated, | ) ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| 28FREIGHT LLC d/b/a TRUCKCOURIER, and RICHARD MARKS, individually, | ) ) ) ) |
| Defendants. | ) ) |

## ACCEPTANCE OF SERVICE

The undersigned counsel hereby accepts service on this date of the Summons, Class Action Complaint and Jury Demand, and Tracking Order on behalf of Defendants 28Freight LLC d/b/a TruckCourier and Richard Marks.

DEFENDANTS 28FREIGHT LLC and Richard Marks,

By their attorneys,

/s/ Peter G. Callaghan

Peter G. Callaghan, NH Bar ID 6811
PRETI FLAHERTY, PLLP
57 North Main Street
P.O. Box 1318
Concord, NH 03302-1318
Email: PCallaghan@preti.com

Dated: April 16, 2024

VN

## CERTIFICATE OF SERVICE

I hereby certify that on April 16, 2024, I caused this document to be served on counsel for

Defendants by electronic mail.

*/s/ Rachel Smit*
Rachel Smit

## COMMONWEALTH OF MASSACHUSETTS
## SUPERIOR COURT DEPARTMENT

MIDDLESEX, SS.                                    Civil Action No. 2481CV00495

---

|  |  |
|---|---|
| CLAUDIO SOSA, LUIS AGUILAR, and CHRISTIAN LAMARQUE | ) ) ) ) |
| *Plaintiffs,* | ) ) |
| v. | ) ) |
| 28FREIGHT LLC d/b/a TRUCK COURIER, and RICHARD MARKS, individually | ) ) ) |
| *Defendants.* | ) ) ) |

**RECEIVED**
4/26/2024

---

### NOTICE OF FILING OF REMOVAL BY DEFENDANTS

PLEASE TAKE NOTICE that this case, which was previously pending in the Middlesex Superior Court of the Commonwealth of Massachusetts, has been removed to the United States District Court for the District of Massachusetts by the Defendants 28Freight LLC d/b/a Truck Courier and Richard Marks, pursuant to 28 U.S.C. § 1446. A copy of the Petition for Removal and Civil Action Cover Sheet, filed with the United States District Court for the District of Massachusetts, is attached hereto as Exhibit 1.

PLEASE TAKE FURTHER NOTICE that, pursuant to 28 U.S.C. § 1446(d), this Court "shall proceed no further unless and until the case is remanded."

[*signature on following page*]

21702987.1

SR

Respectfully submitted,

**The Defendants,**
**28FREIGHT LLC d/b/a TRUCK COURIER**
**and RICHARD MARKS**
By their attorneys,

*/s/ Daniel R. Sonneborn*
Wesley S. Chused, BBO #083520
Daniel R. Sonneborn, BBO #679229
Harper A. Weissburg, BBO #711735
Peter G. Callaghan, *pro hac vice admission to*
*be sought*
Preti Flaherty Beliveau & Pachios LLP
60 State Street, Suite 1100
Boston, MA 02109
(p) (617) 226-3800
(f) (617) 226-3801
wchused@preti.com
dsonneborn@preti.com
hweissburg@preti.com
pcallaghan@preti.com

Dated:  April 26, 2024

## CERTIFICATE OF SERVICE

I, Daniel R. Sonneborn, counsel for Defendants, 28Freight LLC d/b/a Truck Courier, hereby certify that on this 26th day of April 2024, I caused true and correct copies of the foregoing *Notice of Filing of Removal by Defendants* to be served upon counsel of record for all parties by first-class mail, postage prepaid, and e-mail addressed as follows:

Hillary Schwab, Esq.
hillary@fairworklaw.com
Rachel Smit, Esq.
rachel@fairworklaw.com
Fair Work, P.C.
192 South Street, Suite 450
Boston, MA 02111

*/s/ Daniel R. Sonneborn*
Daniel R. Sonneborn (BBO # 679229)

