**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| CLAUDIO SOSA, LUIS AGUILAR, and CRISTIAN LAMARQUE, <br><br> *Plaintiff*, <br><br> v. <br><br> 28FREIGHT LLC d/b/a TRUCK COURIER, and RICHARD MARKS, <br><br> *Defendants*. | Civil No. 4:24-CV-40064-MRG |

**MEMORANDUM AND ORDER**

**GUZMAN, D.J.**

This matter is before the Court on the partial motion to dismiss filed by Defendants 28Freight LLC and Richard Marks. [ECF No. 14]. Plaintiffs Claudio Sosa, Luis Aguilar, and Cristian Lamarque have filed an opposition, [ECF No. 18], to which Defendants have replied, [ECF No. 21]. This matter is now ripe for adjudication. For the reasons that follow, the partial motion to dismiss, [ECF No. 14], is **ALLOWED IN PART** and **DENIED IN PART**. Count II of the Complaint is dismissed to the extent it asserts a claim for unlawful deductions and Count III of the Complaint is dismissed.

**I.   BACKGROUND[1]**

Plaintiffs Claudio Sosa, Luis Aguilar, and Cristian Lamarque (collectively, "Plaintiffs"),

---

[1] On a motion to dismiss, the Court sets forth the facts taking as true all well-pleaded allegations in the complaint and drawing all reasonable inferences in the Plaintiffs' favor. See Morales-Tañón v. P.R. Elec. Power Auth., 524 F.3d 15, 17 (1st Cir. 2008).

current and former truck drivers working for 28Freight LLC ("28Freight"), filed this putative class action against Defendants 28Freight and Richard Marks (collectively, "Defendants") on behalf of all similarly situated individuals in Massachusetts Superior Court on February 20, 2024. [ECF No. 11 at 8–29 ("Compl.")]. Defendants removed the case to this Court shortly thereafter, pursuant to 28 U.S.C. §§ 1331, 1441(a). [ECF No. 1].

28Freight is a Massachusetts limited liability company that specializes in transporting freight on an expedited basis. [Compl. ¶¶ 9, 19]. 28Freight employs drivers to transport customers' freight in interstate commerce and specializes in the transportation of life sciences and biotechnology cargo. [Id. ¶¶ 21, 38]. 28Freight advertises it is "dedicated to providing reliable, fast delivery[.]" [Id. ¶ 39]. The company is authorized by the United States Department of Transportation ("DOT") to operate as a motor carrier and its drivers provide transport under 28Freight's operating authority. [Id. ¶¶ 20, 25]. 28Freight reported to the Federal Motor Carrier Safety Administration ("FMCSA") that it operated forty-one power units with forty-one drivers as of January 2023. [Id. ¶ 13]. Defendant Richard Marks is the sole manager of 28Freight and holds himself out as the company's President. [Id. ¶¶ 10, 32]. Marks is engaged in the day-to-day operations of 28Freight and is involved in developing, implementing, and approving employment policies; setting employee pay rates; hiring and firing employees; and directing employees' work. [Id. ¶¶ 12, 33]. This includes answering questions raised by drivers about compensation. [Id. ¶ 34].

The named Plaintiffs are current and former truck drivers for Defendants. [Id. ¶¶ 5–7]. Plaintiff Sosa worked as truck driver for Defendants from approximately 2014 to October 2023. [Id. ¶ 5]. Plaintiff Aguilar most recently worked as a trucker driver for Defendants beginning in approximately 2019 to the present. [Id. ¶ 6]. Plaintiff Lamarque worked as a truck driver for Defendants from approximately May 2023 to December 2023. [Id. ¶ 7]. Plaintiffs' proposed class

consists of "all individuals who have performed work for Defendants while subject to an independent contractor lease agreement, at any time during the applicable statutory period." [Id. ¶ 78]. The applicable statutory period is three years for the state law claims and four years for the claimed violations of federal law. [Id. ¶ 79].

