## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUESTTS

CLAUDIO SOSA, LUIS AGUILAR,
and CRISTIAN LAMARQUE,
individually and on behalf of all
others similarly situated,

         Plaintiffs,

v.

28FREIGHT LLC d/b/a
TRUCKCOURIER, and
RICHARD MARKS, individually,

         Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Civil Action No. 4:24-cv-40064-MRG

## PLAINTIFFS' MOTION FOR RECONSIDERATION OR, IN THE ALTERNATIVE, TO CERTIFY ISSUE FOR INTERLOCUTORY APPEAL PURSUANT TO 29 U.S.C. 1292(b) <u>AND MEMORANDUM IN SUPPORT THEREOF</u>

**TABLE OF CONTENTS**

I.    INTRODUCTION .................................................................................................... 1

II.   RECONSIDERATION ........................................................................................... 2

    A.  Legal standard for reconsideration ................................................................. 2

    B.  The March 31 Order is based on an error of law................................................ 3

        1.   Conflict preemption is the appropriate analytical framework here. ........... 3

        2.   Defendants have not overcome the presumption against preemption. ....... 5

    C.  The March 31 Order relies on inappropriate factual assumptions. ................. 12

        1.   CMS Deductions .................................................................................... 13

        2.   Fuel and tolls ......................................................................................... 15

        3.   Cargo claims ......................................................................................... 15

        4.   Unexplained deductions ........................................................................ 16

III.  CERTIFICATION FOR INTERLOCUTORY APPEAL ......................................... 16

    A.  Legal standard for interlocutory appeal ......................................................... 16

    B.  Certification for interlocutory appeal is warranted. ........................................ 17

        1.   Federal preemption of Wage Act deductions and expense reimbursement claims is a controlling question of law. ....................................................................... 17

        2.   TIL preemption of Wage Act deductions and expense reimbursement claims is a pivotal question of law not settled by controlling authority. ................................. 18

        3.   Immediate appeal would materially advance the case and promote judicial economy. ..................................................................................................... 18

IV.  CONCLUSION .................................................................................................... 18

## I.    INTRODUCTION

The Massachusetts Legislature, engaging in "exactly the sort of traditional exercises of State police power where preemption is presumptively disfavored," *Chambers v. RDI Logistics, Inc.*, 476 Mass. 95, 106, 65 N.E.3d 1, 11–12 (2016), enacted the Independent Contractor Statute ("IC Statute") "to protect workers by classifying them as employees, and thereby grant them the benefits and rights of employment, where the circumstances indicate that they are, in fact, employees." *Id.* at 7, *quoting Depianti v. Jan–Pro Franchising Int'l, Inc.*, 465 Mass. 607, 620, 990 N.E.2d 1054 (2013). The rights of employees in Massachusetts include the timely payment of wages and prohibitions on deductions from pay, as embodied by the Massachusetts Wage Act ("Wage Act") and the body of case law interpreting that statute. *See, e.g.*, *Parker v. EnerNOC, Inc.*, 484 Mass. 128, 136, 139 N.E.3d 328, 335 (2020); *Sullivan v. Sleepy's LLC*, 482 Mass. 227, 233 (2019); *Dixon v. Malden*, 464 Mass. 446 (2013); *Awuah v. Coverall N. Am., Inc.*, 460 Mass. 484, 497, 952 N.E.2d 890, 900 (2011); *Camara v. Att'y Gen.*, 941 N.E.2d 1118, 1121 (Mass. 2011); *Elec. Data Sys. Corp. v. Att'y Gen.*, 454 Mass. 63, 70, 907 N.E.2d 635, 641 (2009) ("The Wage Act is intended to protect employees and their right to wages.").

This Court's Memorandum and Order dated March 31, 2025 ("March 31 Order"), ECF No. 24, concluded that the federal Truth-in-Leasing regulations preempt the Wage Act, to the extent that the Act prohibits deductions from employee compensation. The March 31 Order's holding is broad and applies even where a motor carrier has been found to violate the IC Statute by misclassifying its drivers as independent contractors, thereby implicating the very public policy concerns the IC Statute was intended to remedy. In reaching its conclusion, however, the Court did not acknowledge the presumption against preemption, consider whether it applied in this case, or identify the preemption doctrine undergirding its decision (express, field, or conflict). If the Court's holding was based on conflict preemption, as seems most likely, then the

1

presumption against preemption applies, as Judge Young recently noted in *Triumph Foods, LLC v. Campbell*, 742 F. Supp. 3d 63, 72 (D. Mass. Jul. 22, 2024), *citing Medicaid & Medicare Advantage Prod. Ass'n of P.R., Inc. v. Emanuelli Hernandez*, 58 F.4th 5, 11 (1st Cir. 2023). Plaintiffs respectfully request that this Court reconsider and reverse its March 31 Order with respect to TIL preemption, by applying the presumption against preemption and the analytic framework for conflict preemption established by the First Circuit. *See Good v. Altria Grp., Inc.*, 501 F.3d 29, 47 (1st Cir. 2007), *aff'd and remanded*, 555 U.S. 70, 129 S. Ct. 538, 172 L. Ed. 2d 398 (2008). In the alternative, Plaintiffs seek permission to appeal the Court's order on an interlocutory basis to the First Circuit Court of Appeals.

