# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| CLAUDIO SOSA, LUIS AGUILAR, and CRISTIAN LAMARQUE, <br> Plaintiffs, <br><br> v. <br><br> 28FREIGHT LLC d/b/a TRUCK COURIER, and RICHARD MARKS, <br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) |

Civil Action No. 4:24-cv-40064-MRG

**ORDER (1) GRANTING PLAINTIFFS' MOTION FOR RECONSIDERATION [ECF No. 28]; (2) VACATING IN PART MOTION TO DISMISS ORDER [ECF No. 24]; AND (3) DENYING DEFENDANTS' MOTION TO DISMISS [ECF No. 14]**

**GUZMAN, J.**

## I.    INTRODUCTION

Plaintiffs Claudio Sosa, Luis Aguilar, and Cristian Lamarque ("Plaintiffs"), former and current truck drivers for 28Freight LLC ("28Freight"), bring this proposed class action against Defendants 28Freight and Richard Marks (together, "Defendants") alleging violations of Massachusetts wage laws and federal Truth-in-Leasing ("TIL") regulations, 49 C.F.R. §§ 376.1 *et seq*.

Plaintiffs allege that Defendants made improper deductions from their wages. [Compl. ¶¶ 52–53, ECF No. 1-3]. In Count II, Plaintiffs assert a claim under the Massachusetts Wage Act ("MWA") based on those deductions. [Id. at 21]. In Count III, Plaintiffs allege that, after accounting for the deductions, Defendants failed to pay minimum wage in violation of the Massachusetts Minimum Wage Law ("MMWL"). [Id.]

Defendants argue that, to the extent Counts II and III challenge such deductions, those claims are preempted by the TIL regulations, which permit cost-sharing under a compliant lease. [ECF No. 14-1 at 9–10].

Plaintiffs now move for reconsideration, [ECF No. 28], of the Court's prior order [ECF No. 24], which granted in part and denied in part Defendants' motion to dismiss [ECF No. 14]. Specifically, Plaintiffs challenge the dismissal of Counts II and III as preempted and argue that the Court relied on improper factual assumptions. [ECF No. 28 at 3–16].

The Court appreciates the parties' thoughtful arguments and revisits its prior ruling in the interest of reaching the correct result. As one court has observed, "[a] smart man knows when he is right; a wise man knows when he is wrong." Thomson Reuters Enter. Ctr. GMBH v. Ross Intel. Inc., 765 F. Supp. 3d 382, 390 (D. Del. 2025). Here, as explained below, the Court concludes that the TIL regulations do not preempt Plaintiffs' MWA (Count II) and MMWL (Count III) claims.

## II.    LEGAL STANDARDS

### A. Reconsideration Standard

Because the Court's prior order did not constitute a final judgment, Rules 59(e) and 60 do not apply. Mazza v. City of Bos., 780 F. Supp. 3d 325, 329 (D. Mass. 2025) (citing Barrows v. Resol. Tr. Corp., 1994 WL 643309, at *3 (1st Cir. 1994)). Instead, the Court exercises its inherent authority to reconsider interlocutory orders at any time before final judgment. Mazza, 780 F. Supp. 3d at 330 (quoting Fernandez-Vargas v. Pfizer, 522 F.3d 55, 61 n.2 (1st Cir. 2008)).

Motions for reconsideration are granted sparingly. United States ex. rel. Nargol v. Depuy Orthopaedics, Inc., 69 F.4th 1, 11 (1st Cir. 2023) (citations omitted). A motion for reconsideration for a non-final order may only be granted when the moving party can "demonstrate that one of three 'limited' circumstances applies by 1) presenting the Court with 'newly discovered evidence,'

2) offering an 'intervening change in applicable law' that is controlling or 3) asserting that the Court's prior order suffers from 'a manifest error of law' or 'was clearly unjust.'" Mazza, 780 F. Supp. 3d at 330 (quoting United States v. Allen, 573 F.3d 42, 53 (1st Cir. 2009)).