21702987.1

# Exhibit 1

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| CLAUDIO SOSA, LUIS AGUILAR, and CHRISTIAN LAMARQUE | ) ) ) ) | |
| *Plaintiffs,* | ) ) | |
| v. | ) ) | CIVIL ACTION No. 4:24-cv-40064 |
| 28FREIGHT LLC d/b/a TRUCK COURIER, and RICHARD MARKS, individually | ) ) ) ) | |
| *Defendants.* | ) ) ) | |

## NOTICE OF REMOVAL

**TO:** The Honorable Judges of the United States District Court for the District of Massachusetts:

PLEASE TAKE NOTICE that pursuant to 28 U.S.C. §§ 1441 and 1446, Defendants 28Freight LLC d/b/a Truck Courier and Richard Marks ("Removing Defendants"), hereby give notice of removal to this Court of the above-captioned Civil Action, originally filed in the Middlesex County Superior Court, Civil Action No. 2481CV00495, on February 20, 2024. In support of removal, Removing Defendants state as follows:

1.  <u>Timeliness of Removal</u>. This Notice of Removal is timely pursuant to 28 U.S.C. § 1446(b) in that Removing Defendants were each served with a Summons and copy of the Complaint in this action on March 28, 2024 (Marks) and April 16, 2024 (28Freight LLC). This Notice of Removal is being filed within 30 days of the date on which Removing Defendants were served with a copy of the Complaint. All Defendants are joining in this Notice of Removal and consent to removal.

21745299.1

2. <u>Venue</u>. Venue for this lawsuit is proper in the United States District Court for the District of Massachusetts pursuant to 28 U.S.C. § 1391(b)(1) & (2) as the defendants reside in this District and the Plaintiffs allege a substantial part of the events and omissions giving rise to the claims occurred in this District, and pursuant to 28 U.S.C. § 1441(a) as the Middlesex County Superior Court, where the Civil Action is pending, is located within the District of Massachusetts.

3. <u>State Court Documents</u>. Pursuant to 28 U.S.C. § 1446(a), a copy of all process, pleadings and orders received and filed by Defendants, which papers include the Summons, Complaint, Civil Tracking Order and Civil Action Cover Sheet, are attached hereto as **Exhibit A**. As of the date of this removal, there are no pending motions in the state court.

4. <u>Federal Question Jurisdiction</u>. This Court has original jurisdiction of this action under 28 U.S.C. § 1331, and therefore this action is removable to this Court pursuant to 28 U.S.C. § 1441(a) (providing for removal of any state court action to the district court where the United States district courts have original jurisdiction).[1] 28 U.S.C. § 1331 provides: "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." Based on the claim arising under federal statutory law contained in Plaintiffs' Complaint, the Civil Action may be removed to this Court by Defendants on the basis of federal question jurisdiction pursuant to 28 U.S.C. § 1331, as explained below.

a. Plaintiffs allege that Defendant 28Freight violated 49 U.S.C. § 14704 and its regulations, referred to therein as the Truth-in-Leasing ("TIL") regulations, arising under federal law. *See* Complaint, ¶¶ 3, 57-77. Furthermore, Plaintiffs seek damages and injunctive relief to remedy Defendant 28Freight's alleged violations of the TIL regulations "*[p]ursuant*

---

[1] As litigation proceeds and Removing Defendants ascertain the diversity and size of Plaintiffs' purported class and the amount in controversy, Removing Defendants reserve the right to remove this action pursuant to the Class Action Fairness Act, 28 U.S.C. §§ 1332(d).

*to* 49 U.S.C. § 14704(a)." *Id.* at p. 20-21 (emphasis added).