Plaintiffs perform trucking transportation services directly for Defendants and are subject to Defendants' oversight and control. [Id. ¶¶ 41–43]. Drivers must commit to "regular and accurate communication" with Defendants to meet the "time-sensitive service parameters" of its customers, designate Defendants' third-party vendor as their settlement agent to receive payments from Defendants, obtain express written consent from Defendants to use a substituted vehicle if the driver's truck is out of service, and notify 28Freight in advance when using their vehicles for non-28Freight purposes. [Id. ¶ 42]. Defendants also prohibit drivers from soliciting business from Defendants' customers or prospects in connection with any similar or competitive business. [Id.] Defendants interview each driver before they are hired at Defendants' principal office in Massachusetts. [Id. ¶ 43]. Drivers are not required to possess any specialized skills or training, other than being able to drive a box truck. [Id. ¶ 46]. All drivers are required to sign standard form contracts titled "Agreement for Leased Equipment and Independent Contractor Services" ("lease agreement"). [Id. ¶ 26].

Defendants' job assignment system requires the drivers to use a phone application to receive assignments, which drivers must check by 7:30 am each day. [Id. ¶ 43]. Drivers are only permitted to view and accept or reject a single assignment at a time and Defendants' dispatchers may punish drivers if they reject a job by leaving them without work for hours. [Id.] Drivers must call Defendants' dispatchers when they accept a job and when the job is completed. [Id.] Defendants require drivers to pay for business expenses, including fuel, tolls, maintenance and

repairs; the first $1,000 on a per incident basis of any loss of or damage to cargo; and physical damage insurance. [Id. ¶ 53]. Defendants do not reimburse drivers for these expenses. [Id.]

Plaintiffs claim they and the proposed class have been misclassified by Defendants as independent contractors, and as a result, Plaintiffs and the proposed class have been deprived of benefits that they would have been entitled to as Defendants' employees. [Id. ¶ 47]. In addition, they allege Defendants violated the Massachusetts Wage Act ("MWA") by failing to timely pay drivers, taking unlawful deductions from drivers' earned wages, and requiring drivers to pay for business expenses employees are not permitted to bear and failing to reimburse drivers for these expenses, which also violates 454 Mass. Code Regs. 27.04(4)(d). [Id. ¶¶ 51–55]. They also allege Defendants failed to pay drivers the minimum wage and have violated various provisions of the DOT's Truth-in-Leasing regulations ("TIL regulations"), 49 C.F.R. Part 376. [Id. ¶¶ 64–77]. Defendants moved for partial dismissal of the complaint and argue Plaintiffs' claim for entitlement to benefits under the MWA is preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"), that the claim for untimely payment of wages is not sufficiently pled, that most of the improper deduction claims are preempted by the TIL regulations, and that Plaintiffs were paid more than the minimum wage. [ECF No. 14-1].

## II.  STANDARD OF REVIEW

On a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court "must assume the truth of all well-plead[ed] facts and give the plaintiff the benefit of all reasonable inferences therefrom." Ruiz v. Bally Total Fitness Holding Corp., 496 F.3d 1, 5 (1st Cir. 2007). "Under Rule 12(b)(6), the district court may properly consider only facts and documents that are part of or incorporated into the complaint; if matters outside the pleadings are considered, the motion must be decided under the more stringent standards applicable to a Rule 56 motion for summary judgment." Rivera

v. Centro Medico de Turabo, Inc., 575 F.3d 10, 15 (1st Cir. 2009) (quoting Trans-Spec Truck Serv., Inc. v. Caterpillar, Inc., 524 F.3d 315, 321 (1st Cir. 2008)). There lies an exception to this rule "for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint." Id. (quoting Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co., 267 F.3d 30, 33 (1st Cir. 2001)). "This is true even when the documents are incorporated into the movant's pleadings." Curran v. Cousins, 509 F.3d 36, 44 (1st Cir. 2007) (citing Beddall v. State St. Bank and Trust Co., 137 F.3d 12, 17 (1st Cir. 1998)).

  To survive a motion to dismiss, a plaintiff must "state a claim . . . that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. at 555 (internal citations omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 556). Despite this generous standard, "Rule 12(b)(6) is not entirely a toothless tiger. . . . The threshold for stating a claim may be low, but it is real." Dartmouth Rev. v. Dartmouth Coll., 889 F.2d 13, 16 (1st Cir. 1989) (quotation omitted). The complaint must therefore "set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." Gooley v. Mobil Oil Corp., 851 F.2d 513, 515 (1st Cir. 1988); see DM Research, Inc. v. Coll. of Am. Pathologists, 170 F.3d 53, 55 (1st Cir. 1999) (explaining that the complaint must "allege a factual predicate concrete enough to warrant further proceedings" (emphasis in original)).