## II.      RECONSIDERATION

### A.    Legal standard for reconsideration

This Court has "'substantial discretion and broad authority to grant or deny' a motion for reconsideration." *Provanzano v. Parker View Farm, Inc.*, 827 F. Supp. 2d 53, 57 (D. Mass. 2011) (allowing motion to reconsider), *quoting Ruiz Rivera v. Pfizer Pharm., LLC*, 521 F.3d 76, 81 (1st Cir.2008). "A motion for reconsideration will be allowed if the movant shows a manifest error of law, newly discovered evidence or that the Court has made an error 'not of reasoning but apprehension.'" *Id; see also Vermont Pure Holdings, Ltd. v. Nestle Waters N. Am., Inc.*, No. CIV.A.03-11465 DPW, 2006 WL 839486, at *3 (D. Mass. Mar. 28, 2006) (allowing motion to reconsider earlier preemption decision, based on intervening change in law). When the basis for reconsideration is an error of apprehension, reconsideration is appropriate if the Court made "factual assumptions that were inappropriate at the stage of a motion to dismiss." *Mitchell v. U.S. Airways, Inc.*, No. 08CV10629-NG, 2010 WL 3522440, at *1 (D. Mass. Sept. 8, 2010) (allowing Plaintiffs' Motion for Reconsideration of the Court's Ruling on Preemption).

Any one of these reasons is sufficient support for allowing a motion for reconsideration *United States ex rel. Nargol v. DePuy Orthopaedics, Inc.*, 69 F.4th 1, 11 (1st Cir. 2023) ("district court need not identify newly discovered evidence if it has identified an error of law").

**B.  The March 31 Order is based on an error of law.**

In its March 31 Order, this Court stated that, "[w]hile compliant with the TIL regulations, Plaintiffs' lease agreements <u>arguably conflict</u> with section 148 of the [Massachusetts Wage Act] which 'requires prompt and full payment of wages due' and prohibits 'special contracts' which purport to exempt an employer from the requirements of the MWA." March 31 Order at 13 (emphasis added). This Court then looked to *Remington v. J.B. Hunt Transp., Inc.*, No. CV 15-10010-RGS, 2016 WL 4975194, at *5 (D. Mass. Sept. 16, 2016) (Stearns, J.), as persuasive authority pertinent to the "conflict between the TIL regulations and the MWA." March 31 Order at 13. Beyond these two references to "conflict," the Court did not otherwise identify the basis for its preemption decision, and seemingly presumed, without so finding, that any preemption is implied, and not express. *Cf. Remington*, 2016 WL 4975194, at *2 (discussing only conflict and field preemption, not express preemption). The Court's reliance on *Remington*, and its failure to engage in a robust preemption analysis, resulted in an error of law.

**1.  Conflict preemption is the appropriate analytical framework here.**

"To simplify a complex area of law, preemption arguments are generally divided into three categories." *Weaver's Cove Energy, LLC v. Rhode Island Coastal Res. Mgmt. Council*, 589 F.3d 458, 472 (1st Cir. 2009). "The first, express preemption, results from language in a statute revealing an explicit congressional intent to preempt state law." *Id.* "Where a statute expressly preempts state law, the presumption against preemption does not apply." *Commonwealth of Puerto Rico v. Franklin California Tax-free Tr.*, 579 U.S. 115, 125, 136 S. Ct. 1938, 1946, 195 L. Ed. 2d 298 (2016). "The second, field preemption, is that Congress may implicitly preempt a

state law by creating a pervasive scheme of regulation." *Weaver's Cove*, 589 F.3d at 472. "The third category is conflict preemption," *id.,* to which the presumption against preemption <u>does</u> apply. *Triumph Foods*, 742 F. Supp. 3d at 72."In determining whether federal preemption applies, courts must <u>start</u> with the assumption that the historic police powers of the States were not to be superseded by the Federal Act." *Musikar-Rosner v. Johnson & Johnson Consumer Inc.*, No. 23-CV-11746-ADB, 2024 WL 3596897, at *2 (D. Mass. July 31, 2024) (emphasis added), *quoting Bischoff v. Albertsons Cos., Inc.*, 678 F. Supp. 3d 518, 522 (S.D.N.Y. 2023).