Here, Plaintiffs argue that the Court committed a clear error of law in concluding that the TIL regulations preempt their claims. [ECF No. 28 at 3–12]. The Court agrees.

### B.  Preemption Standard

Federal law preempts conflicting state law. U.S. CONST. art. VI, cl. 2. (federal law "shall be the supreme Law of the Land"). Accordingly, state laws "are preempted when they conflict with federal law." Ass'n to Pres. & Protect Loc. Livelihoods v. Sidman, 147 F.4th 40, 49 (1st Cir. 2025) (quoting Arizona v. United States, 567 U.S. 387, 399 (2012)). "Federal regulations have no less pre-emptive effect than federal statutes." Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta, 458 U.S. 141, 153 (1982).

Courts begin a preemption analysis with the assumption that state police powers are not displaced absent a "clear and manifest purpose of Congress." Grant's Dairy–Me., LLC v. Comm'r of Maine. Dep't of Agric., Food & Rural Res., 232 F.3d 8, 14–15 (1st Cir. 2000) (quoting Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230 (1947)). Preemption may occur expressly—where Congress explicitly displaces state law with inclusion of a preemption clause—or impliedly, through either field or conflict preemption. Asociación de Detallistas de Gasolina de P.R., Inc. v. Puerto Rico, 138 F.4th 686, 693 (1st Cir. 2025). "Conflict preemption takes place either when compliance with both state and federal regulations is impossible or when state law interposes an obstacle to the achievement of Congress's discernible objectives." Grant's Dairy–Me., LLC, 232 F.3d at 15 (citing Gade v. Nat'l Solid Wastes Mgmt. Ass'n, 505 U.S. 88, 98 (1992)). When considering whether conflict preemption applies, there is a general "presumption against

preemption" that must be considered in the analysis. Triumph Foods, LLC v. Campbell, 742 F. Supp. 3d 63, 72 (D. Mass. 2024), aff'd, 156 F.4th 29 (1st Cir. 2025) (citing Medicaid & Medicare Advantage Prod. Ass'n of P.R., Inc. v. Emanuelli Hernandez, 58 F.4th 5, 11 (1st Cir. 2023)). The presumption against preemption is a "substantive canon of construction" which "means that federal law should not be interpreted to preempt state law 'unless that was the clear and manifest purpose of Congress[,]'" or if the statute contains an express preemption clause. Emanuelli Hernandez, 58 F.4th at 11 (quoting Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230 (1947)).

Defendants rely on conflict preemption. [ECF No. 14-1 at 12]. Therefore, the question is whether the MWA[1] frustrates the purpose of the TIL regulations or renders compliance impossible.

## III.    DISCUSSION

### 1.    The MWA Does Not Frustrate the TIL Regulations' Objectives

Defendants contend that the MWA frustrates the purpose of the TIL regulations by prohibiting deductions. [ECF No. 14-1 at 12]. The Court disagrees. Both the MWA and TIL regulations protect workers. They can operate in tandem without conflict.

Congress directed the U.S. Department of Transportation to regulate leases between motor carriers, like 28Freight, and independent drivers, like Plaintiffs. The TIL regulations implement that directive. Fox v. Transam Leasing, Inc., 839 F.3d 1209, 1211 (10th Cir. 2016). The primary

---

[1] The Court granted Defendants' motion to dismiss Count III (the minimum wage claim) on the basis that "Plaintiffs' claims that Defendants improperly deducted mileage from their pay are preempted by the TIL regulations." Sosa v. 28Freight LLC, 774 F. Supp. 3d 410, 421 (D. Mass. 2025). Specifically, the Court noted that Plaintiffs failed to state a claim because "[w]ithout the deduction for mileage, Plaintiffs' pay for the periods noted in the Complaint are greater than the Massachusetts minimum wage." Id. For the reasons set forth in this Order, that is no longer the case. Although Massachusetts' minimum wage is set forth in a separate statutory chapter, MASS. GEN. LAWS. ch. 151 § 1, the MWA is violated by failing to pay the minimum wage. MASS. GEN. LAWS. ch. 149 § 148. Therefore, for the purposes of conducting a preemption analysis for both Counts II and III, the Court focuses on the MWA.