      b.  U.S. District Courts routinely recognize original jurisdiction for federal TIL claims under 28 U.S.C. § 1331. *See, e.g., Piquion v. Amerifreight Sys. LLC*, No. 22 C 5690, 2023 WL 8113379, at *5 (N.D. Ill. Nov. 22, 2023) ("No doubt, the Court has federal-question jurisdiction over the independent-contractor Plaintiffs' TILA claim and supplemental jurisdiction over their state-law claims for breach of contract and violation of the ICFA."); *Goodwin v. Am. Marine Express, Inc.*, No. 1:18CV1014, 2019 WL 257699, at *2 (N.D. Ohio Jan. 18, 2019) (denying Motion to Remand 22-count Amended Complaint that included FLSA and TIL claims because the Court had original jurisdiction over the FLSA and TIL claims which were "causes of action under federal statutory law"); *Faraca v. Fleet 1 Logistics, LLC*, 693 F. Supp. 2d 891, 893 (E.D. Wis. 2010) ("The Complaint includes a cause of action under the Truth–in–Leasing Act, 49 U.S.C. § 14102 and § 14704. Federal question jurisdiction exists under 28 U.S.C. § 1331, based on the claims under the federal Truth–in–Leasing Act. The Court has supplemental jurisdiction over Faraca's state law claims pursuant to 28 U.S.C. § 1367(a).").

    5.    After the filing of this Notice of Removal with this Court, (a) written notice of the filing of this Notice will be given by the attorneys for the Removing Defendants to the Plaintiffs, Hillary Schwab and Rachel Smit and Fair Work, P.C.; (b) a certified copy of this Notice of Removal will be filed with the Clerk of the Middlesex County Superior Court; and (c) certified copies of all pleadings on file in Middlesex County Superior Court will be filed with this Court within 28 days. *See* L.R. 81.1(a).

    6.    Removing Defendants understand their obligation to file an Answer or to present other defenses or objections available under Federal Rules of Civil Procedure within 7 days after

21745299.1

the filing of this Notice of Removal, unless some later date applies. *See* Fed. R. Civ. P. 81(c)(2)(C). The parties have agreed through counsel that the Defendants' responsive pleading will be filed on or before May 20, 2024.

7.      By filing this Notice of Removal, Removing Defendants are not making a general appearance, and do not waive their right to raise any defense or grounds for dismissal pursuant to Fed. R. Civ. P. 12, or otherwise.

8.      Removing Defendants have good and sufficient defenses to Plaintiffs' claims in this Civil Action.

9.      Other than the documents annexed hereto at Exhibit A, Removing Defendants have not been served with any other pleadings, orders, or materials regarding this matter.

10.     No previous application for the relief sought herein has been made to this or any other court.

## CONCLUSION

For the foregoing reasons, the Removing Defendants respectfully request that the United States District Court for the District of Massachusetts accept this Notice of Removal, that it assumes jurisdiction over this lawsuit, and that it issue such further orders and processes as may be necessary to bring before it all parties necessary for the trial hereof.

21745299.1

Respectfully submitted,

**The Defendants,**
**28FREIGHT LLC d/b/a TRUCK COURIER**
**and RICHARD MARKS**
By their attorneys,


*/s/ Daniel R. Sonneborn*
Wesley S. Chused, BBO #083520
Daniel R. Sonneborn, BBO #679229
Harper A. Weissburg, BBO #711735
Peter G. Callaghan, *pro hac vice admission to be sought*
Preti Flaherty Beliveau & Pachios LLP
60 State Street, Suite 1100
Boston, MA 02109
(p) (617) 226-3800
(f) (617) 226-3801
wchused@preti.com
dsonneborn@preti.com
hweissburg@preti.com
pcallaghan@preti.com

Dated: April 26, 2024


## CERTIFICATE OF SERVICE

I certify that this document, filed manually or through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants (see below) on this 26th day of April 2024.

Hillary Schwab, Esq.
hillary@fairworklaw.com
Rachel Smit, Esq.
rachel@fairworklaw.com


*/s/ Daniel R. Sonneborn*
Daniel R. Sonneborn (BBO # 679229)

21745299.1

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a)  PLAINTIFFS | DEFENDANTS |
|---|---|
| Claudio Sosa, Luis Aguilar, and Christian LaMarque | 28Freight LLC d/b/a Truck Courier and Richard Marks |

| **(b)**  County of Residence of First Listed Plaintiff   Worcester | County of Residence of First Listed Defendant |
|---|---|
| *(EXCEPT IN U.S. PLAINTIFF CASES)* | *(IN U.S. PLAINTIFF CASES ONLY)* |
| | NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED. |

| **(c)**   Attorneys *(Firm Name, Address, and Telephone Number)* | Attorneys *(If Known)* |
|---|---|
| Fair Work, P.C., 192 South St., Ste. 450 Boston, MA 02111 (617) 607-3260 | Preti Flaherty, LLP, 60 State St., Ste. 1100 Boston, MA 02109 (617) 226-3800 |