Although the complaint need not provide "detailed factual allegations," Twombly, 550 U.S. at 555, it must "amplify a claim with some factual allegations . . . to render the claim plausible," Iqbal v. Hasty, 490 F.3d 143, 157–58 (2d Cir. 2007). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555).

Though most motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) are "premised on a plaintiff's putative failure to state an actionable claim, such a motion may sometimes be premised on the inevitable success of an affirmative defense." Nisselson v. Lernout, 469 F.3d 143, 150 (1st Cir. 2006). "As a general rule, a properly raised affirmative defense can be adjudicated on a motion to dismiss so long as (i) the facts establishing the defense are definitively ascertainable from the complaint and the other allowable sources of information, and (ii) those facts suffice to establish the affirmative defense with certitude." Rodi v. S. New Eng. Sch. of Law, 389 F.3d 5, 12 (1st Cir. 2004) (citing In re Colonial Mortg. Bankers Corp., 324 F.3d 12, 16 (1st Cir. 2003).

## III.  ANALYSIS

### A.  ERISA Preemption

In Count I of the Complaint, Plaintiffs assert that Defendants have misclassified them as independent contractors in violation of Mass. Gen. Laws ch. 149, § 148B. [Compl. at 26–27].[2] As a result of this misclassification, Plaintiffs assert an entitlement to "the wages and benefits they would have received as employees . . . as well as benefits that Defendants provided to their properly classified employees, including paid vacations and holidays."[3] [Id.] Defendants assert that, to the

---

[2] All pagination refers to ECF pagination rather than page numbers in the documents.
[3] The Massachusetts Wage Act provides plaintiffs pursuing misclassification claims under Chapter 148B the right to bring "a civil action for injunctive relief, for any damages incurred, and for any lost wages and other benefits[.]" Mass. Gen. Laws ch. 149, § 150.  In the context of misclassification, these "other benefits" are those to which the worker

6

extent Plaintiffs' claim for benefits goes beyond paid vacation and paid holidays, such a claim is preempted by ERISA. [ECF No. 14-1 at 7–8].

"ERISA preempts 'any and all State laws insofar as they . . . relate to any employee benefit plan' covered by the statute." Sirva Relocation, LLC v. Richie, 794 F.3d 185 (1st Cir. 2015) (quoting 29 U.S.C. § 1144(a)). Preemption analysis under ERISA "'involves two central questions: (1) whether the plan at issue is an "employee benefit plan" and (2) whether the cause of action "relates to" this employee benefit plan.'" Hampers v. W.R. Grace & Co., 202 F.3d 44, 49 (1st Cir. 2000) (quoting McMahon v. Digit. Equip. Corp., 162 F.3d 28, 36 (1st Cir. 1998)).

As to the first question, ERISA defines an "employee benefit plan" to mean "an employee welfare benefit plan," an "employee pension benefit plan," or a plan that is both. 29 U.S.C. § 1002(3). ERISA defines "an employee welfare benefit plan" as:

> any plan, fund, or program . . . established or maintained by an employer . . . to the extent that such plan, fund or program was established or maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services . . . .[4]

Id. § 1002(1). "The question of whether an ERISA plan exists is 'a question of fact, to be answered in light of all the surrounding facts and circumstances from the point of view of a reasonable

---

would be entitled if properly classified as an employee. Somers v. Converged Access, Inc., 911 N.E.2d 739, 744 (Mass. 2009) ("An employee misclassified as an independent contractor, as a matter of law, is an employee; his contract rate is his wage rate; and his 'damages incurred' equal the value of wages and benefits he should have received as an employee, but did not." (emphasis in original)).

[4] In Wickman v. Northwestern National Insurance Company, the First Circuit categorized this definition as requiring five essential constituents:

> (1) a plan, fund or program (2) established or maintained (3) by an employer or by an employee organization, or by both (4) for the purpose of providing medical, surgical, hospital care, sickness, accident, disability, death, unemployment or vacation benefits, apprenticeship or other training programs, day care centers, scholarship funds, prepaid legal services or severance benefits (5) to participants or their beneficiaries.