The TIL regulations do not expressly preempt Massachusetts wage laws. *Goyal v. CSX Intermodal Terminals, Inc.*, No. 17-CV-06081-EMC, 2018 WL 4649829, at *3 (N.D. Cal. Sept. 25, 2018) ("First, no text of the [TIL] regulation expressly preempts state laws; indeed, nothing in the regulations (or governing federal statute) mentions preemption."). Nor is there any "indication that Congress intended [these] federal regulations to preempt the entire field." *Id.; see also Remington*, 2016 WL 4975194, at *6 ("the court cannot conclude that the Truth-in-Leasing regulations occupy the entire field of owner-operator compensation"). That leaves conflict preemption.

Where conflict preemption is the analytical framework, as it must be here (because express preemption and field preemption patently do not apply), "[a] presumption against preemption applies generally to such an analysis." *Triumph Foods*, 742 F. Supp. 3d at 72, *citing Hernandez*, 58 F.4th at 11. "[A] high threshold must be met if a state law is to be preempted for conflicting with the purposes of a federal Act." *Preston v. World Travel Holdings, Inc.*, No. 1:23-CV-12389-JEK, 2024 WL 519548, at *3 (D. Mass. Feb. 9, 2024), *quoting Chamber of Commerce v. Whiting*, 563 U.S. 582, 607 (2011) (plurality op.). This is especially true as applied to state laws regulating employment relationships, including wage laws, "since the establishment

of labor standards falls within the traditional police power of the State," and "pre-emption should not be lightly inferred in this area." *Beckwith v. United Parcel Serv., Inc.*, 889 F.2d 344, 348 (1st Cir. 1989), *quoting Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 21, 107 S.Ct. 2211, 2222, 96 L.Ed.2d 1 (1987). The burden of establishing preemption is on the moving party. *Preston,* 2024 WL 519548, at \*3, *citing Capron v. Office of the Attorney General of Massachusetts*, 944 F.3d 9, 21, 26 (1st Cir. 2019).

**2. Defendants have not overcome the presumption against preemption.**

Conflict preemption will only arise if "it is impossible for a private party to comply with both state and federal requirements" or if the state law at issue "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Triumph Foods*, 742 F. Supp. 3d at 72*, quoting English*, 496 U.S. at 79, 110 S. Ct. 2270. Neither of those rationales can overcome the presumption against preemption with respect to the IC Statute and the Wage Act.

First, a motor carrier can readily comply with both Massachusetts law and the TIL regulations, so this cannot form the basis for conflict preemption. *See, e.g.,* Pls.' Opp., ECF No. 18, at 20. The Wage Act only imposes obligations on employers, and an employment relationship will only be found where an individual is "performing . . . service" for a putative employer, and the putative employer either exercises sufficient "control and direction in connection with the performance of the service" or the individual is not "customarily engaged in an independently established trade, occupation, profession or business of the same nature." G.L. c. 149, § 148B.

Not all relationships between motor carriers and independent truckers will run afoul of the IC Statute, contrary to *Remington*. 2016 WL 4975194 at n.10. In *Remington*, Judge Stearns seemingly assumed, without so holding, that application of the IC Statute to the relationship

between the drivers and J.B. Hunt would necessarily result in the finding of an employment relationship, notwithstanding the fact that the First Circuit had recently severed the second ("usual course of business") prong of the IC Statute as preempted by the Federal Aviation Administration Authorization Act ("FAAAA"). *See Schwann v. FedEx Ground Package Sys., Inc.*, 813 F.3d 429, 437-440 (1st Cir. 2016). In his subsequent ruling on TIL preemption, Judge Stearns noted that the First Circuit had reversed his prior decision in *Remington*, "that FAAAA preempted prongs one and three of section 148B, not on substantive grounds, but 'based on FedEx's decision not to advance any argument that Prongs 1 and 3 were preempted by the FAAAA.'" *Remington*, 2016 WL 4975194 at *2, *quoting Remington v. J.B. Hunt Transp.*, No. 15-1252 (1st Cir. Feb. 22, 2016). Although Judge Stearns declined to "decide at this time whether the FAAAA preempts the application of the remaining first and third prongs of the Massachusetts Independent Contractor Statute to an interstate carrier such as J.B. Hunt," he strongly suggested that he would follow two Massachusetts Superior Court decisions to that conclusion. *Remington*, 2016 WL 4975194 at n.10.

Judge Stearns, however, did not yet have the benefit of the SJC's decision in *Chambers v. RDI Logistics, Inc.*, 476 Mass. 95, 102, 65 N.E.3d 1, 9 (2016), in which the SJC overruled one of those Superior Court decisions, holding that, although "[p]rong two provides an impossible standard for motor carriers wishing to use independent contractors," the prong is severable from the rest of the statute, and that "[u]nlike prong two, <u>there is nothing intrinsic to these provisions that prevents motor carriers from using independent contractors</u>." (emphasis added). Judge Stearns in *Remington* bypassed this critical step in his analysis, by presuming that an employment relationship would be found between J.B. Hunt and the plaintiffs, and for this

reason he held that the deductions implications of the Wage Act were preempted by the TIL regulations. Post-*Chambers*, this is a manifest error of law.