purpose of the TIL regulations is to protect drivers by ensuring carriers fully disclose contract terms in leases. See, e.g., Goyal v. CSX Intermodal Terminals, Inc., No. 17-CV-06081-EMC, 2018 WL 4649829, at *3 (N.D. Cal. Sept. 25, 2018) (quoting Valadez v. CSX Intermodal Terminals, Inc., No. 15-CV-05433, 2017 WL 1416883 (N.D. Cal. Apr. 10, 2017)); B&O Logistics, Inc. v. Cho, No. CV185400DMGMRWX, 2019 WL 2879876, at *5 (C.D. Cal. Apr. 15, 2019) (quoting Turner v. Miller Transporters, Inc., 852 So. 2d 478, 485 (La. Ct. App. 2003)) ("[T]he purposes of [the TIL] regulations . . . [are] to compel disclosure of the contract terms between [owner-operators and carriers]."). The regulatory text confirms as much.[2]

To the extent that Defendants argue that the TIL regulations *require* deductions, the argument is unsupported by the regulatory text. Its provisions are conditional: if costs are allocated, they must be disclosed. The regulations do not mandate the imposition of deductions.[3] Courts have consistently reached this conclusion. See, e.g., Johnson v. Logistics, No. 16-CV-06776, 2018 WL 1519157, at *6 (N.D. Ill. Mar. 28, 2018) ("It is clear from the plain language of the Regulations that they simply require that, if certain arrangements are made between an owner-operator and a carrier, those arrangements should be included in the written lease."); Goyal, 2018 WL 4649829, at *6 ("The regulation does not say such expense *must* be charged back nor does it affirmatively authorize and protect the parties' authority to so decide. Its disclosure mandate is not inconsistent

---

[2] See, e.g., 49 C.F.R. § 376.12(d) ("The amount to be paid by the authorized carrier for equipment and driver's services shall be clearly stated on the face of the lease or in an addendum which is attached to the lease."); id. § 376.12(j)(3) ("The lease shall clearly specify the conditions under which deductions for cargo or property damage may be made from the lessor's settlements.").

[3] See, e.g., 49 C.F.R. § 376.11 ("the authorized carrier *may* perform authorized transportation in equipment it does not own only under the following conditions: (a) Lease…"); id. § 376.12(j)(1) ("*If* the authorized carrier will make a charge back to the lessor for any of this insurance, the lease shall specify the amount which will be charged-back to the lessor."); 49 C.F.R. § 376.12(j)(3) ("lease[s] shall clearly specify the conditions under which deductions for cargo or property damage *may be made* . . . ") (emphases added).

5

with particular state laws that prohibit such chargebacks; the 'if' . . . merely contemplates that some states might allow such chargebacks while other states do not.") (emphasis in original).

Turning now to the MWA, in another session of this Court, Judge Young observed that the MWA "is meant to protect employees from the dictates and whims of shrewd employers." Cumpata v. Blue Cross Blue Shield of Mass., Inc., 113 F. Supp. 2d 164, 168 (D. Mass. 2000). It "protect[s] employees and their right to wages by requiring employers to pay employees their wages in a timely fashion." Parker v. EnerNOC, Inc., 484 Mass. 128, 132 (2020) (internal quotations and citations omitted). In furtherance of its purpose, the MWA "prohibit[s] an employer from deducting, or withholding payment of, any earned wages," even if the employee assents. Camara v. Athy Gen., 941 N.E.2d 1118, 1121 (Mass. 2011) (citing MASS. GEN. LAWS ch. 149, § 148). At its core, the MWA protects Massachusetts workers' right to the timely payment of wages they have earned. The MWA applies to employees, not independent contractors. Sebago v. Bos. Cab Dispatch, Inc., 28 N.E.3d 1139, 1146 (Mass. 2015) (citation omitted).