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1  U.S. Government Plaintiff
- [x] 3  Federal Question *(U.S. Government Not a Party)*
- [ ] 2  U.S. Government Defendant
- [ ] 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV.  NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 365 Personal Injury - | [ ] 690 Other | [ ] 423 Withdrawal | [ ] 376 Qui Tam (31 USC |
| [ ] 130 Miller Act | [ ] 315 Airplane Product | Product Liability | | 28 USC 157 | 3729(a)) |
| [ ] 140 Negotiable Instrument | Liability | [ ] 367 Health Care/ | | | [ ] 400 State Reapportionment |
| [ ] 150 Recovery of Overpayment | [ ] 320 Assault, Libel & | Pharmaceutical | | **PROPERTY RIGHTS** | [ ] 410 Antitrust |
| & Enforcement of Judgment | Slander | Personal Injury | | [ ] 820 Copyrights | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 330 Federal Employers' | Product Liability | | [ ] 830 Patent | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted | Liability | [ ] 368 Asbestos Personal | | [ ] 835 Patent - Abbreviated | [ ] 460 Deportation |
| Student Loans | [ ] 340 Marine | Injury Product | | New Drug Application | [ ] 470 Racketeer Influenced and |
| (Excludes Veterans) | [ ] 345 Marine Product | Liability | | [ ] 840 Trademark | Corrupt Organizations |
| [ ] 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | | [ ] 880 Defend Trade Secrets | [ ] 480 Consumer Credit |
| of Veteran's Benefits | [ ] 350 Motor Vehicle | [ ] 370 Other Fraud | **LABOR** | Act of 2016 | (15 USC 1681 or 1692) |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle | [ ] 371 Truth in Lending | [ ] 710 Fair Labor Standards | | [ ] 485 Telephone Consumer |
| [ ] 190 Other Contract | Product Liability | [ ] 380 Other Personal | Act | **SOCIAL SECURITY** | Protection Act |
| [ ] 195 Contract Product Liability | [ ] 360 Other Personal | Property Damage | [ ] 720 Labor/Management | [ ] 861 HIA (1395ff) | [ ] 490 Cable/Sat TV |
| [ ] 196 Franchise | Injury | [ ] 385 Property Damage | Relations | [ ] 862 Black Lung (923) | [ ] 850 Securities/Commodities/ |
| | [ ] 362 Personal Injury - | Product Liability | [ ] 740 Railway Labor Act | [ ] 863 DIWC/DIWW (405(g)) | Exchange |
| | Medical Malpractice | | [ ] 751 Family and Medical | [ ] 864 SSID Title XVI | [ ] 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | Leave Act | [ ] 865 RSI (405(g)) | [ ] 891 Agricultural Acts |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights | **Habeas Corpus:** | [x] 790 Other Labor Litigation | | [ ] 893 Environmental Matters |
| [ ] 220 Foreclosure | [ ] 441 Voting | [ ] 463 Alien Detainee | [ ] 791 Employee Retirement | **FEDERAL TAX SUITS** | [ ] 895 Freedom of Information |
| [ ] 230 Rent Lease & Ejectment | [ ] 442 Employment | [ ] 510 Motions to Vacate | Income Security Act | [ ] 870 Taxes (U.S. Plaintiff | Act |
| [ ] 240 Torts to Land | [ ] 443 Housing/ | Sentence | | or Defendant) | [ ] 896 Arbitration |
| [ ] 245 Tort Product Liability | Accommodations | [ ] 530 General | | [ ] 871 IRS—Third Party | [ ] 899 Administrative Procedure |
| [ ] 290 All Other Real Property | [ ] 445 Amer. w/Disabilities - | [ ] 535 Death Penalty | **IMMIGRATION** | 26 USC 7609 | Act/Review or Appeal of |
| | Employment | **Other:** | [ ] 462 Naturalization Application | | Agency Decision |
| | [ ] 446 Amer. w/Disabilities - | [ ] 540 Mandamus & Other | [ ] 465 Other Immigration | | [ ] 950 Constitutionality of |
| | Other | [ ] 550 Civil Rights | Actions | | State Statutes |
| | [ ] 448 Education | [ ] 555 Prison Condition | | | |
| | | [ ] 560 Civil Detainee - | | | |
| | | Conditions of | | | |
| | | Confinement | | | |