908 F.2d 1077, 1082 (1st Cir. 1990) (quoting Donovan v. Dillingham, 688 F.2d 1367, 1371 (11th Cir. 1982)).

person.'" Wickman, 908 F.2d at 1082 (quoting Kanne v. Conn. Gen. Life Ins. Co., 867 F.2d 489, 492 (9th Cir. 1988), cert. denied, 492 U.S. 906 (1989)).

In support of their argument that the benefits Defendants offered to employees are "employee benefit plans" covered by ERISA, Defendants rely on excerpts from 28Freight's Employee Handbook effective June 2022 attached as an exhibit to their partial motion to dismiss.[5] [ECF No. 14-6]. The "Benefits Policies" section of the Employee Handbook summarizes the benefits available to 28Freight's regular full-time employees. [Id. at 3–7]. These include medical, dental, and vision insurance; long and short-term disability insurance; life insurance; and a 401(k) retirement plan. [Id.] Defendants assert that the Employee Handbook makes plain that the benefits offered to employees are employee welfare benefit plans covered by ERISA.[6] [ECF No. 14-1 at 7]. The Court disagrees. In Wickman v. Northwestern National Insurance Company, the employer offered health, medical, dental, and life insurance, as well as several other forms of insurance and benefits. 908 F.2d at 1083. The employer distributed a handbook containing a listing of ERISA rights and a summary plan description.[7] Id. The First Circuit found that "[s]uch a booklet, detailing

---

[5] Accompanying the excerpts is the declaration of Marks in which he verifies that they are a true and accurate copy of the relevant portions of 28Freight's Employee Handbook. [ECF No. 14-2 ¶ 3]. Plaintiffs argue that the Court may not appropriately consider the Employee Handbook on a motion to dismiss because Plaintiffs have not referred to the Employee Handbook in their Complaint nor is it central to their claim. [ECF No.18 at 3]. The Court need not make a definitive ruling on this matter as the Court finds that Defendants have failed to show that Plaintiffs' claims are preempted by ERISA even where the Employee Handbook is considered.

[6] Defendants also assert that the types of benefits which Plaintiffs request, without more, demonstrate that the benefits they seek are covered by ERISA. [ECF No. 14-1 at 6–7]. In support, Defendants cite to Filleti v. AOL, Inc, No. 18-cv-10529-ADB, 2019 U.S. Dist. LEXIS 28137 (D. Mass. Feb. 22, 2019), and Remington v. J.B. Hunt Transport, Inc., No. 15-13019-RGS, 2017 U.S. Dist. LEXIS 65047 (D. Mass. Apr. 28, 2017). [ECF No. 14-1 at 6]. However, in both cases, the parties did not contest whether the plan was an "employee benefit plan" covered by ERISA and thus provide no support for their argument. Filletti, 2019 U.S. Dist. LEXIS 28137, at *5; Remington, 2017 U.S. Dist. LEXIS 65047, at *6. Defendants cite no other authority to support their contention.

[7] A summary plan description, in addition to other information, must include the name and type of administration of the plan, the plan's requirements regarding eligibility, a description of benefits and when participants have a right to those benefits, the source of contributions to the plan and the methods used to calculate the amount of contributions, provisions governing termination of the plan, procedures regarding claims for benefits and remedies for disputing denied claims. 29 U.S.C. § 1022.

ERISA rights, is strong evidence that the employer has adopted an ERISA regulated plan." Id. The First Circuit, however, did not find such a booklet determinative. Id. Nor will this Court, particularly where the Employee Handbook here as opposed to that in Wickman does not reference ERISA nor provide a summary plan description. Based on the information properly before the Court, the Court finds that Defendants have failed to show to a certitude that the plan at issue is an "employee benefit plan" and thus that ERISA preempts Plaintiffs' claims.[8]

### B. Failure to Make Timely Payments

In Count II of the Complaint, Plaintiffs allege that Defendants violated the MWA by depriving them of timely payment of wages. [Compl. at 27]. To state a claim under the MWA, a plaintiff must allege that "(1) he was an employee under the statute, (2) his form of compensation constitutes a wage under the statute, and (3) the defendants violated the Act by not paying his wages in a timely manner." Klauber v. VMware, Inc., 599 F. Supp. 3d 34, 46 (D. Mass. 2022), aff'd, 80 F.4th 1 (1st Cir. 2023).