Whereas the Wage Act regulates employment in Massachusetts, and the IC Statute defines an employment relationship in Massachusetts, the TIL regulations are implicated only where a motor carrier "perform[s] authorized transportation in equipment it does not own." 49 C.F.R. § 376.11. A "lease" is defined in the regulations as a "contract or arrangement in which the owner grants the use of equipment, <u>with or without driver</u>, for a specified period to an authorized carrier for use in the regulated transportation of property, in exchange for compensation." 49 C.F.R. § 376.2. A "lessor" is "the party granting the use of equipment, <u>with or without driver</u>, to another." *Id.* The TIL regulations, therefore, govern the relationship between a motor carrier <u>and the equipment owner</u>, and are completely agnostic about the relationship between the motor carrier and the driver of that equipment, or the relationship between the equipment owner and the driver. Judge Stearns recognized this agnosticism in *Remington*, 2016 WL 4975194, at *5, but failed to recognize that the TIL regulations are <u>not</u> limited in their scope or purpose to those relationships between motor carriers and equipment owners that would constitute an employment relationship under Massachusetts law. Nothing prevents a motor carrier from complying with the TIL regulations with respect to its lease agreements, while preserving a truly independent contractor relationship with equipment owners or even individual owner-operators who themselves are drivers. *Cf. Chambers*, 476 Mass. at 102, 65 N.E.3d at 9.

Second, the Wage Act, which imposes obligations on employers generally, and specifically prohibits employers from passing along the costs of doing business to employees, does not "stand[] as an obstacle to the accomplishment and execution of the full purposes and

objectives of Congress." *Triumph Foods*, 742 F. Supp. 3d at 72, quoting *English*, 496 U.S. at 79, 110 S. Ct. 2270. "What is a sufficient obstacle is a matter of judgment, to be informed by examining the federal statute as a whole and identifying its purpose and intended effects." *Triumph Foods*, 742 F. Supp. 3d at 72, *quoting Maine Forest Prod. Council v. Cormier*, 51 F. 4th 1, 6 (1st Cir. 2022).

Neither Congress nor the Interstate Commerce Commission ("ICC"), which promulgated the TIL regulations, ever intended to prevent states from regulating an employment relationship, to the extent one exists, between a motor carrier and a driver performing services for that motor carrier, or limit the extent to which a state may prohibit employees from being required to bear an employer's expenses. This is clear from numerous statements issued by the ICC over the years, including this one: "the Commission did not intend that its leasing regulations would supersede otherwise applicable principles of State tort, contract, and agency law and create carrier liability where none would otherwise exist. <u>Our regulations should have no bearing on this subject</u>. Application of State law will produce appropriate results." *Remington*, 2016 WL 4975194, at *5 (emphasis added), *quoting Lease & Interchange of Vehicles (Identification Devices)* (49 C.F.R. Part 1057), 3 I.C.C.2d 92, 93 (I.C.C. Oct. 10, 1986).

Judge Young's conflict preemption analysis in *Triumph Foods*, which was issued after Plaintiffs filed their opposition in the present matter, is instructive. In *Triumph Foods*, Judge Young compared the objectives of the Federal Meat Inspection Act, which is to "ensure safe pork enters the market," with the objectives of the Massachusetts Prevention of Farm Animal Cruelty Act, which "seeks to prevent the sale of pork raised in inhumane conditions." *Triumph Foods*, 742 F. Supp. 3d at 72, n.4. In rejecting the preemption arguments of the pork producers, Judge Young noted that the federal act "does not require that all safe pork available to the market

be able to enter the market." *Id.* at n.4. Analogously, the TIL regulations do not require that all motor carriers and all equipment owners be "free" from state laws regulating employment relationships and the business expenses that employees are allowed to bear.