Because both the TIL regulations and the MWA are worker-protective and operate in distinct spheres—disclosure versus wage regulation of the employee-employer relationship—they do not conflict. Therefore, Defendants' preemption argument premised on the MWA frustrating the purpose of the TIL regulations fails.

### 2. It is Possible to Comply with the MWA and TIL Regulations Simultaneously

Defendants' conflict preemption argument fares no better. Compliance with both the TIL regulations and the MWA is not impossible. See Grant's Dairy–Me., LLC, 232 F.3d at 15 (citing Gade, 505 U.S. at 98). The TIL regulations at issue govern disclosure, not the legality of underlying terms or the nature of the parties' employment relationship. 49 C.F.R. § 376.12(c)(4). While the MWA prohibits certain wage deductions, the TIL regulations merely contemplate them. A carrier

may therefore comply with both by refraining from unlawful deductions as to employees and disclosing any such deductions in leases with independent contractors.

This conclusion requires no judicial gymnastics. A carrier may employ both W-2 employees and contract with 1099 independent contractors. Nothing in the TIL regulations mandates any particular employment classification; to the contrary, the regulations expressly disclaim such a preference. 49 C.F.R. § 376.12(c)(4) ("Nothing in the provisions . . . is intended to affect whether the lessor or driver provided by the lessor is an independent contractor or an employee of the authorized carrier lessee."). Because compliance with both the MWA and the TIL regulations is possible, impossibility preemption does not apply.

The Court recognizes that Plaintiffs' litigation success may ultimately depend on whether Defendants misclassified them as independent contractors rather than employees. But that merits issue does not bear on the preemption question presented here. Preemption generally presents a "pure question of law" and does not require the Court to anchor its analysis to the disputed facts in the complaint at the motion to dismiss stage. Remington v. J.B. Hunt Transport, Inc., No. CV 15-10010-RGS, 2016 WL 4975194, at *4–6 (D. Mass. Sept. 16, 2016) (quoting United States v. Rhode Island Insurers' Insolvency Fund, 80 F.3d 616, 619 (1st Cir. 1996)).

Upon reconsideration, the Court's prior reliance on Remington was misplaced because Remington limited its analysis to circumstances involving only employees. Remington, 2016 WL 4975194, at *4–6. However, as discussed above, where a carrier employs both employees and contracts with independent contractors, it can comply with both legal frameworks by refraining from deductions as to its employees. This conclusion is reinforced by the presumption against preemption, which Defendants have not overcome. See Hernandez, 58 F.4th at 11.

Accordingly, the Court's prior determination that the TIL regulations preempt the MWA through conflict preemption was erroneous, and dismissal of Counts II and III on that basis must be vacated. The Court need not address the factual assumptions in the prior order that Plaintiffs argue were inappropriate because such factual findings are not material to the Court's reasoning in granting reconsideration and vacating its prior order as to Counts II and III.

## IV.   CONCLUSION

For the reasons stated above, the Court hereby **ORDERS**:

| ECF No. | Motion/Order | Disposition |
|---|---|---|
| 14 | Defendants' Motion to Dismiss ("MTD") | For the reasons set forth above, the Court **DENIES** Defendants' MTD. |
| 24 | Order Granting Defendants' MTD | The Court **VACATES** in part its prior Order granting Defendants' MTD.<br><br>Specifically, the Court **VACATES** its dismissal of Count II to the extent it asserts a claim for unlawful deductions. The Court also **VACATES** its dismissal of Count III.<br><br>The Court otherwise leaves intact its denial of Defendants' MTD Count II insofar as it alleges failure to pay timely wages pursuant to the MWA.<br><br>The Court further **VACATES** any factual conclusions set forth in Section III.C of ECF No. 24. |
| 28 | Plaintiffs' Motion for Reconsideration | The Court **GRANTS** Plaintiffs' Motion for Reconsideration. |

**SO ORDERED.**

Dated: March 23, 2026

 /s/ Margaret R. Guzman
Margaret R. Guzman
United States District Judge

8