## V.  ORIGIN *(Place an "X" in One Box Only)*

- [ ] 1  Original Proceeding
- [x] 2  Removed from State Court
- [ ] 3  Remanded from Appellate Court
- [ ] 4  Reinstated or Reopened
- [ ] 5  Transferred from Another District *(specify)*
- [ ] 6  Multidistrict Litigation - Transfer
- [ ] 8  Multidistrict Litigation - Direct File

## VI.  CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
49 U.S.C. § 14704

Brief description of cause:
Plaintiff claims independent contractor truck drivers were misclassified and Truth-in-Leasing statute was violated.

## VII.  REQUESTED IN COMPLAINT:

- [x] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $
$50,000+

CHECK YES only if demanded in complaint:
JURY DEMAND:  [x] Yes  [ ] No

## VIII.  RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____  DOCKET NUMBER _____

| DATE | SIGNATURE OF ATTORNEY OF RECORD |
|---|---|
| April 26, 2024 | /s/ Daniel R. Sonneborn |

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

Superior Court - Middlesex
Docket Number 2481CV00495

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1.  Title of case (name of first party on each side only)  Claudio Sosa v. 28Freight LLC d/b/a Truck Courier

2.  Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet.  (See local rule 40.1(a)(1)).

    [ ]     I.      160, 400, 410, 441, 535, 830*, 835*, 850, 880, 891, 893, R.23, REGARDLESS OF NATURE OF SUIT.

    [ ]     II.     110, 130, 190, 196, 370, 375, 376, 440, 442, 443, 445, 446, 448, 470, 751, 820*, 840*, 895, 896, 899.

    [✔]    III.    120, 140, 150, 151, 152, 153, 195, 210, 220, 230, 240, 245, 290, 310, 315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 367, 368, 371, 380, 385, 422, 423, 430, 450, 460, 462, 463, 465, 480, 485, 490, 510, 530, 540, 550, 555, 560, 625, 690, 710, 720, 740, 790, 791, 861-865, 870, 871, 890, 950.

    *Also complete AO 120 or AO 121. for patent, trademark or copyright cases.

3.  Title and number, if any, of related cases.  (See local rule 40.1(g)).  If more than one prior related case has been filed in this district please indicate the title and number of the first filed case in this court.

4.  Has a prior action between the same parties and based on the same claim ever been filed in this court?

    YES [ ]    NO [✔]

5.  Does the complaint in this case question the constitutionality of an act of congress affecting the public interest?  (See 28 USC §2403)

    YES [ ]    NO [✔]

    If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?

    YES [ ]    NO [ ]

6.  Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?

    YES [ ]    NO [✔]

7.  Do all of the parties in this action, excluding governmental agencies of the United States and the Commonwealth of Massachusetts ("governmental agencies"), residing in Massachusetts reside in the same division? - (See Local Rule 40.1(d)).

    YES [ ]    NO [✔]

    A.  If yes, in which division do all of the non-governmental parties reside?

        Eastern Division [ ]    Central Division [ ]    Western Division [ ]

    B.  If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies, residing in Massachusetts reside?

        Eastern Division [ ]    Central Division [✔]    Western Division [ ]

8.  If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court? (If yes, submit a separate sheet identifying the motions)

    YES [ ]    NO [✔]

(PLEASE TYPE OR PRINT)
ATTORNEY'S NAME  Daniel R. Sonneborn
ADDRESS  Preti Flaherty Beliveau & Pachios, LLP, 60 State Street, Suite 1100, Boston, MA 02109
TELEPHONE NO.  (617) 226-3852

(CategoryForm11-2020.wpd )