Pursuant to section 4.04 of the lease agreement between Plaintiffs and 28Freight, payment to Plaintiffs was due within fifteen days after the Plaintiffs' submission of certain trip documentation. [ECF No. 11 at 44–54 ("Aguilar Lease")]. Defendants argue that Plaintiffs have failed to state a claim as there is nothing in the Complaint to suggest that Defendants failed to pay Plaintiffs within this period. [ECF No. 14-1 at 9]. However, Plaintiffs have alleged that Defendants failed to pay Plaintiffs a pre-established percentage of the mileage and accessorial charges

---

[8] Defendants attach the TruckCourier 401(k) plan documents as well as vision, dental, medical, and long-term disability plan documents to their reply. [ECF Nos. 21-2, 21-3, 21-4, 21-5, 21-6, 21-7, 21-8]. However, the Court will not consider these documents and the arguments pertaining to them where they are raised for the first time in a reply by the party seeking a dispositive ruling. See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Flanders-Borden, 11 F.4th 12, 23 n.6 (1st Cir. 2021); NExTT Solutions, LLC v. XOS Techs., Inc., 113 F. Supp. 3d 450, 458 (D. Mass. 2015) (holding that defendant's argument in support of its motion raised for first time in its reply brief was waived, although it could be appropriately raised in a future dispositive motion).

referenced in their leases and that Defendants failed to reimburse Plaintiffs for all transportation expenses for travel time during their workday.[9] [Compl. ¶¶ 50, 54]. Defendants assert that a late payment is not the same as a lost payment and thus the Plaintiffs' claims for payments that were never made are not encompassed by their allegation. [ECF No. 14-1 at 9; ECF No. 21 at 5]. However, the case law cited by Defendants for this proposition does not support their contention. See Reuter v. Methuen, 184 N.E.3d 772, 777 (Mass. 2022) (noting that while "[a] late payment is not the same as a lost payment," the MWA's reference to "lost wages" encompasses all late payments under the MWA).

Thus, the Court finds that Plaintiffs have appropriately stated a claim in Count II of the Complaint for violation of the MWA for failure to timely pay wages.

### C. Truth-In-Leasing Regulations

Plaintiffs allege that the Defendants improperly deducted from their wages the costs of being enrolled as a member of Contractor Management Services ("CMS"), a third-party company that acts as a settlement agent for the drivers, and improperly required drivers to pay for business expenses, including fuel, tolls, maintenance, and repairs; the first $1,000 on a per incident basis of any loss of or damage to cargo; and physical damage insurance. [Compl. ¶¶ 52–53; ECF No. 11 at 38]. In Count II of their Complaint, Plaintiffs assert a cause of action under the MWA for these alleged improper deductions. [Compl. at 27]. Defendants argue, to the extent Count II asserts a claim for improper deductions, it is preempted by TIL regulations because those deductions constitute permitted cost-sharing under a compliant lease. [ECF No. 14-1 at 9].

---

[9] Plaintiffs also allege that Defendants took unlawful deductions from their compensation and failed to reimburse them for business expenses that should be an employer's responsibility. [Compl. ¶¶ 52–53]. However, the Court has found below, *infra* section III.C, that these claims are preempted by the TIL regulations. Defendants did not argue that the allegations of either paragraph 50 or 54 of the Complaint are preempted, and the Court will not address the issue in the absence of the parties' input. [See ECF No. 14-1 at 9–12].