Since Judge Stearns issued his decision in *Remington*, and the SJC issued its decision in *Chambers*, at least eleven federal courts have arrived at the opposite conclusion from *Remington*, holding that the TIL regulations do not preempt similar state wage laws. *See Cervantes v. CRST Int'l, Inc.*, No. 20-CV-75-CJW-KEM, 2024 WL 2732275, at *40 (N.D. Iowa May 28, 2024) ("it is not impossible . . . for defendant to comply with the regulations and with Iowa's unlawful deductions law), *reconsideration denied*, No. 20-CV-75-CJW-KEM, 2024 WL 4016764 (N.D. Iowa Aug. 8, 2024); *Kolev v. Natl. Freight, Inc.*, 2023 WL 3033572, at *6 (D.N.J. Apr. 20, 2023) ("While the TIL regulations certainly contemplate the possibility that a carrier . . . might contractually allocate certain business-related expenses to owner-operators, they do not indicate that certain agreements and deductions are always valid."); *Portillo v. Nat'l Freight, Inc.*, 606 F. Supp. 3d 72, 101 (D.N.J. 2022) (New Jersey wage payment law does not "prevent compliance with TIL regulations"); *Mejias v. Goya Foods, Inc.*, 2022 WL 500412, *4 (D.N.J. Feb. 18, 2022) (to find that TIL regulations control plaintiffs' state wage law claims would be "inconsistent with federal policy"); *Henry v. Cent. Freight Lines, Inc.*, No. 216CV00280JAMEFB, 2019 WL 2465330, at *6 (E.D. Cal. June 13, 2019) ("Deductions and allocations of expenses can both comply with the California Labor Code and be specified in the agreement as the TIL regulations require."); *B&O Logistics, Inc. v. Cho*, 2019 WL 2879876, at *5 (C.D. Cal. April 15, 2019) ("allowing state employment law to dictate and/or restrict the substance of certain terms disclosed in a lease would not 'stand as an obstacle to the accomplishment and execution of the full purposes or objectives of' these regulations") (internal citation omitted); *Huddleston v. John*

*Christner Trucking, LLC*, No. 17-CV-549-GKF-FHM, 2018 WL 6259220, at \*12 (N.D. Okla. Nov. 30, 2018) ("the language of the TIL Regulations does not support" a reading of the TIL "regulations as affirmatively authorizing carriers and drivers to freely negotiate between themselves the allocation of deductions and business expenses in a manner that cannot be regulated by state law"); *Alvarez v. XPO Logistics Cartage LLC*, 2018 WL 6271965, at \*7 (C.D. Cal. Nov. 15, 2018) ("motor carriers and drivers are not prohibited from obeying state laws governing deductions and allocations"), *order partially vacated, on other grounds, on reconsideration sub nom. Omar Alvarez v. XPO Logistics Cartage, LLC*, 2021 WL 4057249 (C.D. Cal. June 24, 2021); *Goyal v. CSX Intermodal Terminals, Inc.*, 2018 WL 4649829, at \*4 (N.D. Cal. Sept. 25, 2018) ("That the TIL Regulations are not inconsistent with state labor laws is demonstrated by the fact that the issuing agency specifically wrote the TIL Regulations to accommodate state requirements."); *Yata v. BDJ Trucking Co.*, 2018 WL 3303290, at \*5-6 (N.D. Ill. July 5, 2018) ("it is neither impossible for [a motor carrier] to comply with both the Truth-in-Leasing regulations and [Illinois wage laws] nor does the IWPCA stand as an obstacle to . . . compliance with the federal law"); *Johnson v. Diakon Logistics*, 2018 WL 1519157, at \*6 (N.D. Ill. Mar. 28, 2018) ("It is clear from the plain language of the Regulations that they simply require that, if certain arrangements are made between an owner-operator and a carrier, those arrangements should be included in the written lease."); *see also Renteria v. K&R Transp., Inc.*, 1999 WL 33268638, at \*3 (C.D. Cal. Feb. 23, 1999) ("Nothing in the federal regulations prevents a state from passing legislation that mandates a particular contract term with regard to the costs of insurance.").

Neither of the two out-of-district cases cited by this Court gave any consideration to the presumption against preemption, or the broad deference granted to the historic police powers of

the state. *See Salter v. Quality Carriers, Inc.*, No. CV 20-479-JFW(JPRX), 2021 WL 5049054, at *11 (C.D. Cal. Oct. 27, 2021); *Valadez v. CSX Intermodal Terminals, Inc.*, No. 15-CV-05433-EDL, 2017 WL 1416883, at *11 (N.D. Cal. Apr. 10, 2017).[1]

*Valadez*, on which *Salter* relied, held that the California Labor Code was preempted under a type of "impossibility preemption," *i.e.,* that certain of its provisions "directly conflict with a federal law because it is impossible to comply with both." *Id.* at *7. This analysis in *Valadez* has been considered and rejected at least four times since then by federal district courts in California. *See, e.g.*, *Henry*, 2019 WL 2465330, at *6 ("It is not impossible to comply with both California labor law and the TIL regulations."); *B&O Logistics, ,* 2019 WL 2879876, at *5 ("compliance with both state employment law [California's ABC test] and the TIL's disclosure requirements is not a 'physical impossibility.'"); *Alvarez*, 2018 WL 6271965, at *7 ("The Court, however, respectfully disagrees with the *Valadez* court on this point, and instead finds that Defendants' reading of the TIL regulations is overbroad."); and *Goyal*, 2018 WL 4649829, at *3 ("*Valadez* construes the TIL Regulations to affirmatively permit the parties to allocate the challenged expenses to the drivers. To the extent *Valadez* so holds, this Court respectfully disagrees.").