Pursuant to 49 U.S.C. § 14102(a), the Secretary of Transportation is authorized to issue regulations that govern leases between independent truckers and federally regulated motor carriers such as Freight28. See 49 U.S.C. § 14102(a). The TIL regulations were promulgated pursuant to this section to "protect independent truckers from motor carriers' abusive leasing practices." Fox v. TransAm Leasing, Inc., 839 F.3d 1209, 1211 (10th Cir. 2016); see Operator Indep. Drivers Ass'n v. Comerica Bank (In re Arctic Express Inc.), 636 F.3d 781, 795–96 (6th Cir. 2011) (outlining history of TIL regulations). "The method selected to achieve this goal was to require that certain terms be included in every lease between carriers and [independent truck drivers]." Owner-Operator Indep. Drivers Ass'n v. Swift Transp. Co., 367 F.3d 1108, 1115 (9th Cir. 2004). Hence, the TIL regulations mandate that when "[an] authorized carrier [] perform[s] authorized transportation in equipment it does not own," "[t]here shall be a written lease granting the use of the equipment[.]" 49 C.F.R. § 376.11. The TIL regulations set forth the requirements for what a compliant lease must contain in section 376.12:

> (c) Exclusive possession and responsibilities.
>
> (1) The lease shall provide that the authorized carrier lessee shall have exclusive possession, control, and use of the equipment for the duration of the lease. The lease shall further provide that the authorized carrier lessee shall assume complete responsibility for the operation of the equipment for the duration of the lease.
>
> . . .
>
> (d) Compensation to be specified. The amount to be paid by the authorized carrier for equipment and driver's services shall be clearly stated on the face of the lease or in an addendum which is attached to the lease. . . . The amount to be paid may be expressed as a percentage of gross revenue, a flat rate per mile, a variable rate depending on the direction traveled or the type of commodity transported, or by any other method of compensation mutually agreed upon by the parties to the lease. The compensation stated on the lease or in the attached addendum may apply to equipment and driver's services either separately or as a combined amount.
>
> (e) Items specified in lease. . . . The lease shall clearly specify the responsibility of each party with respect to the cost of fuel, fuel taxes, empty mileage, permits of all

> types, tolls, ferries, detention and accessorial services, base plates and licenses, and any unused portions of such items. . . .
>
> (i) Products, equipment, or services from authorized carrier. The lease shall specify that the lessor is not required to purchase or rent any products, equipment, or services from the authorized carrier as a condition of entering into the lease arrangement. . . .
>
> (j) Insurance.
>
> (1) The lease shall clearly specify the legal obligation of the authorized carrier to maintain insurance coverage . . . The lease shall further specify who is responsible for providing any other insurance coverage for the operation of the leased equipment . . . If the authorized carrier will make a charge back to the lessor for any of this insurance, the lease shall specify the amount which will be charged-back to the lessor.
>
> . . .
>
> (3) The lease shall clearly specify the conditions under which deductions for cargo or property damage may be made from the lessor's settlements.

49 C.F.R. §§ 376.12(c)(1), (d)-(e), (i)-(j)(1), (j)(3).

Plaintiffs' lease agreements with 28Freight, consistent with the TIL regulations, authorized 28Freight to make the contested deductions. Section 4.04 of the lease agreement gave Plaintiffs the option of using CMS as its settlement agent to receive on behalf of Plaintiffs any payments due from 28Freight to Plaintiffs under the lease agreement. [Aguilar Lease § 4.04]. Plaintiffs accepted this option and executed corollary agreements with CMS that specified the terms and authorized the deductions of the costs of their services from Plaintiffs' compensation. [ECF Nos. 14-3, 14-4, 14-5]. With respect to operational expenses, the lease agreement provides that "[Plaintiffs] shall bear all costs and expenses incidental to the maintenance, repair and operation of the Leased Vehicle[.]" [Aguilar Lease § 2.05]. Plaintiffs agreed to obtain insurance coverage on the leased vehicle, [id. § 3.01], and to indemnify Freight28 for "[t]he first $1,000.00 on a per incident basis

of any loss of or damage to cargo tendered for shipment or handling while such cargo is in the possession of [Plaintiffs] or [Plaintiffs'] employees or agents," [id. at § 3.03(a)].

While compliant with the TIL regulations, Plaintiffs' lease agreements arguably conflict with section 148 of the MWA which "requires prompt and full payment of wages due" and prohibits "special contracts" which purport to exempt an employer from the requirements of the MWA. Camara v. Att'y Gen., 941 N.E.2d 1118, 1121 (Mass. 2011) (citing Mass. Gen. Laws ch. 149, § 148). The Massachusetts Supreme Judicial Court has interpreted the "special contract" language in section 148 as "generally prohibiting an employer from deducting, or withholding payment of, any earned wages" even where the employee has assented to the deduction.[10] Camara, 941 N.E.2d at 1121 (emphasis in original).