In any case, *Valadez* is inapposite here, because it is <u>not</u> impossible for a motor carrier to comply with both the TIL regulations and the Wage Act, as discussed *supra*. The IC Statute and the Wage Act do <u>not</u> prohibit motor carriers from cost-sharing arrangements with owner-operators who are truly independent. Moreover, *Valadez* soundly rejected obstacle preemption as the basis for its holding: "[b]ecause the primary purpose of the TIL Regulations is to protect drivers by ensuring full disclosure in leases, and not to allow drivers and motor carriers complete

---

[1]      In addition, both were decided at summary judgment, not on motions to dismiss.

negotiating freedom, the California Labor Code <u>does not interfere with the objectives of the TIL Regulations and is not an obstacle to the accomplishment of their purpose.</u>" *Id.* at \*8 (emphasis added). To the extent, therefore, that this Court relied on obstacle preemption as the basis for its decision, *Valadez* does not provide support.

Because this Court did not begin with the presumption against preemption, nor did any of the cases on which it relied, the March 31 Order should be reconsidered and reversed.

## C. The March 31 Order relies on inappropriate factual assumptions.

Independent of the Court's manifest error of law, it was an error for the Court to make the factual determination that the Plaintiffs' lease agreements were compliant with the TIL regulations without the benefit of discovery and briefing by the parties as to this particular issue. Indeed, this runs contrary to the appropriate standard on a motion to dismiss, which requires the court to draw all reasonable inferences in favor of the non-moving party. *See Pike v. Budd*, No. 23-1593, 2025 WL 942827, at \*4 (1st Cir. Mar. 28, 2025) ("To survive a motion to dismiss, the complaint need only state sufficient factual matter to satisfy facial plausibility."). Notably, Defendants did <u>not</u> ask this Court to determine whether their lease agreements were compliant with the TIL regulations. To the contrary, Defendants declined to ask this Court to dismiss Count IV of the Complaint, where Plaintiffs identified "undisclosed deductions" as part of the alleged TIL claims (in addition to "failing to properly specify driver compensation in its lease agreements" and "failing to provide drivers with required information").

This Court's holding in its March 31 Order, that Plaintiff's Wage Act deduction and expense reimbursement claims are preempted by the TIL regulations because "the disputed deductions constitute permitted cost-sharing under a compliant lease," Order at 14, was based on the following inappropriate factual assumptions about the actual "cost-sharing" at issue and the adequacy of the disclosures in the actual lease agreements.

### 1. CMS Deductions

First, this Court determined that the lease was compliant with respect to the CMS deductions because "Section 4.04 of the lease agreement gave Plaintiffs the option of using CMS as its settlement agent to receive on behalf of Plaintiffs any payments due from 28Freight to Plaintiffs under the lease agreement." March 31 Order at 24. Simply stating that something is optional, however, does not make it so. *See, e.g.*, *Roberts v. TransAm Trucking, Inc.*, No. 21-2073-JWB, 2023 WL 6376756, at *16 (D. Kan. Sept. 29, 2023) (finding TIL violation based on mandatory insurance purchases; "By requiring Plaintiffs to purchase physical insurance from ONE and have the funds deducted from their settlements in order to lease with TransAm, Plaintiffs do not have an option of trying to obtain that insurance from a third party," even where lease purported to make this insurance purchase optional).

Notwithstanding the clever language at the beginning of Section 4.04 of Defendants' lease, the requirement to use CMS is built into the lease on a take-it-or-leave it basis, without any "option" providing the driver with the opportunity to reject the use of CMS. Even more importantly, the lease agreement itself does not provide any indication that there is a cost associated with using CMS for settlement purposes, let alone what that cost is or whether the cost will be automatically deducted from drivers' settlements. Without that information, a driver cannot be said to have provided informed consent to that provision. This is a straightforward violation of the TIL regulations. *See* 49 C.F.R. § 376.12(h), (i).

In reaching its conclusion about compliance, the Court referenced documents outside the complaint, namely "Systems Resource Subscription" agreements attached to an affidavit submitted by Defendant Richard Marks, purportedly signed by Plaintiffs, to determine that "Plaintiffs accepted this option [of using CMS for their settlements] and executed corollary agreements with CMS that specified the terms and authorized the deductions of the costs of their

services from Plaintiffs' compensation." Reliance on those documents was inappropriate on a motion to dismiss, particularly where Plaintiffs had not had the opportunity to obtain discovery. *See Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001) ("Ordinarily, a court may not consider any documents that are outside of the complaint, or not expressly incorporated therein, unless the motion is converted into one for summary judgment.").