Judge Stearns addressed this conflict between the TIL regulations and the MWA in Remington v. J.B. Hunt Transp., Inc., No. 15-13019-RGS, 2016 U.S. Dist. LEXIS 126487 (D. Mass. Sept. 16, 2016). There, owner-operator truck drivers sued a carrier for improperly classifying them as independent contractors and improperly deducting expenses, including the costs of equipment repairs, cargo loss and damage, vehicle insurance, and administrative fees, from the driver's pay. Id. at *2. The carrier argued that the truck drivers' claims for improper deductions were preempted by the TIL regulations. Id. at *7. The court agreed insofar as the deductions constituted permitted cost-sharing under a compliant lease. Id. The court held that where the TIL regulations explicitly permit a particular arrangement, state laws cannot prohibit the parties from negotiating that arrangement, but where the TIL regulations are silent, state laws can prohibit parties from freely negotiating that term or arrangement. Id. at *13-14; see also Salter v. Quality Carriers, No. CV 20-479-JFW, 2021 U.S. Dist. LEXIS 213111, at *35 (C.D. Cal. Oct.

---

[10] The only exception to this general rule is where an employer can demonstrate, in relation to that employee, the existence of a valid attachment, assignment, or setoff as described in Mass. Gen. Laws ch. 149, § 150.

13

27, 2021) (holding that plaintiffs' claims for unreimbursed business expenses and allegedly illegal deductions under the California Labor Code were preempted where the TIL regulations expressly provided the parties the freedom to contract to allocate certain operational costs to contractors and to deduct those costs from the contractors' compensation); Valadez v. CSX Intermodal Terminals, Inc., No. 15-cv-05433-EDL, 2017 U.S. Dist. LEXIS 66923, at *23 (N.D. Cal. Apr. 10, 2017) (holding that plaintiffs' claims are preempted to the extent the California Labor Code prohibits activities that the TIL regulations permit); but see Goyal v. CSX Intermodal Terminals, Inc., No. 17-cv-06081-EMC, 2018 U.S. Dist. LEXIS 164643, at *14 (N.D. Cal. Sept. 25, 2018) (finding Remington unpersuasive and holding that TIL regulations do not bar states from substantively prescribing the allocation of expenses to drivers; "they only require that whatever it is or however it is determined, it must be specified in the lease").

This Court finds the reasoning of Remington persuasive. Because the disputed deductions constitute permitted cost-sharing under a compliant lease, the TIL regulations preempt Plaintiffs' claims that these deductions were improper under the MWA and the Court dismisses Count II to the extent it asserts a claim for these deductions.

### D. Massachusetts Fair Wage Law

In Count III of the Complaint, Plaintiffs assert that Defendants failed to ensure Plaintiffs received at least the Massachusetts minimum wage in violation of the Massachusetts Fair Wage Law, Mass. Gen. Laws ch. 151, § 1A. [Compl. at 27]. In determining their weekly wage rate, Plaintiffs deduct from their pay their mileage at the IRS standard mileage rate. [Id. ¶ 55]. As discussed above, *supra* section III.C, Plaintiffs' claims that Defendants improperly deducted mileage from their pay are preempted by the TIL regulations. Without the deduction for mileage, Plaintiffs' pay for the periods noted in the Complaint are greater than the Massachusetts minimum

wage. Thus, Plaintiffs have failed to state a claim for violation of the Massachusetts Fair Wage Law and Count III shall be dismissed.

IV. **CONCLUSION**

For the foregoing reasons, the partial motion to dismiss [ECF No. 14] is hereby **ALLOWED IN PART** and **DENIED IN PART**. Count II of the Complaint is dismissed to the extent it asserts a claim for unlawful deductions and Count III of the Complaint is dismissed.

**SO ORDERED.**

Dated: March 31, 2025

                                                                 */s/ Margaret R. Guzman*
                                                                  Margaret R. Guzman
                                                                  United States District Judge