This Court should not have assumed on a motion to dismiss that these agreements were authentic, or that they were disclosed to Plaintiffs in advance of their execution of the lease agreements. To the contrary, Plaintiff Lamarque signed the lease agreement on May 25, 2023, ECF No. 1-3 at 60, but did not (purportedly) sign the corollary agreement until more than a week later, on June 4, 2023, ECF No. 14-5 at 9. Plaintiff Sosa purportedly signed the corollary agreement on July 9, 2021, ECF No. 14-3 at 9, whereas his lease agreement was signed almost a year later, on March 4, 2022, ECF No. 1-3 at 35, strongly suggesting that a different lease agreement governed the parties' relationship before March 2022. Plaintiff Aguilar signed both agreements the same day, but there is no way to know without the benefit of discovery whether Plaintiff Aguilar had been made aware of the cost associated with CMS at the time he signed the lease agreement.

The myriad factual issues implicated by agreements with third parties, as demonstrated *supra*, is one of the many reasons why the TIL regulations dictate that any chargebacks or expenses to be incurred by drivers <u>must be specified in the lease itself</u>, because that is the document that legally binds the parties. The public policy purpose driving the TIL regulations was to prevent motor carriers from reaping the benefit of contractual ambiguity. *See Owner-Operator Indep. Drivers Ass'n, Inc. v. Rocor Int'l, Inc.*, No. CIV-98-846-L, 2000 WL 35512897, at *3 (W.D. Okla. July 19, 2000) ("the truth-in-leasing regulations provide that the required

14

disclosures shall be in the lease, not in 'other documents'"); *cf. Owner-Operator Indep. Drivers Ass'n, Inc. v. Bulkmatic Transp. Co.*, 503 F. Supp. 2d 961, 971 (N.D. Ill. 2007) ("such an interpretation would allow Bulkmatic to violate § 376.12(d) by drafting a Lease with ambiguous compensation provisions yet have the same ambiguous and confusing Lease interpreted in its favor"); *see also* 49 C.F.R. § 376.12(i) ("The lease shall specify the terms of any agreement in which the lessor is a party to an equipment purchase or rental contract which gives the authorized carrier the right to make deductions from the lessor's compensation for purchase or rental payments.").

### 2. Fuel and tolls

Second, the lease agreement's general statement that the Plaintiffs "shall bear all costs and expenses incidental to the maintenance, repair and operation of the Leased Vehicle" does not satisfy the TIL regulations' requirement that lease agreements "clearly specify the responsibility of each party with respect to the cost of fuel . . . [and] . . . tolls." 49 C.F.R. § 376.12(e). Further discovery may reveal that Defendants profited from Plaintiffs' procurement of fuel or payment of tolls, without adequate disclosure in the lease agreement. *See, e.g.*, *OOIDA v. C.R. England, Inc.,* 508 F. Supp. 2d 972, 978, 981 (D. Utah 2007); *see also OOIDA v. Swift Transp. Co. (AZ)*, 2007 WL 2808997, at *3 (D. Ariz. Sept. 27, 2007), *aff'd*, 632 F.3d 1111 (9th Cir. 2011).

### 3. Cargo claims

Third, the lease agreement's general statement that drivers must bear responsibility for the "first $1,000.00 on a per incident basis of any loss of or damage to cargo tendered for shipment or handling while such cargo is in the possession of" Plaintiffs does not satisfy the TIL regulations' requirements, that:

> The lease shall clearly specify the conditions under which deductions for cargo or property damage may be made from the lessor's settlements. The lease shall further specify that the authorized carrier must provide the lessor with a written

explanation and itemization of any deductions for cargo or property damage made from any compensation of money owed to the lessor. The written explanation and itemization must be delivered to the lessor before any deductions are made.

49 C.F.R. § 376.12. Further discovery may reveal that drivers, including Plaintiffs, had cargo deductions taken from their settlements without written explanation or itemization provided to them prior to deduction. Without that information, drivers cannot evaluate and/or challenge the basis for any improper deductions should they arise.

### 4. Unexplained deductions

Fourth, the Court seemingly dismisses, without addressing, Plaintiff Sosa's claim that Defendants deducted $300 from his pay in each of nine weeks he worked, a deduction that cannot be determined to be in compliance with the lease agreement or the TIL regulations, since the nature of that deduction remains a complete mystery without the benefit of discovery.

These inappropriate factual assumptions, to the extent that they formed the basis for the Court's TIL preemption decision, are sufficient grounds for reconsideration of the Court's March 31 Order, and reversal of the dismissal of Plaintiffs' Wage Act deductions claims.

## III. CERTIFICATION FOR INTERLOCUTORY APPEAL

In the alternative, Plaintiffs respectfully request that the Court certify its March 31 Order for interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

### A. Legal standard for interlocutory appeal

A district court may certify an order for interlocutory appeal pursuant to 28 U.S.C. § 1292(b) when the three elements of that statute are met. First, there must be a "controlling question of law" at issue. *Id*. Second, there must be a "substantial ground for difference of opinion." *Id.* Third, resolution of the disputed issue in the order must "materially advance the ultimate termination of the litigation." *Id.* All three elements are met in this case, warranting certification to the First Circuit Court of Appeals.

**B.    Certification for interlocutory appeal is warranted.**

      **1.    Federal preemption of Wage Act deductions and expense reimbursement claims is a controlling question of law.**

A "controlling question of law" is one where the "resolution of the issue on appeal could materially affect the outcome of the litigation in the district court." *Philip Morris Inc. v. Harshbarger*, 957 F. Supp. 327, 330 (D. Mass. 1997), *quoting Bank of New York v. Hoyt*, 108 F.R.D. 184, 188 (D.R.I. 1985). Even where some of the claims in a case will survive without appeal, if the case is "significantly alter[ed]" by a ruling, the issue is "controlling." *See Philip Morris*, 957 F. Supp. at 330; *see also Ray v. California Dep't of Social Servs.*, Case No CV 17-4239 PA (SKx), 2017 WL 10436062, at *3 (C.D. Cal. Nov. 30, 2017) (narrowed period of recovery or scope of relief available to plaintiffs is a controlling issue of law).

The dismissal of Plaintiffs' Wage Act deductions claims significantly reduces the potential recovery in this litigation and, even more importantly, their incentive to pursue a judicial finding that they were misclassified as employees under the IC Statute. Especially because the Wage Act advance public policy objectives, and relies upon private enforcement to do so, resolution of the preemption will materially affect the outcome not just of this case, but also the entire Commonwealth. *See Fraelick v. PerkettPR, Inc.*, 83 Mass. App. Ct. 698, 704, 989 N.E.2d 517, 522 (2013) (discussing Massachusetts "legislative policy to encourage private enforcement of the wage laws"); *Somers v. Converged Access, Inc.*, 454 Mass. 582, 593, 911 N.E.2d 739, 750 (2009) ("Misclassification not only hurts the individual employee; it also imposes significant financial burdens on the Federal government and the Commonwealth in lost tax and insurance revenues. Moreover, it gives an employer who misclassifies employees as independent contractors an unfair competitive advantage over employers who correctly classify their employees and bear the concomitant financial burden.").

## 2. TIL preemption of Wage Act deductions and expense reimbursement claims is a pivotal question of law not settled by controlling authority.

A "substantial ground for difference of opinion," 28 U.S.C 1292(b), will be found where there are "difficult or pivotal questions of law not settled by controlling authority." *Philip Morris*, 957 F. Supp. at 330, *quoting McGillicuddy v. Clements*, 746 F.2d 76, n.1 (1st Cir. 1984)). That is true here, where the First Circuit has not weighed in on the issue of TIL preemption of state wage laws. Nor has any other Court of Appeals, to the best of Plaintiffs' knowledge. Furthermore, preemption, generally, "is an issue naturally appropriate for interlocutory appeal." *See, e.g. Philip Morris*, 957 F. Supp. at 330; *Cipollone v. Liggett Group, Inc.*, 789 F.2d 181, 183 (3d Cir. 1986).

## 3. Immediate appeal would materially advance the case and promote judicial economy.

Lastly, an immediate appeal and decision on the TIL preemption issue would materially advance the case and promote judicial economy, the third element of 28 U.S.C. § 1292(b). *See Locke v North Carolina State University*, No. 5:22-CV-344-FL, 2024 WL 1588577 at *1 (E.D.N.C. Mar. 25, 2024) (granting plaintiff's motion to certify an interlocutory appeal after a partial motion to dismiss because it would "further the interests of judicial economy and sound decisionmaking in this complex area of law"). If Plaintiffs were to wait for final judgment in this case before appealing the TIL preemption decision, the requisite discovery would not be sought and developed, and the prospects for settlement could be impeded.

## IV. CONCLUSION

For all of these reasons, Plaintiffs request this Court's reconsideration and reversal of the March 31 Order with respect to TIL preemption of their Wage Act deductions claims. In the alternative, Plaintiffs request certification for interlocutory appeal, pursuant to 28 U.S.C. § 1292(b).

Respectfully submitted,

CLAUDIO SOSA, LUIS AGUILAR, and
CRISTIAN LAMARQUE, individually and on
behalf all others similarly situated,

By their attorneys,


 */s/ Rachel Smit*
Hillary Schwab, BBO# 666029
Rachel Smit, BBO# 688294
FAIR WORK, P.C.
192 South Street, Suite 450
Boston, MA 02111
Tel:  (617) 607-3260
Fax:  (617) 488-2261
hillary@fairworklaw.com
rachel@fairworklaw.com


Dated: April 14, 2025


## CERTIFICATE OF CONFERENCE

I hereby certify pursuant to Local Rule 7.1 that Plaintiffs' counsel conferred with counsel for Defendants via telephone on April 14, 2025, regarding this motion, and they did not assent to the relief requested herein.


*/s/ Rachel Smit*
Rachel Smit